# DELAWARE COUNTY COURT OF COMMON PLEAS
## Civil Docket Report

| | | | |
|---|---|---|---|
| **Case #** | CV-2022-001588 | **Judge** | |
| **Case Title** | Phan-Kramer et al v. Safeco Corporation | **Case Type** | Civil - Tort - Motor Vehicle |

## Case Parties

**Plaintiff**                                      Attorney

      Loann Phan-Kramer                    FRANCIS J CURRAN, JR

                                                       200 East State Street, Suite 103
Media PA 19063

                                                       RYAN F CURRAN

                                                         200 East State Street, Suite 305
Media PA 19063

**Defendant**                                      Attorney

      Safeco Corporation                    BRIGID Q ALFORD

      PO Box 515097                    MARSHALL DENNEHEY ET AL
      Los Angeles CA 90051              100 CORPORATE CTR DR STE 201
CAMP HILL PA 17011-1758

                                                         ALLISON L KRUPP

                                                         100 CORPORATE CENTER DR STE 201
CAMP HILL PA 17011

**Plaintiff**                                      Attorney

      Jonerik Kramer                        RYAN F CURRAN

                                                         200 East State Street, Suite 305
Media PA 19063

## DELAWARE COUNTY COURT OF COMMON PLEAS
### Civil Docket Report

| | | | |
|---|---|---|---|
| **Case #** | CV-2022-001588 | **Judge** | |
| **Case Title** | Phan-Kramer et al v. Safeco Corporation | **Case Type** | Civil - Tort - Motor Vehicle |

| **Case Parties** |
|---|

FRANCIS J CURRAN, JR

200 East State Street,
Suite 103
Media PA 19063

| # | Filed Date | Pleadings Filed, Orders and Decrees | Description |
|---|---|---|---|
| 1 | 03-03-2022 04:18 PM | Commenced by - Writ of Summons | Writ of Summons |
| 2 | 03-03-2022 04:20 PM | Writ - Writ Issued and Writ Exit | Writ Issued and Writ Exit |
| 3 | 03-08-2022 03:23 PM | Financials - Receipt | Receipt #000457694 for $297.25 paid for by Francis J. Curran |
| 4 | 03-08-2022 03:23 PM | Discovery - Request for Production | Request for Production |
| 5 | 03-18-2022 02:02 PM | Miscellaneous - Entry of Appearance for Defendant | Entry of Appearance for Defendant |
| 6 | 03-18-2022 03:06 PM | Miscellaneous - Entry of Appearance for Defendant | Entry of Appearance for Defendant |
| 7 | 03-23-2022 02:01 PM | Financials - Receipt | Receipt #000460125 for $50.00 paid for by Brigid Q. Alford |
| 8 | 03-23-2022 03:06 PM | Financials - Receipt | Receipt #000460156 for $50.00 paid for by Allison L Krupp , Esquir |
| 9 | 03-25-2022 11:47 AM | Affidavit - Affidavit of Service | Affidavit of Service |
| 10 | 04-13-2022 01:47 PM | Motion - Motion for Protective Order | Motion for Protective Order |

## DELAWARE COUNTY COURT OF COMMON PLEAS
### Civil Docket Report

| **Case #** | CV-2022-001588 | **Judge** | |
|---|---|---|---|
| **Case Title** | Phan-Kramer et al v. Safeco Corporation | **Case Type** | Civil - Tort - Motor Vehicle |

| # | Filed Date | Pleadings Filed, Orders and Decrees | Description |
|---|---|---|---|
| 11 | 04-13-2022 01:47 PM | Miscellaneous - Brief | DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO QUASH PLAINTIFFS' PRE-COMPLAINT DISCOVERY |
| 12 | 04-13-2022 01:47 PM | Certificate - Attorney Certification of Good Faith Service | Attorney Certification of Good Faith Service |
| 13 | 04-13-2022 01:47 PM | Miscellaneous - Motion Cover Sheet | Motion Cover Sheet |
| 14 | 05-03-2022 04:27 PM | Answer - Answer/Response to Motion/Petition | Answer/Response to Motion/Petition |
| 15 | 05-03-2022 04:27 PM | Miscellaneous - Motion Cover Sheet | Motion Cover Sheet |
| 16 | 05-12-2022 02:42 PM | Miscellaneous - Brief | Brief |
| 17 | 10-26-2022 08:39 AM | Order - Order Granting Motion for Protective Order | Order Granting Dfndt(s) Motion for Protective Order to Quash; 236 Notice of Order Sent on 10/26/2022;  (J.DOZOR) |
| 18 | 04-19-2023 10:31 PM | Complaint - Complaint | Complaint |
| 19 | 05-22-2023 02:50 PM | Financials - Receipt | Receipt #000534987 for $50.00 paid for by Brigid Q. Alford |
| 20 | 05-22-2023 02:50 PM | Notice - Notice of Removal | Notice of Removal |

### ALL FILINGS ARE LISTED
### END OF DOCUMENT

CERTIFIED A TRUE AND CORRECT
COPY FROM THE RECORD
THIS 22 DAY OF May A.D. 2023
MARY J. WALK, ESQUIRE, DIRECTOR
OFFICE OF JUDICIAL SUPPORT
Elizabeth Solum

**THE CURRAN FIRM, P.C.**
**BY: FRANCIS J. CURRAN JR., ESQUIRE**                    **Attorneys for Plaintiffs**
**Attorney I.D. No. 47198**
**BY: RYAN F. CURRAN, ESQUIRE**
**Attorney I.D. No. 313188**
**200 East State Street, Suite 103**
**Media, PA 19063**
**(610)-566-5300**

| | |
|---|---|
| **LOANN PHAN-KRAMER and**<br>**JONERIK KRAMER, W/H,** | **DELAWARE COUNTY COURT**<br>**OF COMMON PLEAS** |
| | **CIVIL ACTION – LAW** |
| *Plaintiffs*<br>**V.** | |
| **SAFECO CORPORATION,** | **NO.** |
| *Defendant* | |

## PRAECIPE TO ISSUE WRIT OF SUMMONS

TO THE PROTHONOTARY:

    Kindly issue Summons in Civil Action in the above captioned matter.

                                  **THE CURRAN FIRM, P.C.**

        **BY:**    */s/ Ryan F. Curran*
                 **RYAN F. CURRAN, ESQUIRE**
                 Attorney for Plaintiff

IN THE COURT OF COMMONPLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CIVIL LAW -- ACTION

PLAINTIFF(S)                                          No. _____
Loann Phan-Kramer and Jonerik Kramer, w/h
109 Ridgefield Road
Newtown Square, PA 19073
            vs


DEFENDANT (S)

Safeco Corporation
PO Box 515097
Los Angeles, CA 90051

### PRAECIPE FOR WRIT OF SUMMONS

TO THE OFFICE OF JUDICIAL SUPPORT:

     Issue summons in civil action in the above

                     _____
                     Signature of Attorney/Pro Se Party

                     Francis J. Curran, Jr., Esquire // P: (610) 566-5300
                     200 East State Street, Suite 103
                     Media, PA 19063
                     Name/Address/Telephone # of Attorney/Pro Se Party

                     Attorney Supreme Court ID # 47198


### WRIT OF SUMMONS IN CIVIL ACTION

TO:  SAFECO CORPORATION    PO BOX 515097 LOS ANGELES, CA 90051

YOU ARE NOTIFIED THAT THE ABOVE- NAMED PLAINTIFF(S) HAS/HAVE COMMENCED AN
ACTION AGAINST YOU.

                          MARY J. WALK, ESQ., DIRECTOR
                          OFFICE OF JUDICIAL SUPPORT

Date: 03/03/2022


                     Deputy: _____

FILED
03-03-2022 04:18 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

**THE CURRAN FIRM, P.C.**
BY: FRANCIS J. CURRAN JR., ESQUIRE                    Attorneys for Plaintiffs
Attorney I.D. No. 47198
BY: RYAN F. CURRAN, ESQUIRE
Attorney I.D. No. 313188
200 East State Street, Suite 103
Media, PA 19063
(610)-566-5300

---

| | |
|---|---|
| LOANN PHAN-KRAMER and JONERIK KRAMER, W/H, | DELAWARE COUNTY COURT OF COMMON PLEAS |
| | CIVIL ACTION – LAW |
| *Plaintiffs* <br> V. | |
| SAFECO CORPORATION, | NO. |
| *Defendant* | |

---

### PLAINTIFFS' PRE-COMPLAINT DISCOVERY PURSUANT TO Pa.R.Civ.P. 4003.8 IN THE FORM OF REQUESTS FOR PRODUCTION OF DOCUMENTS, ADDRESSED TO DEFENDANTS

TO THE DEFENDANTS: You are hereby requested to produce the following items for inspection and copying, pursuant to Pennsylvania Rules of Civil Procedure 4003.8, 4009.1, 4009.11, **within thirty (30) days** from the date of this request, at the offices of The Curran Firm, P.C., 200 East State St., Suite 103, Media, Pennsylvania 19063.

These Requests are deemed to be continuing; as such, Defendants' answers to these Requests <u>must</u> be supplemented prior to trial, <u>when, and in the event that,</u> information becomes available to the Defendants, which would supplement, or make more complete, change, alter and/or modify any of the Requests previously responded to.

### Definitions and Instructions

It is not Plaintiffs' intention to request production of privileged matter. If any materials requested are claimed to be privileged, please list the following for each item claimed to be privileged:

A brief description of the nature and contents of the matter claimed to be privileged;

1

The name, occupation and capacity of the individual from whom the privileged matter emanated;

The name, occupation and capacity of the individual to whom the allegedly privileged matter was directed;

The date the items bear; and

The privilege claimed.

**The following designated items for discovery and production pertain to the subject insurance policy and the underlying claims of Plaintiffs.**

The term "documents" is an all-inclusive term referring to any written and/or recorded or photographic matter, however produced or reproduced. The term "documents" includes without limitation: correspondence, E-mail, memoranda, inter-office communications, minutes, reports, notes, schedules, analyses, drawings, diagrams, tables, graphs, charts, maps, surveys, books and accounts, ledgers, invoices, purchase orders, pleadings, questionnaires, contracts, bills, checks, drafts, diaries, logs, proposals, print-outs, recordings, telegrams, films, and all other such documents tangible or retrievable by any means. "Documents" also includes any preliminary notes or drafts of all the foregoing in whatever form, for example: printed, typed, longhand, shorthand, on paper, on paper tape, tabulating cards, ribbons, blueprints, magnetic tape, microfilm, film, motion picture film, photographs, records, computer software, or other form.

With respect to documents, the term "identify" means to give the date, title, author and addressee, "identify" with respect to documents further means:

1. To describe the document sufficiently well to enable the interrogator to know what the document is and retrieve it from a file or wherever it may be located;

2. To describe in a manner suitable for use as a description in a subpoena;

3. All inter-office memoranda or other form of written communication of any employee of Defendant relating to the initial processing of the claim listed above when Defendant first received said claim;

4. All inter-office memoranda or other form of written communication of any employee of Defendant relating to the continued processing of the claim listed above;

5. The complete underwriting file pertaining to the above-mentioned policy of insurance from its inception to the present time, including but not limited to the file folder or file

folders themselves, adjacent exhibit folders, all papers, documents, and investigative reports directly pertaining to the above-mentioned insurance policy and Plaintiffs' underlying claim, including but not limited to the inter-office memoranda or notes pertaining to the above-mentioned policy of insurance, and Plaintiffs' underlying claim, and any and all written communications or statements made between Defendant and other parties, which directly pertain to the third party action filed against your insured for which you provided coverage.

6.　　　　To give the name, address, position or title of the person(s) who has (have) custody of the document and/or copies of the document.

7.　　　　The words "you," "your," "defendant" or "insurer" are used herein to indicate defendant and the person responding to the Request for Production of Documents.

8.　　　　The name "Defendant Safeco," as used herein, refers collectively to Defendant Safeco Insurance, and Defendant Safeco Insurance Company, and American States Insurance Company.

### Request for Production of Documents

1.　Each and every claims file, in its entirety, including, but not limited to, branch, regional, and home office claims files pertaining to the claim for underinsured motorist benefits submitted by or on behalf of Plaintiffs', Claim No. 774957226036, under their Insurance Policy, policy number K3001008, issued by Defendants, with an effective date, including, but not limited to:

    a.　Any and all documents created, referenced and/or used by you to investigate, analyze and/or evaluate Plaintiffs' claim for underinsured motorist benefits.

    b.　Any and all documents created, referenced and/or used by you to place a monetary value or range of values on Plaintiffs' claim for underinsured motorist benefits.

    c.　Any and all documents that are contained within any "claims log" or other such journal, account, diary and/or archive of events, correspondence, evaluations, opinions and/or investigations relating to Plaintiffs' claim for underinsured motorist benefits.

3

d.  Any and all documents created, referenced and/or used by you to determine the monetary authority that any claims adjuster or adjusters had to settle Plaintiffs' claim for underinsured motorist benefits.

e.  Any and all documents that were submitted by any claims adjuster or adjusters to any employee with supervisory authority regarding Plaintiffs' claim for underinsured motorist benefits.

f.  Any and all documents that were submitted to any medical peer review or other such records review company or organization relative to Plaintiffs' claim for underinsured motorist benefits.

g.  Any and all documents between you and any health professional, medical expert and/or expert witness service that were created and/or consulted regarding Plaintiffs' claim for underinsured motorist benefits.

h.  Any and all expert or other such evaluative reports submitted to you by any health care professional, medical expert, and/or expert witness service with regard to Plaintiffs' claim for underinsured motorist benefits.

i.  Any and all documents created, referenced, and/or used by you to determine if Plaintiffs' was or was not a covered insured relative to his claim for underinsured motorist benefits.

j.  Any and all documents that express a legal opinion, conclusion, theory and/or contain legal research regarding Plaintiffs' claim for underinsured motorist benefits.

k.  Any and all documents contained within the any claims adjustment software program relative to Plaintiffs' claim for underinsured motorist benefits, including,

4

but not limited to, an account of all physical injuries entered into such system, any duties under duress, work loss, and/or loss of enjoyment of life identifiers entered into such system, and any initial, interim, and/or final computer generated report or reports.

l. Any and all documents between you and any attorney seeking a legal opinion as to the meaning of any term and/or provision of Plaintiffs' underinsured motorist policy.

m. Any and all documents that indicate the amount of money in legal fees and costs you incurred in adjusting Plaintiffs' claim for underinsured motorist benefits.

n. Any and all documents created, referenced, and/or used by any committee that was empowered to evaluate, investigate, and/or make any decision or decisions relative to Plaintiffs' claim for underinsured motorist benefits.

o. Any and all documents exchanged between and among your employees regarding any aspect of Plaintiffs' claim for underinsured motorist benefits.

2. Complete copy of the file of Safeco's defense attorney in the underlying underinsured motorist claim.

3. Any and all claims logs relating to Plaintiffs' underinsured motorist claim, including but not limited to, adjuster's logs, supervisor's logs, manager's logs, navigation worksheets.

4. All documents showing legal opinions prior to the date of the uninsured motorist claim award in the subject case.

5. Copies of all emails between all personnel at Safeco relative to Plaintiffs' underinsured motorist claim.

6.      All documents showing original reserves and all changes to the reserves on Plaintiffs' underinsured motorist claim.

7.      All documents showing method and criteria for setting all reserves.

8.      Documents pertaining to the establishment, existence, co-existence and activities of a "claim committee" and/or "roundtable" and/or any other Safeco employee meeting with regard to Plaintiffs' claim including the following:

      a.      Names of the committee members;

      b.      Any reports or directives issued by the committee or roundtable with regard to Plaintiffs' underinsured motorist claim.

9.      All investigative reports concerning Plaintiffs and Plaintiff and/or Plaintiffs' claim for underinsured motorist benefits including all written communications between Defendant Safeco and any third party.

10.     All status reports and/or interoffice memoranda in any form of the Defendant Safeco and their adjusters concerning Plaintiffs and/or Plaintiffs' UIM claim.

11.     All status reports and/or interoffice memoranda in any form of the Defendant Safeco and their adjusters concerning the medical expert used by Safeco in Defending Plaintiffs' UIM claim.

12.     Defendant Safeco's complete underwriting file referring or relating in any way to the Plaintiffs' policy at issue.

13.     All documents, memoranda, and/or logs of any kind which reflect what, if any, work, investigation and evaluations were done by Defendant Safeco and the Defendant adjusters in the time frame between the written communications that Safeco had sent to the Plaintiffs UIM attorney.

14.     All documents, memoranda, and/or logs of any kind which reflect what investigation and evaluation of Plaintiffs' claim the Defendant Safeco and the Defendant adjusters had performed during the pendency of the Plaintiffs' UIM claim.

15.     Produce all documents, emails, memoranda and/or logs showing any authority to settle that was given by Safeco to any of the Defendant adjusters during the pendency of the UIM claim.

16.     Produce copies of all reports and curriculum vitae of every expert, expert witness or proposed expert witness that was consulted with respect to evaluating, investigating or defending the Plaintiffs' UIM claim.

17.     All documents relating to computer programs utilized by Safeco in evaluating and processing Plaintiffs' claim.

18.     Provide documentation, records, and/or other reports indicating every date that data relating to Plaintiffs' claim was entered into the any computer software program. For every date that data was entered, provide documentation, records, and/or other reports detailing with specificity the exact data that was entered into the program.

19.     Provide documentation, records, and/or other reports indicating each estimated value range produced by any computer software program and the date each value range was produced, in regards to Plaintiffs' claim.

20.     Any and all documentation, including but not limited to internal memoranda, which reflect or refer to Defendant Safeco's evaluations of the value of Plaintiffs' UIM claim, including but not limited to all settlement offers.

21.     If any of the documents or things requested above in requests one (1) through twenty (20) have not been produced because of a claim of privilege, please specifically identify

that document and/or thing and identify the privilege you are asserting in reference to that document or thing

THE CURRAN FIRM, P.C.


BY:    */s/ Ryan F. Curran*
        **FRANCIS J. CURRAN, JR., ESQUIRE**
        **RYAN F. CURRAN, ESQUIRE**
**Dated: March 03, 2022**        **Attorneys for Plaintiffs**

8

FILED
03-08-2022 03:23 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

IN THE COURT OF COMMONPLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CIVIL LAW -- ACTION

PLAINTIFF(S)                                    No. _____
Loann Phan-Kramer and Jonerik Kramer, w/h
109 Ridgefield Road
Newtown Square, PA 19073
              vs

DEFENDANT (S)

**Safeco Corporation**
**PO Box 515097**
**Los Angeles, CA 90051**

### PRAECIPE FOR WRIT OF SUMMONS

TO THE OFFICE OF JUDICIAL SUPPORT:

   Issue summons in civil action in the above.

_____
Signature of Attorney/Pro Se Party

Francis J. Curran, Jr., Esquire // P: (610) 566-5300
200 East State Street, Suite 103
Media, PA 19063
Name/Address/Telephone # of Attorney/Pro Se Party

Attorney Supreme Court ID # 47198

---

### WRIT OF SUMMONS IN CIVIL ACTION

TO:  SAFECO CORPORATION   PO BOX 515097 LOS ANGELES, CA 90051

YOU ARE NOTIFIED THAT THE ABOVE- NAMED PLAINTIFF(S) HAS/HAVE COMMENCED AN
ACTION AGAINST YOU.

                              _Mary J. Walh_
                              MARY J. WALH, ESQ., DIRECTOR
                              OFFICE OF JUDICIAL SUPPORT

Date: 03/03/2022

                              Deputy: _____

Rev:  04-22-2020

ISSUED
03-03-2022 04:20 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

IN THE COURT OF COMMONPLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CIVIL LAW -- ACTION

PLAINTIFF(S)                                    No. 22-1588
Loann Phan-Kramer and Jonerik Kramer, w/h
109 Ridgefield Road
Newtown Square, PA 19073
            vs


DEFENDANT (S)
Safeco Corporation
PO Box 515097
Los Angeles, CA 90051

### PRAECIPE FOR WRIT OF SUMMONS

TO THE OFFICE OF JUDICIAL SUPPORT:

Issue summons in civil action in the above

_____
Signature of Attorney/Pro Se Party

Francis J. Curran, Jr., Esquire // P: (610) 566-5300
200 East State Street, Suite 103
Media, PA 19063
Name/Address/Telephone # of Attorney/Pro Se Party

Attorney Supreme Court ID # 47198

---

### WRIT OF SUMMONS IN CIVIL ACTION

TO:  SAFECO CORPORATION   PO BOX 515097 LOS ANGELES, CA 90051

YOU ARE NOTIFIED THAT THE ABOVE- NAMED PLAINTIFF(S) HAS/HAVE COMMENCED AN
ACTION AGAINST YOU.

                                    Mary J. Walk
                            MARY J. WALK, ESQ., DIRECTOR
                            OFFICE OF JUDICIAL SUPPORT

Date: 03/03/2022

                            Deputy: _____

Rev:  04-22-2020

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**
By: Brigid Q. Alford, Esquire
Pa. I.D. #38590
By: Allison L. Krupp, Esquire
Pa. I.D. #307013
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
717-651-3710
Attorneys for Defendant Safeco Corporation

| | |
|---|---|
| LOANN PHAN-KRAMER and | : DELAWARE COUNTY COURT |
| JONERIK KRAMER, W/H | : OF COMMON PLEAS |
| Plaintiffs | : |
| vs. | : NO. CV 2022-1588 |
| | : |
| | : CIVIL ACTION - LAW |
| SAFECO CORPORATION | : |
| Defendant | : |

## ENTRY OF APPEARANCE

TO THE OFFICE OF JUDICIAL SUPPORT:

Kindly enter the appearance of Brigid Q. Alford, Esquire, and Marshall, Dennehey, Warner, Coleman & Goggin as counsel of record on behalf of the Defendant Safeco Corporation, in the above-captioned case.

Date:   03/18/2022

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY: _____

Brigid Q. Alford, Esquire
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
PH: (717) 651-3710 – FAX (717) 651-3707
bqalford@mdwcg.com
*Attorneys for Defendant Safeco Corporation*


## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Case Record Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.


Submitted by: _____Defendant_____

Signature: _____

Name: Brigid Q. Alford, Esquire_____

Attorney No. (if applicable): _____38590_____

## CERTIFICATE OF SERVICE

I, Brigid Q. Alford, Esquire, do hereby certify that a true and correct copy of the foregoing

was served upon the following via Electronic Filing System on the date specified below:

Ryan F. Curran, Esquire
Francis J. Curran, Jr., Esquire
THE CURRAN FIRM, P.C.
200 East State street, Suite 103
Media, PA 19063
*Attorneys for Plaintiffs Loann Phan-Kramer and Jonerik Kramer, w/h*

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY: _____
Brigid Q. Alford, Esquire
*Attorneys for Defendant Safeco Corporation*

Dated:  03/18/2022

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**
By: Brigid Q. Alford, Esquire
Pa. I.D. #38590
By: Allison L. Krupp, Esquire
Pa. I.D. #307013
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
717-651-3710
Attorneys for Defendant Safeco Corporation

| | |
|---|---|
| LOANN PHAN-KRAMER and | : DELAWARE COUNTY COURT |
| JONERIK KRAMER, W/H | : OF COMMON PLEAS |
| Plaintiffs | : |
| vs. | : NO. CV 2022-1588 |
| | : |
| | : CIVIL ACTION - LAW |
| SAFECO CORPORATION | : |
| Defendant | : |

## <u>ENTRY OF APPEARANCE</u>

TO THE OFFICE OF JUDICIAL SUPPORT:

Kindly enter the appearance of Allison L. Krupp, Esquire, and Marshall, Dennehey,

Warner, Coleman & Goggin as counsel of record on behalf of the Defendant Safeco Corporation,

in the above-captioned case.

Date:   03/18/2022

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**

BY: _____
Allison L. Krupp, Esquire
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
PH: (717) 651-3510 – FAX (717) 651-3707
alkrupp@mdwcg.com
*Attorneys for Plaintiff Safeco Corporation*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Case Record Public Access*

*Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information

and documents differently than non-confidential information and documents.

Submitted by: _____ Defendant _____

Signature: _____ *Allison Krupp* _____

Name: Allison L. Krupp, Esquire _____

Attorney No. (if applicable): _____ 307013 _____

<u>**CERTIFICATE OF SERVICE**</u>

I, Allison L. Krupp, Esquire, do hereby certify that a true and correct copy of the foregoing

was served upon the following via Electronic Filing System on the date specified below:

Ryan F. Curran, Esquire
Francis J. Curran, Jr., Esquire
THE CURRAN FIRM, P.C.
200 East State street, Suite 103
Media, PA 19063
*Attorneys for Plaintiffs Loann Phan-Kramer and Jonerik Kramer, w/h*

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY: _____
Allison L. Krupp, Esquire
*Attorneys for Defendant Safeco Corporation*

Dated:  03/18/2022

| | |
|---|---|
| LOANN PHAN-KRAMER and JONERIK KRAMER, W/H, | COURT OF COMMON PLEAS DELAWARE COUNTY |
| *Plaintiffs* | CIVIL ACTION – LAW |
| v. | |
| SAFECO CORPORATION, | NO. CV-2022-001588 |
| *Defendant* | |

## <u>AFFIDAVIT OF SERVICE OF ORIGINAL PROCESS ON DEFENDANT, SAFECO CORPORATION</u>

I, Francis J. Curran, Jr., Esquire, being duly sworn, depose and say that on March 9, 2022, I sent for service as original process the timestamped Civil Action Writ of Summons in this case to Defendant, Safeco Corporation, via United States Certified Mail, Return Receipt Requested to P.O. Box 515097, Los Angeles, CA 90051. Defendant, Safeco Corporation, received this served original process on or about March 13, 2022, and a representative of Defendant, Safeco Corporation signed the domestic return receipt. Copies of the service transmittal letter dated March 9, 2022, a screenshot of USPS Tracking proof of delivery, and the signed domestic return receipt are collectively attached hereto as Exhibit "A". Accordingly, Defendant, Safeco Corporation has been served with the Civil Action Writ of Summons as original process in this case.

THE CURRAN FIRM, P.C.

Dated: 3/25/22

By: _____

**FRANCIS J. CURRAN, JR., ESQUIRE**
**Attorney for Plaintiff**

Subscribed and sworn to me on this 25th day of March, 2022.

_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
LAUREN HOFKIN - Notary Public
Delaware County
My Commission Expires November 18, 2024
Commission Number 1302046

EXHIBIT "A"

# THE CURRAN FIRM, P.C.
## ATTORNEYS AND COUNSELORS AT LAW

TELEPHONE : 610-566-5300
FACSIMILE : 610-566-6114
WEBSITE : WWW.THECURRANFIRM.COM
EMAIL : CONTACT@THECURRANFIRM.COM

March 9, 2022

**Via U.S. Certified Mail**
**Return Receipt Requested**
Safeco Corporation
P.O. Box 515097
Los Angeles, CA 90051

RE:    **Phan-Kramer, et al v. Safeco Corporation**
**Delaware County CCP No. CV-2022-001588**

Dear Sir/Madam:

I am counsel for Plaintiffs Loann Phan-Kramer and Jonerik Kramer, w/h, in the above-referenced case, which has been filed against you in the Delaware County Court of Common Pleas, Pennsylvania. I have enclosed for service as original process on you the file-marked Civil Action Writ of Summons, which is the document that commenced this case. Additionally, I have enclosed Plaintiffs' Pre-Complaint Discovery in the Form of Requests for Production of Documents.

Please be advised that you have been sued and are a defendant in this case. **You should provide this letter and the enclosed documents to your liability insurance carrier as soon as possible so that you do not lose any important legal rights.**

Thank you for your attention.

Very truly yours,

RYAN F. CURRAN

RFC/mc
Enclosure

**Mae-Emlyn Currie**

| | |
|---|---|
| **From:** | auto-reply@usps.com |
| **Sent:** | Sunday, March 13, 2022 7:30 PM |
| **To:** | mcurrie@thecurranfirm.com |
| **Subject:** | USPS® Item Delivered, Left with Individual 70201810000000734898 |



Hello **Mae Emlyn Currie**,

Your item was delivered to an individual at the address at 4:14 pm on March 13, 2022 in LOS ANGELES, CA 90001.

Tracking Number: **70201810000000734898**

## Delivered, Left with Individual



## Tracking & Delivery Options

## My Account

Visit **USPS Tracking**® to check the most up-to-date status of your package. Sign up for **Informed Delivery**® to digitally preview the address side of your incoming letter-sized mail and manage your packages scheduled to arrive soon! To update how frequently you receive emails from USPS, log in to your **USPS.com** account.

Want regular updates on your package? **Set up text alerts**.



   

1



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Safeco Corporation
P.O. Box 515097
Los Angeles, CA
90051

9590 9402 5976 0062 8597 11

2. Article Number (Transfer from service label)

7020 1810 0000 0073 4898

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X   Jessica Yachwak    ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

MAR 21 2022

3. Service Type
☒ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

USPS TRACKING #

9590 9402 5976 0062 8597 11

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

**THE CURRAN FIRM, P.C.**

200 East State Street
Suite 103
Media, PA 19063

Re: Kramer          MC

FILED
03-25-2022 11:47 AM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**
By: Brigid Q. Alford, Esquire
Pa. I.D. #38590
By: Allison L. Krupp, Esquire
Pa. I.D. #307013
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
717-651-3710
Attorneys for Defendant Safeco Corporation

| | |
|---|---|
| LOANN PHAN-KRAMER and | : DELAWARE COUNTY COURT |
| JONERIK KRAMER, W/H | : OF COMMON PLEAS |
| Plaintiffs | : |
| vs. | : NO. CV 2022-1588 |
| | : |
| | : CIVIL ACTION - LAW |
| SAFECO CORPORATION | : |
| Defendant | : |

## <u>DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO QUASH PLAINTIFFS' PRE-COMPLAINT DISCOVERY</u>

Pursuant to Pa. R. C. P. No. 4003.8(b) and Local Rule 208.1 *et al.*, Defendant Safeco Corporation, by its attorneys, Brigid Q. Alford, Esquire, Allison L. Krupp, Esquire, and Marshall Dennehey Warner Coleman & Goggin, moves the Court to enter a Protective Order quashing Plaintiffs' Pre-Complaint Discovery, and in support thereof, avers as follows:

1.      On March 3, 2022, Plaintiffs Loann Phan-Kramer and Jonerik Kramer ("Kramers") filed a Praecipe to Issue a Writ of Summons on Defendant Safeco Corporation ("Safeco"), and the Prothonotary issued the Writ that same date.

2.      On March 13, 2022, the Kramers served the Writ on Safeco, accompanied by certain Pre-Complaint Discovery, in the form of a Request for Production of Documents.  A true and correct copy of the Pre-Complaint Discovery is attached hereto, made part hereof, and identified as Exhibit 1.

3.      The Kramers have not filed a Complaint in this matter.

4.      The proposed Pre-Complaint Discovery references, *inter alia.*, a "claim for underinsured motorist benefits," an alleged corresponding claim number, and an alleged corresponding insurance policy "issued by Defendants" (*sic*), but with no corresponding policy period.  *See,* Ex. 1, para. 1.

5.      The proposed Pre-Complaint Discovery also references, *inter alia.*, an "uninsured claim award," without reference to a corresponding claim number, policy number, or date of award.  *See,* Ex. 1, para. 4.

6.      The proposed Pre-Complaint Discovery also requests, *inter alia.*, the production of documents not limited to a specific claim, policy, or loss, and/or otherwise not limited to any specified period of time.  *See,* Ex. 1, paras. 4, 7.

7.      Within their discovery requests, the Kramers have not set forth facts sufficient to meet the prerequisites for Pre-Complaint Discovery under Pa. R. Civ. P. No. 4003.8, nor have they stated with particularity how the discovery will materially advance the preparation of the Complaint itself.

8.      The documents requested within the Kramers' discovery requests are neither reasonable nor necessary to the filing of a Complaint in the pending action; to the contrary, they are indicative of nothing more than a fishing expedition, and represent an amorphous discovery process to detect or construct a cause of action that the Kramers do not have.

9.      Through their Pre-Complaint Discovery, the Kramers seek to "test the waters," to determine if some putative cause of action might exist.

10.     The Kramers' Pre-Complaint Discovery reflects a present, general awareness and understanding of what the nature of the putative cause of action would be.

11.     The documents and information requested in Kramers' Pre-Complaint Discovery are not material or necessary for filing a Complaint, nor have the Kramers established such materiality or necessity.

12.     The Kramers' Pre-Complaint Discovery is not sought in good faith and will cause Safeco unreasonable annoyance, oppression, embarrassment, burden and expense, as the requests are overly broad and not narrowly tailored to seek information to assist in the development of a Complaint or a cognizable cause of action.

13.     Any response to the Pre-Complaint Discovery risks prejudice for Safeco, as it would be forced to answer and/or identify and raise objections to discovery in a vacuum, without knowledge or understanding of the exact cause or causes of action being alleged against it.

14.     Pursuant to Local Rule 208.2(e), Safeco has reached out to the Kramers to attempt resolution of this dispute, and to have them withdraw the Pre-Complaint Discovery; such efforts have been unsuccessful.

WHEREFORE, Defendant Safeco Corporation respectfully moves the Court to enter a Protective Order quashing the Pre-Complaint Discovery, and otherwise staying discovery unless and until the Kramers have first filed a Complaint setting forth a cognizable cause of action against it.

Date:   04/13/2022

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**


BY: _____

Brigid Q. Alford, Esquire
Allison L. Krupp, Esquire
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
PH: (717) 651-3710 – FAX (717) 651-3707
bqalford@mdwcg.com/alkrupp@mdwcg.com
*Attorneys for Defendant Safeco Corporation*

4

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Record Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: _____Defendant_____

Signature: _____

Name: Brigid Q. Alford, Esquire_____

Attorney No. (if applicable): _____38590_____

## CERTIFICATE OF SERVICE

I, Brigid Q. Alford, Esquire, do hereby certify that a true and correct copy of the foregoing

was served upon the following via Electronic Filing System on the date specified below:

Ryan F. Curran, Esquire
Francis J. Curran, Jr., Esquire
THE CURRAN FIRM, P.C.
200 East State street, Suite 103
Media, PA 19063
*Attorneys for Plaintiffs Loann Phan-Kramer and Jonerik Kramer, w/h*

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY: _____

Brigid Q. Alford, Esquire
*Attorneys for Defendant Safeco Corporation*

Dated:  04/13/2022

FILED
04-13-2022 01:47 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

DCN01202203140000112590441010 Date Received-20220314  Scan Intake-03152022

**THE CURRAN FIRM, P.C.**
BY: FRANCIS J. CURRAN JR., ESQUIRE          Attorneys for Plaintiffs
Attorney I.D. No. 47198
BY: RYAN F. CURRAN, ESQUIRE
Attorney I.D. No. 313188
200 East State Street, Suite 103
Media, PA 19063
(610)-566-5300

| | |
|---|---|
| LOANN PHAN-KRAMER and<br>JONERIK KRAMER, W/H,<br><br>                    *Plaintiffs*<br>      V.<br><br>SAFECO CORPORATION,<br><br>                    *Defendant* | DELAWARE COUNTY COURT<br>OF COMMON PLEAS<br><br>CIVIL ACTION – LAW<br><br>NO. |

### PLAINTIFFS' PRE-COMPLAINT DISCOVERY PURSUANT TO Pa.R.Civ.P. 4003.8 IN THE FORM OF REQUESTS FOR PRODUCTION OF DOCUMENTS, ADDRESSED TO DEFENDANTS

TO THE DEFENDANTS: You are hereby requested to produce the following items for inspection and copying, pursuant to Pennsylvania Rules of Civil Procedure 4003.8, 4009.1, 4009.11, **within thirty (30) days** from the date of this request, at the offices of The Curran Firm, P.C., 200 East State St., Suite 103, Media, Pennsylvania 19063.

These Requests are deemed to be continuing; as such, Defendants' answers to these Requests must be supplemented prior to trial, when, and in the event that, information becomes available to the Defendants, which would supplement, or make more complete, change, alter and/or modify any of the Requests previously responded to.

### Definitions and Instructions

It is not Plaintiffs' intention to request production of privileged matter. If any materials requested are claimed to be privileged, please list the following for each item claimed to be privileged:

A brief description of the nature and contents of the matter claimed to be privileged;

1


EXHIBIT
1

DCN01202203140000112590441010  Date Received-20220314    Scan Intake-03152022

The name, occupation and capacity of the individual from whom the privileged matter emanated;

The name, occupation and capacity of the individual to whom the allegedly privileged matter was directed;

The date the items bear; and

The privilege claimed.

**The following designated items for discovery and production pertain to the subject insurance policy and the underlying claims of Plaintiffs.**

The term "documents" is an all-inclusive term referring to any written and/or recorded or photographic matter, however produced or reproduced. The term "documents" includes without limitation: correspondence, E-mail, memoranda, inter-office communications, minutes, reports, notes, schedules, analyses, drawings, diagrams, tables, graphs, charts, maps, surveys, books and accounts, ledgers, invoices, purchase orders, pleadings, questionnaires, contracts, bills, checks, drafts, diaries, logs, proposals, print-outs, recordings, telegrams, films, and all other such documents tangible or retrievable by any means. "Documents" also includes any preliminary notes or drafts of all the foregoing in whatever form, for example: printed, typed, longhand, shorthand, on paper, on paper tape, tabulating cards, ribbons, blueprints, magnetic tape, microfilm, film, motion picture film, photographs, records, computer software, or other form.

With respect to documents, the term "identify" means to give the date, title, author and addressee, "identify" with respect to documents further means:

1. To describe the document sufficiently well to enable the interrogator to know what the document is and retrieve it from a file or wherever it may be located;

2. To describe in a manner suitable for use as a description in a subpoena;

3. All inter-office memoranda or other form of written communication of any employee of Defendant relating to the initial processing of the claim listed above when Defendant first received said claim;

4. All inter-office memoranda or other form of written communication of any employee of Defendant relating to the continued processing of the claim listed above;

5. The complete underwriting file pertaining to the above-mentioned policy of insurance from its inception to the present time, including but not limited to the file folder or file

DCN01202203140000112590441010 Date Received-20220314  Scan Intake-03152022

folders themselves, adjacent exhibit folders, all papers, documents, and investigative reports directly pertaining to the above-mentioned insurance policy and Plaintiffs' underlying claim, including but not limited to the inter-office memoranda or notes pertaining to the above-mentioned policy of insurance, and Plaintiffs' underlying claim, and any and all written communications or statements made between Defendant and other parties, which directly pertain to the third party action filed against your insured for which you provided coverage.

6.    To give the name, address, position or title of the person(s) who has (have) custody of the document and/or copies of the document.

7.    The words "you," "your," "defendant" or "insurer" are used herein to indicate defendant and the person responding to the Request for Production of Documents.

8.    The name "Defendant Safeco," as used herein, refers collectively to Defendant Safeco Insurance, and Defendant Safeco Insurance Company, and American States Insurance Company.

<u>**Request for Production of Documents**</u>

1.   Each and every claims file, in its entirety, including, but not limited to, branch, regional, and home office claims files pertaining to the claim for underinsured motorist benefits submitted by or on behalf of Plaintiffs', Claim No. 774957226036, under their Insurance Policy, policy number K3001008, issued by Defendants, with an effective date, including, but not limited to:

   a.   Any and all documents created, referenced and/or used by you to investigate, analyze and/or evaluate Plaintiffs' claim for underinsured motorist benefits.

   b.   Any and all documents created, referenced and/or used by you to place a monetary value or range of values on Plaintiffs' claim for underinsured motorist benefits.

   c.   Any and all documents that are contained within any "claims log" or other such journal, account, diary and/or archive of events, correspondence, evaluations, opinions and/or investigations relating to Plaintiffs' claim for underinsured motorist benefits.

DCN01202203140000112590441010  Date Received-20220314   Scan Intake-03152022

d.  Any and all documents created, referenced and/or used by you to determine the monetary authority that any claims adjuster or adjusters had to settle Plaintiffs' claim for underinsured motorist benefits.

e.  Any and all documents that were submitted by any claims adjuster or adjusters to any employee with supervisory authority regarding Plaintiffs' claim for underinsured motorist benefits.

f.  Any and all documents that were submitted to any medical peer review or other such records review company or organization relative to Plaintiffs' claim for underinsured motorist benefits.

g.  Any and all documents between you and any health professional, medical expert and/or expert witness service that were created and/or consulted regarding Plaintiffs' claim for underinsured motorist benefits.

h.  Any and all expert or other such evaluative reports submitted to you by any health care professional, medical expert, and/or expert witness service with regard to Plaintiffs' claim for underinsured motorist benefits.

i.  Any and all documents created, referenced, and/or used by you to determine if Plaintiffs' was or was not a covered insured relative to his claim for underinsured motorist benefits.

j.  Any and all documents that express a legal opinion, conclusion, theory and/or contain legal research regarding Plaintiffs' claim for underinsured motorist benefits.

k.  Any and all documents contained within the any claims adjustment software program relative to Plaintiffs' claim for underinsured motorist benefits, including,

4

DCN01202203140000112590441010  Date Received-20220314   Scan Intake-03152022

but not limited to, an account of all physical injuries entered into such system, any duties under duress, work loss, and/or loss of enjoyment of life identifiers entered into such system, and any initial, interim, and/or final computer generated report or reports.

l.  Any and all documents between you and any attorney seeking a legal opinion as to the meaning of any term and/or provision of Plaintiffs' underinsured motorist policy.

m.  Any and all documents that indicate the amount of money in legal fees and costs you incurred in adjusting Plaintiffs' claim for underinsured motorist benefits.

n.  Any and all documents created, referenced, and/or used by any committee that was empowered to evaluate, investigate, and/or make any decision or decisions relative to Plaintiffs' claim for underinsured motorist benefits.

o.  Any and all documents exchanged between and among your employees regarding any aspect of Plaintiffs' claim for underinsured motorist benefits.

2.  Complete copy of the file of Safeco's defense attorney in the underlying underinsured motorist claim.

3.  Any and all claims logs relating to Plaintiffs' underinsured motorist claim, including but not limited to, adjuster's logs, supervisor's logs, manager's logs, navigation worksheets.

4.  All documents showing legal opinions prior to the date of the uninsured motorist claim award in the subject case.

5.  Copies of all emails between all personnel at Safeco relative to Plaintiffs' underinsured motorist claim.

5

DCN01202203140000112590441010 Date Received-20220314   Scan Intake-03152022

6.    All documents showing original reserves and all changes to the reserves on Plaintiffs' underinsured motorist claim.

7.    All documents showing method and criteria for setting all reserves.

8.    Documents pertaining to the establishment, existence, co-existence and activities of a "claim committee" and/or "roundtable" and/or any other Safeco employee meeting with regard to Plaintiffs' claim including the following:

     a.    Names of the committee members;

     b.    Any reports or directives issued by the committee or roundtable with regard to Plaintiffs' underinsured motorist claim.

9.    All investigative reports concerning Plaintiffs and Plaintiff and/or Plaintiffs' claim for underinsured motorist benefits including all written communications between Defendant Safeco and any third party.

10.    All status reports and/or interoffice memoranda in any form of the Defendant Safeco and their adjusters concerning Plaintiffs and/or Plaintiffs' UIM claim.

11.    All status reports and/or interoffice memoranda in any form of the Defendant Safeco and their adjusters concerning the medical expert used by Safeco in Defending Plaintiffs' UIM claim.

12.    Defendant Safeco's complete underwriting file referring or relating in any way to the Plaintiffs' policy at issue.

13.    All documents, memoranda, and/or logs of any kind which reflect what, if any, work, investigation and evaluations were done by Defendant Safeco and the Defendant adjusters in the time frame between the written communications that Safeco had sent to the Plaintiffs UIM attorney.

DCN01202203140000112590441010  Data Received-20220314    Scan Intake-03152022

14.    All documents, memoranda, and/or logs of any kind which reflect what investigation and evaluation of Plaintiffs' claim the Defendant Safeco and the Defendant adjusters had performed during the pendency of the Plaintiffs' UIM claim.

15.    Produce all documents, emails, memoranda and/or logs showing any authority to settle that was given by Safeco to any of the Defendant adjusters during the pendency of the UIM claim.

16.    Produce copies of all reports and curriculum vitae of every expert, expert witness or proposed expert witness that was consulted with respect to evaluating, investigating or defending the Plaintiffs' UIM claim.

17.    All documents relating to computer programs utilized by Safeco in evaluating and processing Plaintiffs' claim.

18.    Provide documentation, records, and/or other reports indicating every date that data relating to Plaintiffs' claim was entered into the any computer software program. For every date that data was entered, provide documentation, records, and/or other reports detailing with specificity the exact data that was entered into the program.

19.    Provide documentation, records, and/or other reports indicating each estimated value range produced by any computer software program and the date each value range was produced, in regards to Plaintiffs' claim.

20.    Any and all documentation, including but not limited to internal memoranda, which reflect or refer to Defendant Safeco's evaluations of the value of Plaintiffs' UIM claim, including but not limited to all settlement offers.

21.    If any of the documents or things requested above in requests one (1) through twenty (20) have not been produced because of a claim of privilege, please specifically identify

7

DCN0120220314000011250441010  Date Received-20220314   Scan Intake-03152022

that document and/or thing and identify the privilege you are asserting in reference to that document or thing

                    THE CURRAN FIRM, P.C.


              BY:    /s/ Ryan F. Curran
                     FRANCIS J. CURRAN, JR., ESQUIRE
                     RYAN F. CURRAN, ESQUIRE
Dated: March 03, 2022        Attorneys for Plaintiffs

FILED
03-08-2022 03:23 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA
04-13-2022 01:47 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

| | |
|---|---|
| LOANN PHAN-KRAMER and | : DELAWARE COUNTY COURT |
| JONERIK KRAMER, W/H | : OF COMMON PLEAS |
|       Plaintiffs | : |
|   vs. | : NO. CV 2022-1588 |
| | : |
| | : CIVIL ACTION - LAW |
| SAFECO CORPORATION | : |
|       Defendant | : |

## ORDER

NOW, this _____ day of _____, 2022, upon consideration of the foregoing Motion and any response hereto, it is hereby ORDERED that Defendant's Motion for Protective Order to Quash Plaintiffs' Pre-Complaint Discovery is hereby GRANTED.  A Protective Order is hereby entered and the Pre-Complaint Discovery is QUASHED.


BY THE COURT:


_____
                                          J.

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**
By: Brigid Q. Alford, Esquire
Pa. I.D. #38590
By: Allison L. Krupp, Esquire
Pa. I.D. #307013
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
717-651-3710
Attorneys for Defendant Safeco Corporation

| | |
|---|---|
| LOANN PHAN-KRAMER and<br>JONERIK KRAMER, W/H<br>　　　　　Plaintiffs<br><br>vs.<br><br>SAFECO CORPORATION<br>　　　　　Defendant | : DELAWARE COUNTY COURT<br>: OF COMMON PLEAS<br>:<br>: NO. CV 2022-1588<br>:<br>: CIVIL ACTION - LAW<br>:<br>: |

## ATTORNEY CERTIFICATION OF GOOD FAITH
### Pursuant to Delaware County Local R.C.P. 208.2(e)

The undersigned counsel for movant Safeco Corporation hereby certifies and attests that:

They have had the contacts described below with opposing counsel regarding discovery matter contained in the foregoing discovery motion in an effort to resolve the specific discovery dispute at issue and, further, that despite counsel's good faith attempts to resolve the dispute, counsel have been unable to do so without Court intervention.

*Telephone and email communication to opposing counsel seeking voluntary withdrawal of the Pre-Complaint Discovery. Initial discussions with counsel on April 7, 2022; follow up email communication on April 12, 2022. In response, on April 12, 2022, Plaintiffs' counsel advised that his clients do not concur in Safeco's Motion.*

CERTIFIED TO THE COURT BY:

Date:  4/13/2022

_____

Brigid Q. Alford, Esquire
Allison L. Krupp, Esquire
*Attorneys for Defendant Safeco Corporation*

Date:   04/13/2022

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**


BY: _____
Brigid Q. Alford, Esquire
Allison L. Krupp, Esquire
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
PH: (717) 651-3710 – FAX (717) 651-3707
bqalford@mdwcg.com/alkrupp@mdwcg.com
*Attorneys for Defendant Safeco Corporation*

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Record Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: _____ Defendant _____

Signature: _____

Name: Brigid Q. Alford, Esquire _____

Attorney No. (if applicable): _____ 38590 _____

## <u>CERTIFICATE OF SERVICE</u>

I, Brigid Q. Alford, Esquire, do hereby certify that a true and correct copy of the foregoing

was served upon the following via Electronic Filing System on the date specified below:

Ryan F. Curran, Esquire
Francis J. Curran, Jr., Esquire
THE CURRAN FIRM, P.C.
200 East State street, Suite 103
Media, PA 19063
*Attorneys for Plaintiffs Loann Phan-Kramer and Jonerik Kramer, w/h*

### MARSHALL DENNEHEY WARNER
### COLEMAN & GOGGIN

BY: _____

Brigid Q. Alford, Esquire
*Attorneys for Defendant Safeco Corporation*

Dated:  04/13/2022

# In The Court of Common Pleas of Delaware County, Pennsylvania

## COVER SHEET - NOTICE OF FILING OF MOTION OR PETITION UNDER LOCAL RULES OF CIVIL PROCEDURE

CASE CAPTION: LOANN PHAN-KRAMER and       CIVIL CASE NO.   CV 2022-1588
JONERIK KRAMER, W/H
v
SAFECO CORPORATION

NATURE OF MATTER FILED: (*please check one*)

☐ Petition Pursuant to Rule 206.1     ☐ Response to Petition     ☐ Motion for Judgment on the Pleadings Pursuant to Rule 1034(a)

☑ Motion Pursuant to Rule 208.1     ☐ Response to Motion     ☐ Summary Judgment Pursuant to Rule 1035.2

☐ Family Law Petition/Motion Pursuant to Rule 206.8

## FILING PARTY IS RESPONSIBLE FOR SERVICE OF THE RULE RETURNABLE DATE OR HEARING DATE UPON <u>ALL</u> PARTIES

A motion or petition was filed in the above captioned matter on the _____ day of $SULO , _____, which:

☑ Requires you, Respondent, to file an Answer within twenty (20) days of the above date to this notice, or risk the entry of an Order in favor of the Petitioner. Answers must be filed and time stamped by the Office of Judicial Support by 4:30 PM on the following date _____ _____, _____.

---

☐ Requires all parties, to appear at a hearing/conference on the _____ day of _____, _____, at _____ in Courtroom _____, Delaware County Courthouse, Media, Pennsylvania. At this hearing/conference you must be prepared to present all testimony and/or argument, and must ensure that your witnesses will be present.

---

☐ Was timely answered, thus requiring the scheduling of the following hearing in the above captioned matter on: _____ _____, _____ at 10:00 AM in Courtroom _____.

At this hearing, all parties must be prepared to present all testimony and/or argument and **must ensure that their witnesses will be present**.

---

☐ Qualifies as an Uncontested Motion or Petition, and as such requires neither an answer from the Respondent nor the scheduling of a hearing in this matter.

---

☐ Has been assigned to Judge _____.

---

## FOR OFFICE USE ONLY

Mailing date: _____       Processed by: _____

FILED
04-13-2022 01:47 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**
By: Brigid Q. Alford, Esquire
Pa. I.D. #38590
By: Allison L. Krupp, Esquire
Pa. I.D. #307013
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
717-651-3710
Attorneys for Defendant Safeco Corporation

| | |
|---|---|
| LOANN PHAN-KRAMER and JONERIK KRAMER, W/H<br>Plaintiffs<br><br>vs.<br><br>SAFECO CORPORATION<br>Defendant | : DELAWARE COUNTY COURT<br>: OF COMMON PLEAS<br>:<br>: NO. CV 2022-1588<br>:<br>: CIVIL ACTION - LAW<br>:<br>:<br>: |

## <u>DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO QUASH PLAINTIFFS' PRE-COMPLAINT DISCOVERY</u>

**I.     Factual and Procedural History**

On March 3, 2022, Plaintiffs Loann Phan-Kramer and Jonerik Kramer ("Kramers") filed a Praecipe to Issue a Writ of Summons on Defendant Safeco Corporation ("Safeco"), and the Prothonotary issued the Writ that same date. On March 13, 2022, the Kramers served the Writ on Safeco, accompanied by certain Pre-Complaint Discovery, in the form of a Request for Production of Documents.[1]  To date, the Kramers have not filed a Complaint in this matter.

---

[1] A true and correct copy of the Pre-Complaint Discovery was attached as Exhibit 1 to Safeco's Motion.

The proposed Pre-Complaint Discovery references, *inter alia.*, a "claim for underinsured motorist benefits," an alleged corresponding claim number, and an alleged corresponding insurance policy "issued by Defendants" (*sic*), but with no corresponding policy period. *See,* Ex. 1, para. 1. The proposed Pre-Complaint Discovery also references, *inter alia.*, an "uninsured claim award," without reference to a corresponding claim number, policy number, or date of award. *See,* Ex. 1, para. 4.

The proposed Pre-Complaint Discovery also requests, *inter alia.*, the production of documents not limited to a specific claim, policy, or loss, and/or otherwise not limited to any specified period of time. *See,* Ex. 1, paras. 4, 7.

## II.    Statement of Question Presented

**Should the Court grant Safeco Corporation's Motion, quash the Pre-Complaint Discovery, and stay all further discovery, pending the filing of a Complaint that sets forth a cognizable cause of action against Safeco?**

**Suggested Answer:  Yes.**

## III.    Argument

**The Court should grant Safeco Corporation's Motion, quash the Pre-Complaint Discovery, and stay all further discovery, pending the filing of a Complaint that sets forth a cognizable cause of action against Safeco.**

Within their discovery requests, the Kramers have not set forth facts sufficient to meet the prerequisites for Pre-Complaint Discovery under Pa. R. Civ. P. No. 4003.8, nor have they stated with particularity how the discovery will materially advance the preparation of the Complaint itself.

Because the Kramers have not yet filed a Complaint in this action, their Pre-Complaint Discovery must comply with Pa. R. Civ. P. 4003.8. That rule, in turn, states:

> a.    A plaintiff may obtain pre-complaint discovery where the
> information sought is material and necessary to the filing of the

> complaint and the discovery will not cause unreasonable
> annoyance, embarrassment, oppression, burden or expense to any
> person or party.
>
> b.   Upon a motion for protective order or other objection to plaintiff's
>      pre-complaint discovery, the court may require plaintiff to state with
>      particularity how the discovery will materially advance the
>      preparation of the complaint.  In deciding the motion or other
>      objection, the court shall weigh the importance of the discovery
>      request against the burdens imposed on any person or party from
>      whom the discovery is sought.

The documents requested within the Kramers' discovery requests are neither reasonable nor necessary to the filing of a Complaint in the pending action; to the contrary, they reflect nothing more than the very type of "fishing expedition," that Pennsylvania state courts have routinely denounced, and represent an amorphous discovery process to detect or construct a cause of action that the Kramers do not have.

The Pennsylvania Supreme Court has explained the rationale and scope of pre-complaint discovery as follows:

> [P]re-complaint discovery is a means to the specific end of gathering
> sufficient information for the filing of a complaint, and is appropriate only
> when there is probable cause to believe it will achieve that end.
>
> Accordingly, to obtain pre-complaint discovery a litigant should be required
> to demonstrate his good faith as well as probable cause that the information
> sought is both material and necessary to the filing of a complaint in a
> pending action.  A plaintiff should describe with reasonable detail the
> materials sought, and state with particularity probable cause for believing
> the information will materially advance his pleading, as well as
> averring that, but for the discovery request, he will be unable to formulate a
> legally sufficient pleading. Under no circumstance should a plaintiff be
> allowed to embark upon a "fishing expedition," or otherwise rely on an
> amorphous discovery process to detect a cause of action he lacks
> probable cause to anticipate prior to the pre-complaint discovery process
> under this standard.

3

*McNeil v. Jordan*, 894 A.2d 1260 (Pa. 2006). Nothing within the Pre-Complaint Discovery that the Kramers served on Safeco remotely suggests that the Kramers' Requests meet that high standard.

To the contrary, it is clear that the Kramers are using (or abusing) Rule 4003.8 in order to "test the waters," to determine if some putative cause of action might exist. Pennsylvania courts have precluded plaintiffs from executing that type of litigation "strategy." *See, e.g., Crown Marketing Equipment v. Provident Nat'l Bank*, 3 Pa. D & C. 3d 364, 366 (Phila. Co. 1977)(plaintiff may never utilize pre-complaint discovery as means by which to test the waters to determine if cause of action exists; motion for protective order granted: "Additional defendants are entitled to know the claim being made against them as set forth in a complaint"). *See also, Sweeting v. Philly Trampoline Parks*, No. 160301133 (Phila. Co. 2016)(plaintiff motion to compel answers to Pre-Complaint Discovery denied). And, in the case of *Rader v. Hospital Service Association of Northeastern Pennsylvania*, 2011 WL 1131486 (Lack. Co. 2011), the trial court sustained defense objections to plaintiff's pre-complaint discovery, finding the requests unreasonable and neither material or necessary for plaintiff to draft complaint.

The *Rader* case arose from the defendants' alleged failure to pay certain medical bills. The pre-complaint discovery at issue there included an overly broad and undisputedly burdensome request for "any and all" providers agreements, as defined in the contract between Rader and the defendants for certain procedures – not unlike the Kramers' requests for "any and all documents," "any and all claims logs," "all documents showing method and criteria for setting all reserves," "all investigative reports," "all status reports," etc., etc.[2] The court found that Rader was capable

---

[2] Indeed, the Kramers' requests are even broader than those that Rader had served – and that the trial court had effectively quashed, when it affirmed the Special Trial Master's denial of Rader's motion for pre-complaint discovery.

of drafting a complaint without needing to review the requested documents. So, too, are the Kramers.[3]

At the same time, it is clear that the Kramers' Pre-Complaint Discovery reflects a present, general awareness and understanding of what the nature of their putative cause of action would be: some amorphous challenge – however contrived – to Safeco's handling of a claim for underinsured motorist benefits that the Kramers had presented, and (apparently) to how Safeco defended itself in the adversarial UIM/contract litigation that the Kramers had previously filed against it. Given that level of "awareness," then, the documents and information requested in Kramers' Pre-Complaint Discovery are not material or necessary for filing a Complaint, nor have the Kramers established such materiality or necessity. Reaching such a conclusion would hardly be a novel resolution for a Pennsylvania trial court. In *Anderson v. PennDOT*, 47 Pa. D. & C. 3d 429, 431 (Cumb. Co. 1987), for example, Anderson had served a Petition to allow pretrial discovery in a case arising from a motor vehicle accident. The defendant objected to the pre-complaint discovery – just as Safeco has done here.

Recognizing that some authority allows pre-complaint discovery "in certain limited and controlled situations," the court found that Anderson's case wasn't one of them: "We are at a loss to conclude from the averments in plaintiff's petition that, without pre-complaint discovery, he cannot draft a complaint. He knows where and how the accident happened; therefore, if the Department of Transportation is negligent, he can plead the material facts in support of a cause of action as required by Pa. R.C.P. 1019(a)." *Id.* at 431. He also knew who had made and distributed the helmet that he had been wearing. As such, he "simply has not set forth in his petition averments

---

[3] And the fact that the Kramers can draft a complaint without burdening Safeco with oppressive, burdensome, invasive, and potentially objectionable discovery does not, of course, mean that the Complaint itself may be subject to preliminary challenge, on other grounds and for other reasons unrelated to the instant Pre-Complaint Discovery issue. But that is, potentially, another argument for another day.

necessary to form a sufficient basis for subjecting defendants to pre-complaint discovery." *Id.* at 432.

Neither have the Kramers. They know where and how the underlying accident happened. They know how the underlying UIM claim arose. They know what the ultimate resolution of that claim was. That much is clear from the references and descriptions and allusions contained in the Requests themselves. As such, Safeco respectfully suggests that, like the *Anderson* court, this Court will reasonably find itself "at a loss" to conclude, from a review of the discovery requests, that without pre-complaint discovery the Kramers could not draft a complaint.

Moreover, the Kramers' Pre-Complaint Discovery is not sought in good faith and serves only to cause Safeco unreasonable annoyance, oppression, embarrassment, burden and expense, as the requests are overly broad and not narrowly tailored to seek information to assist in the development of a Complaint or a cognizable cause of action. *See, Ryder v SCI-Coal Township*, 2016 WL 1063234 (Pa. Super. 2016)(quashing appeal of trial court's denial of discovery requests that were "overly broad and encompass[ed] material . . . not necessary to the preparation of a complaint").

It is critical as well to recognize that any response to the Pre-Complaint Discovery is fraught with prejudice for Safeco, as it would be forced to answer and/or identify and raise objections to discovery in a vacuum, without knowledge or understanding of the exact cause or causes of action being alleged against it in the first place.

## IV.    Conclusion

In conclusion, having been unable to resolve this matter without Court action, Defendant Safeco Corporation respectfully moves the Court to enter a Protective Order quashing the Pre-

Complaint Discovery, and otherwise staying discovery unless and until the Kramers have first filed a Complaint setting forth a cognizable cause of action against it.

Date:    04/13/2022

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

BY: _____

Brigid Q. Alford, Esquire
Allison L. Krupp, Esquire
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
PH: (717) 651-3710 – FAX (717) 651-3707
bqalford@mdwcg.com/alkrupp@mdwcg.com
*Attorneys for Defendant Safeco Corporation*

7

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Record Public Access*

*Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information

and documents differently than non-confidential information and documents.

Submitted by: _____Defendant_____

Signature: _____

Name: Brigid Q. Alford, Esquire_____

Attorney No. (if applicable): _____38590_____

8

## CERTIFICATE OF SERVICE

I, Brigid Q. Alford, Esquire, do hereby certify that a true and correct copy of the foregoing

was served upon the following via Electronic Filing System on the date specified below:

Ryan F. Curran, Esquire
Francis J. Curran, Jr., Esquire
THE CURRAN FIRM, P.C.
200 East State street, Suite 103
Media, PA 19063
*Attorneys for Plaintiffs Loann Phan-Kramer and Jonerik Kramer, w/h*

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

BY: _____

Brigid Q. Alford, Esquire
*Attorneys for Defendant Safeco Corporation*

Dated:  04/13/2022

9

| | |
|---|---|
| LOANN PHAN-KRAMER and<br>JONERIK KRAMER, W/H, | DELAWARE COUNTY COURT<br>OF COMMON PLEAS |
| | CIVIL ACTION – LAW |
| *Plaintiffs*<br>v. | |
| SAFECO CORPORATION, | NO. CV 2022-1588 |
| *Defendant* | |

AND NOW, this day of _____, 2022, upon consideration of the Defendant's Motion and Plaintiffs' response hereto, it is hereby **ORDERED** that Defendant's Motion for Protective Order to Quash Plaintiffs' Pre-Complaint Discovery is hereby **DENIED**. Defendant shall answer Plaintiffs' Pre-Complaint Discovery Requests, without objection, within ten (10) days from the date of this Order.

**BY THE COURT:**

_____

**J.**

**THE CURRAN FIRM, P.C.**                                    Attorneys for Plaintiffs
BY: FRANCIS J. CURRAN JR., ESQUIRE
Attorney I.D. No. 47198
BY: RYAN F. CURRAN, ESQUIRE
Attorney I.D. No. 313188
200 East State Street, Suite 103
Media, PA 19063
Ph.: (610)-566-5300 / Fax: (610) 566-6114

| | |
|---|---|
| LOANN PHAN-KRAMER and JONERIK KRAMER, W/H, | DELAWARE COUNTY COURT OF COMMON PLEAS |
| | CIVIL ACTION – LAW |
| *Plaintiffs* | |
| v. | NO. CV 2022-1588 |
| SAFECO CORPORATION, | |
| *Defendant* | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER
TO QUASH PLAINTIFFS' PRE-COMPLAINT DISCOVERY**

Plaintiffs, Loann Phan-Kramer and Jonerik Kramer, w/h, by and through their undersigned

attorneys, The Curran Firm, P.C., hereby move this Honorable Court to deny the motion for

protective order of Defendant in the above-entitled action and compel the Defendant to answer

Plaintiffs' pre-complaint discovery requests, and in support thereof avers as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted in part and denied in part. It is admitted that the pre-complaint discovery

references, a claim for underinsured motorist benefits, a corresponding claim number, and a

corresponding insurance policy issued by Defendant. It is denied that Defendant is unaware of the

policy period that corresponds with the UIM claim number issued by them; this is especially true

1 | P a g e

since the corresponding claim number pertains to an underinsured motorist case against the Defendant that a jury awarded $480,000.00 to the Plaintiffs in UIM damages, and where the Defendant made no offers to settle the UIM claim. For Defendant to claim ignorance of the policy period on a UIM case in which the delay damages alone ($21,048.56) were twenty-one thousand times the amount of their offer to settle, is disingenuous. <u>See</u> Entry of Judgment Order attached hereto as **Exhibit "A"**.

Moreover, if the Defendant is truly ignorant of the UIM claim and policy that is the subject of Plaintiff's pre-complaint discovery, despite it being specifically referenced in Request No.1, then a protective order is not the appropriate remedy to cure defendant's obliviousness. Plaintiffs' Request for Production No. 1 is as follows:

> 1. Each and every claims file, in its entirety, including, but not limited to, branch, regional, and home office claims files pertaining to the claim for underinsured motorist benefits submitted by or on behalf of Plaintiffs', Claim No. 774957226036, under their Insurance Policy, policy number K3001008, issued by Defendants, with an effective date, including, but not limited to . . .

<u>See</u> Plaintiffs' Request for Production of Document attached hereto as **Exhibit "B"**.

5. It is denied that Defendant is unaware of the UIM claim award, date of the jury verdict against, and the claim number for which the UIM claim was made when a jury awarded $480,000.00 to the Plaintiffs in UIM damages against the Defendant, and where the Defendant made no offers to settle the UIM claim. For Defendant to claim ignorance of the UIM claim award on a UIM case in which the delay damages alone ($21,048.56) were twenty-one thousand times the amount of their offer to settle, is disingenuous. <u>See</u> Entry of Judgment Order attached hereto as **Exhibit "A"**.

Moreover, if the Defendant is truly ignorant of the UIM claim and policy that is the subject of Plaintiff's pre-complaint discovery, despite it being specifically referenced in Request No.1, then a protective order is not the appropriate remedy to cure defendant's obliviousness. Plaintiffs' Request for Production No. 1 is as follows:

> 1. Each and every claims file, in its entirety, including, but not limited to, branch, regional, and home office claims files pertaining to the claim for underinsured motorist benefits submitted by or on behalf of Plaintiffs', Claim No. 774957226036, under their Insurance Policy, policy number K3001008, issued by Defendants, with an effective date, including, but not limited to . . .

<u>See</u> Plaintiffs' Request for Production of Document attached hereto as **Exhibit "B"**.

6. It is denied that Defendant is unaware of the UIM claim award, date of the jury verdict against, and the claim number for which the UIM claim was made when a jury awarded $480,000.00 to the Plaintiffs in UIM damages against the Defendant, and where the Defendant made no offers to settle the UIM claim. For Defendant to claim ignorance of the UIM claim award on a UIM case in which the delay damages alone ($21,048.56) were twenty-one thousand times the amount of their offer to settle, is disingenuous. <u>See</u> Entry of Judgment Order attached hereto as **Exhibit "A"**.

Moreover, if the Defendant is truly ignorant of the UIM claim and policy that is the subject of Plaintiff's pre-complaint discovery, despite it being specifically referenced in Request No.1, then a protective order is not the appropriate remedy to cure defendant's obliviousness. Plaintiffs' Request for Production No. 1 is as follows:

> 1. Each and every claims file, in its entirety, including, but not limited to, branch, regional, and home office claims files pertaining to the claim for underinsured motorist benefits submitted by or on behalf of Plaintiffs', Claim No. 774957226036, under their Insurance Policy, policy number

> K3001008, issued by Defendants, with an effective date, including, but not limited to . . .

See Plaintiffs' Request for Production of Document attached hereto as **Exhibit "B"**.

7.  Denied. Pa. R. Civ. P. No. 4003.8 does not require a party to state with particularity within the discovery requests how the discovery will materially advance the preparation of the Complaint itself. Rather, only upon a motion for a protective order, may the court require the plaintiff to state with particularity how the discovery will materially advance the preparation of the Complaint itself. Additionally, Pa. R. Civ. P. No. 4003.8 does not require a Plaintiff to meet any "prerequisites" in order to obtain pre-complaint discovery. Rather, Pa. R. Civ. P. No. 4003.8 permits Plaintiff to obtain pre-complaint discovery where the information sought is material and necessary to the filing of the complaint and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden, or expense to the opposing party. It is Plaintiffs position that, the limited information sought in Plaintiffs pre-complaint discovery is in fact material and necessary to the filing of the complaint and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden or expense to any person or party.

8.  Denied. The limited information sought in Plaintiffs pre-complaint discovery is in fact material and necessary to the filing of the complaint. Simply because Plaintiffs have chosen to exercise their legally permissible right, under the rules of civil procedure, to seek pre-complaint discovery, does not somehow equate to a fishing expedition.

9.  Denied. Plaintiffs seek necessary information through their pre-complaint discovery which will materially advance the preparation of the complaint. This is a case of known bad faith, a two-and-a-half (2 ½) years underinsured motorist case against the Defendant that a jury awarded $480,000.00 to the Plaintiffs in UIM damages, where the Defendant made no offers to settle the UIM claim, and where the delay damages alone ($21,048.56) were twenty-one thousand times the

amount of their offer to settle. At the time of trial, the Defendant defended their case on a singular argument: that the Plaintiff attended forty-three (43) physical therapy visits and never complained about an injured shoulder, therefore, Plaintiff never suffered the shoulder injury which is the subject of her UIM claims.

However, each and every one of the records of her physical therapy visits, in addition to her orthopedic doctors' visits, included shoulder treatments, shoulder injections, and shoulder complaints. In fact, the Defendant presented an expert who repeated this theory even it was known not to be true. Obviously, the jury rejected the Defendant's false claims when presented with the actual medical records and awarded for the Plaintiff.

Accordingly, the subject of Plaintiff's pre-trial discovery is centered on obtaining information regarding Defendant's investigation of Plaintiff's injuries and their justification for making no offers to their own insureds. This information is necessary and material to the drafting of Plaintiffs' complaint. Plaintiffs have no ability to obtain this information.

An insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for a denial of payment in whole or in part. *McLaughlin v. Connecticut Gen. Life Ins. Co.*, 565 F.Supp. 434,454 (N.D. Cal.1983); *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986) ("Indifference to facts or failure to investigate are sufficient to establish the tort of bad faith.")

Bad-faith actions against an insurer, like actions by client against attorney, patient against doctor, can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did. The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this the need for the information in the file is not only substantial, but overwhelming. The

substantial equivalent of this material cannot be obtained through other means of discovery. The claims file "diary" is not only likely to lead to evidence, but to be very important evidence on the issue of whether the insurer acted reasonably. Here we know the Defendant insurer acted unreasonably when they refused to offer any amount on Plaintiff's UIM claim based on their investigation of the Plaintiff's injuries. However, in order to draft the complaint, the information sought in Plaintiff's discovery regarding the actors involved, dates of investigations and/or reevaluations, the types of investigations performed, and the processing of the claim in necessary and will material to filing the complaint.

Further, In *Kennedy v. Allstate*, No. CV-2017-011373, this Honorable Court was faced with the same arguments by a defendant insurer regarding the production of pre-complaint discovery. After oral arguments on the matter, the Honorable G. Michael Green denied defendant's motion a compelled defendant to answer plaintiff's pre-complaint discovery. See Transcript of Proceedings and Order attached hereto as **Exhibit "C"**.

10. Admitted that Plaintiffs have a general awareness of what the putative cause of action will be.

11. Denied for the reasons set forth in Paragraph No. 9 above.

12. Denied for the reasons set forth in Paragraph No. 9 above. By way of further answer, the production of these common documents will not cause Safeco any unreasonable annoyance, embarrassment, oppression, burden, or expense – to obtain these documents nothing more than a few clicks of the mouse button is required.

13. Denied. Defendants are well aware of this bad faith claim and the causes of action that accompany a bad faith claim. Counsel for the Defendant practices only in insurance bad faith

defense; by hiring counsel for Defendant, it is obvious that Defendant already anticipated a bad faith action.

14. Admitted.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court deny Defendant's Motion for Protective Order to Quash Plaintiffs' Pre-Complaint Discovery and compel Defendant to answer Plaintiffs' Pre-Complaint Discovery Requests, within ten (10) days from the date of this Order.

Respectfully submitted,

**THE CURRAN FIRM, P.C.**

Date:  <u>May 3, 2022</u>          By:  <u>/s/ Ryan F. Curran</u>
                                        **RYAN F. CURRAN, ESQUIRE**
                                        **Attorney for Plaintiffs**

**THE CURRAN FIRM, P.C.**
BY: FRANCIS J. CURRAN JR., ESQUIRE                    Attorneys for Plaintiffs
Attorney I.D. No. 47198
BY: RYAN F. CURRAN, ESQUIRE
Attorney I.D. No. 313188
200 East State Street, Suite 103
Media, PA 19063
Ph.: (610) 566-5300 / Fax: (610) 566-6114

| | |
|---|---|
| LOANN PHAN-KRAMER and JONERIK KRAMER, W/H, | DELAWARE COUNTY COURT OF COMMON PLEAS |
| | CIVIL ACTION – LAW |
| *Plaintiffs* | |
| V. | |
| SAFECO CORPORATION, | NO. |
| *Defendant* | |

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO QUASH PLAINTIFFS' PRE-COMPLAINT DISCOVERY

Plaintiffs, Loann Phan-Kramer and Jonerik Kramer, w/h, by and through their undersigned attorneys, The Curran Firm, P.C., hereby move this Honorable Court to deny the motion for protective order of Defendant in the above-entitled action and compel the Defendant to answer Plaintiffs' pre-complaint discovery requests, and in support thereof avers as follows:

**I.      Factual and Procedural History**

On March 3, 2022, Plaintiffs Loann Phan-Kramer and Jonerik Kramer ("Kramers") filed a Praecipe to Issue a Writ of Summons on Defendant Safeco Corporation ("Safeco"), and the Prothonotary issued the Writ that same date. On March 13, 2022, the Kramers served the Writ on Safeco, accompanied by certain Pre-Complaint Discovery, in the form of a Request for Production of Documents.

The pre-complaint discovery references a claim for underinsured motorist benefits, a corresponding claim number, and a corresponding insurance policy issued by Defendant, i.e.,

> Each and every claims file, in its entirety, including, but not limited to, branch, regional, and home office claims files pertaining to the claim for underinsured motorist benefits submitted by or on behalf of Plaintiffs', Claim No. 774957226036, under their Insurance Policy, policy number K3001008, issued by Defendants, with an effective date, including, but not limited to . . .

See Plaintiffs' Request for Production of Document attached hereto as **Exhibit "B"**.

It is denied that Defendant is unaware of the policy period that corresponds with the UIM claim number issued by them; this is especially true since the corresponding claim number pertains to an underinsured motorist case against the Defendant that a jury awarded $480,000.00 to the Plaintiffs in UIM damages, and where the Defendant made no offers to settle the UIM claim. For Defendant to claim ignorance of the policy period on a UIM case in which the delay damages alone ($21,048.56) were twenty-one thousand times the amount of their offer to settle, is disingenuous. See Entry of Judgment Order attached hereto as **Exhibit "A"**.

Moreover, if the Defendant is truly ignorant of the UIM claim and policy that is the subject of Plaintiff's pre-complaint discovery, despite it being specifically referenced in Request No.1, then a protective order is not the appropriate remedy to cure defendant's obliviousness. Plaintiffs' Request for Production No. 1 is as follows:

> 1. Each and every claims file, in its entirety, including, but not limited to, branch, regional, and home office claims files pertaining to the claim for underinsured motorist benefits submitted by or on behalf of Plaintiffs', Claim No. 774957226036, under their Insurance Policy, policy number K3001008, issued by Defendants, with an effective date, including, but not limited to . . .

See Plaintiffs' Request for Production of Document attached hereto as **Exhibit "B"**.

It is further denied that Defendant is unaware of the UIM claim award, date of the jury verdict against, and the claim number for which the UIM claim was made when a jury awarded $480,000.00 to the Plaintiffs in UIM damages against the Defendant, and where the Defendant made no offers to settle the UIM claim. For Defendant to claim ignorance of the UIM claim award on a UIM case in which the delay damages alone ($21,048.56) were twenty-one thousand times the amount of their offer to settle, is disingenuous. See Entry of Judgment Order attached hereto as **Exhibit "A"**.

## II.    Statement of the Question Presented

**Should this Honorable Court deny Defendant's Motion when the pre-complaint discovery sought is material and necessary to the filing of the complaint?**

*Suggested Answer: Yes*

## III.    Argument

**This Honorable Court should follow Pa. R. Civ. P. No. 4003.8 and permit Plaintiffs to obtain pre-complaint discovery where the information sought is material and necessary to the filing of the complaint**

Pa. R. Civ. P. No. 4003.8 does not require a party to state with particularity within the discovery requests how the discovery will materially advance the preparation of the Complaint itself. Rather, only upon a motion for a protective order, may the court require the plaintiff to state with particularity how the discovery will materially advance the preparation of the Complaint itself. Additionally, Pa. R. Civ. P. No. 4003.8 does not require a Plaintiff to meet any "prerequisites" in order to obtain pre-complaint discovery. Rather, Pa. R. Civ. P. No. 4003.8 permits Plaintiff to obtain pre-complaint discovery where the information sought is material and necessary to the filing of the complaint and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden, or expense to the opposing party. It is Plaintiffs position that

the limited information sought in Plaintiffs' pre-complaint discovery is in fact material and necessary to the filing of the complaint and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden or expense to any person or party.

In accordance with Pa. R. Civ. P. No. 4003.8, the limited information sought in Plaintiffs' pre-complaint discovery is in fact material and necessary to the filing of the complaint. Simply because Plaintiffs have chosen to exercise their legally permissible right, under the rules of civil procedure, to seek pre-complaint discovery, does not somehow equate to a fishing expedition.

Plaintiffs seek necessary information through their pre-complaint discovery which will materially advance the preparation of the complaint. This is a case of known bad faith, a two-and-a-half (2 ½) years underinsured motorist case against the Defendant that a jury awarded $480,000.00 to the Plaintiffs in UIM damages, where the Defendant made no offers to settle the UIM claim, and where the delay damages alone ($21,048.56) were twenty-one thousand times the amount of their offer to settle. At the time of trial, the Defendant defended their case on a singular argument: that the Plaintiff attended forty-three (43) physical therapy visits and never complained about an injured shoulder, therefore, Plaintiff never suffered the shoulder injury which is the subject of her UIM claims.

However, each and every one of the records of her physical therapy visits, in addition to her orthopedic doctors' visits, included shoulder treatments, shoulder injections, and shoulder complaints. In fact, the Defendant presented an expert who repeated this theory even it was known not to be true. Obviously, the jury rejected the Defendant's false claims when presented with the actual medical records and awarded for the Plaintiff.

Accordingly, the subject of Plaintiffs' pre-trial discovery is centered on obtaining information regarding Defendant's investigation of Plaintiff's injuries and their justification for

making no offers to their own insureds. This information is necessary and material to the drafting of Plaintiffs' complaint. Plaintiffs' have no ability to obtain this information.

An insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for a denial of payment in whole or in part. *McLaughlin v. Connecticut Gen. Life Ins. Co.*, 565 F.Supp. 434,454 (N.D. Cal.1983); *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986) ("Indifference to facts or failure to investigate are sufficient to establish the tort of bad faith.")

Bad-faith actions against an insurer, like actions by client against attorney, patient against doctor, can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did. The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this the need for the information in the file is not only substantial, but overwhelming. The substantial equivalent of this material cannot be obtained through other means of discovery. The claims file "diary" is not only likely to lead to evidence, but to be very important evidence on the issue of whether the insurer acted reasonably. Here we know the Defendant insurer acted unreasonably when they refused to offer any amount on Plaintiff's UIM claim based on their investigation of the Plaintiff's injuries. However, in order to draft the complaint, the information sought in Plaintiffs' discovery regarding the actors involved, dates of investigations and/or reevaluations, the types of investigations performed, and the processing of the claim in necessary and will material to filing the complaint.

Further, In *Kennedy v. Allstate*, No. CV-2017-011373, this Honorable Court was faced with the same arguments by a defendant insurer regarding the production of pre complaint discovery in an insurance bad faith case. After oral arguments on the matter, the Honorable G.

Michael Green denied defendant's motion a compelled defendant to answer Plaintiff's pre-complaint discovery. See Transcript of Proceedings and Order attached hereto as **Exhibit "C"**.

IV.    **CONCLUSION**

For all of the aforementioned reasons, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion for Protective Order to Quash Plaintiffs' Pre-Complaint Discovery and compel Defendant to answer Plaintiffs' Pre-Complaint Discovery Requests, within ten (10) days from the date of this Order.

Respectfully submitted,

**THE CURRAN FIRM, P.C.**

Date:  May 3, 2022                    By:  /s/ Ryan F. Curran
                                          **RYAN F. CURRAN, ESQUIRE**
                                          **Attorney for Plaintiffs**

EXHIBIT "A"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LOANN PHAN-KRAMER, ET AL.  :
          :
  **v.**        :  **CIVIL ACTION NO. 19-3083**
          :
SAFECO CORPORATION   :

## ORDER

This 23rd day of September, 2021, pursuant to Defendant's oral motion on the record in open court, without objection from Plaintiffs, it is hereby **ORDERED** that the jury's verdict in Plaintiffs' favor in the total amount of $480,000.00 is molded to the sum of $380,000.00, in accordance with the terms of the insurance policy for underinsured motorist benefits which formed the basis for this action.

               /s/ Gerald Austin McHugh
              United States District Judge

EXHIBIT "B"

**THE CURRAN FIRM, P.C.**
BY: FRANCIS J. CURRAN JR., ESQUIRE                    Attorneys for Plaintiffs
Attorney I.D. No. 47198
BY: RYAN F. CURRAN, ESQUIRE
Attorney I.D. No. 313188
200 East State Street, Suite 103
Media, PA 19063
(610)-566-5300

| | |
|---|---|
| LOANN PHAN-KRAMER and <br> JONERIK KRAMER, W/H, <br><br>               *Plaintiffs* <br>     V. <br><br> SAFECO CORPORATION, <br><br>            *Defendant* | DELAWARE COUNTY COURT <br> OF COMMON PLEAS <br><br> CIVIL ACTION – LAW <br><br><br> NO. |

## PLAINTIFFS' PRE-COMPLAINT DISCOVERY PURSUANT TO Pa.R.Civ.P. 4003.8 IN THE FORM OF REQUESTS FOR PRODUCTION OF DOCUMENTS, ADDRESSED TO DEFENDANTS

TO THE DEFENDANTS: You are hereby requested to produce the following items for inspection and copying, pursuant to Pennsylvania Rules of Civil Procedure 4003.8, 4009.1, 4009.11, **within thirty (30) days** from the date of this request, at the offices of The Curran Firm, P.C., 200 East State St., Suite 103, Media, Pennsylvania 19063.

These Requests are deemed to be continuing; as such, Defendants' answers to these Requests must be supplemented prior to trial, when, and in the event that, information becomes available to the Defendants, which would supplement, or make more complete, change, alter and/or modify any of the Requests previously responded to.

### Definitions and Instructions

It is not Plaintiffs' intention to request production of privileged matter. If any materials requested are claimed to be privileged, please list the following for each item claimed to be privileged:

A brief description of the nature and contents of the matter claimed to be privileged;

1

The name, occupation and capacity of the individual from whom the privileged matter emanated;

The name, occupation and capacity of the individual to whom the allegedly privileged matter was directed;

The date the items bear; and

The privilege claimed.

**The following designated items for discovery and production pertain to the subject insurance policy and the underlying claims of Plaintiffs.**

The term "documents" is an all-inclusive term referring to any written and/or recorded or photographic matter, however produced or reproduced. The term "documents" includes without limitation: correspondence, E-mail, memoranda, inter-office communications, minutes, reports, notes, schedules, analyses, drawings, diagrams, tables, graphs, charts, maps, surveys, books and accounts, ledgers, invoices, purchase orders, pleadings, questionnaires, contracts, bills, checks, drafts, diaries, logs, proposals, print-outs, recordings, telegrams, films, and all other such documents tangible or retrievable by any means. "Documents" also includes any preliminary notes or drafts of all the foregoing in whatever form, for example: printed, typed, longhand, shorthand, on paper, on paper tape, tabulating cards, ribbons, blueprints, magnetic tape, microfilm, film, motion picture film, photographs, records, computer software, or other form.

With respect to documents, the term "identify" means to give the date, title, author and addressee, "identify" with respect to documents further means:

1. To describe the document sufficiently well to enable the interrogator to know what the document is and retrieve it from a file or wherever it may be located;

2. To describe in a manner suitable for use as a description in a subpoena;

3. All inter-office memoranda or other form of written communication of any employee of Defendant relating to the initial processing of the claim listed above when Defendant first received said claim;

4. All inter-office memoranda or other form of written communication of any employee of Defendant relating to the continued processing of the claim listed above;

5. The complete underwriting file pertaining to the above-mentioned policy of insurance from its inception to the present time, including but not limited to the file folder or file

folders themselves, adjacent exhibit folders, all papers, documents, and investigative reports directly pertaining to the above-mentioned insurance policy and Plaintiffs' underlying claim, including but not limited to the inter-office memoranda or notes pertaining to the above-mentioned policy of insurance, and Plaintiffs' underlying claim, and any and all written communications or statements made between Defendant and other parties, which directly pertain to the third party action filed against your insured for which you provided coverage.

   6. To give the name, address, position or title of the person(s) who has (have) custody of the document and/or copies of the document.

   7. The words "you," "your," "defendant" or "insurer" are used herein to indicate defendant and the person responding to the Request for Production of Documents.

   8. The name "Defendant Safeco," as used herein, refers collectively to Defendant Safeco Insurance, and Defendant Safeco Insurance Company, and American States Insurance Company.

<u>**Request for Production of Documents**</u>

1. Each and every claims file, in its entirety, including, but not limited to, branch, regional, and home office claims files pertaining to the claim for underinsured motorist benefits submitted by or on behalf of Plaintiffs', Claim No. 774957226036, under their Insurance Policy, policy number K3001008, issued by Defendants, with an effective date, including, but not limited to:

  a. Any and all documents created, referenced and/or used by you to investigate, analyze and/or evaluate Plaintiffs' claim for underinsured motorist benefits.

  b. Any and all documents created, referenced and/or used by you to place a monetary value or range of values on Plaintiffs' claim for underinsured motorist benefits.

  c. Any and all documents that are contained within any "claims log" or other such journal, account, diary and/or archive of events, correspondence, evaluations, opinions and/or investigations relating to Plaintiffs' claim for underinsured motorist benefits.

d.  Any and all documents created, referenced and/or used by you to determine the monetary authority that any claims adjuster or adjusters had to settle Plaintiffs' claim for underinsured motorist benefits.

e.  Any and all documents that were submitted by any claims adjuster or adjusters to any employee with supervisory authority regarding Plaintiffs' claim for underinsured motorist benefits.

f.  Any and all documents that were submitted to any medical peer review or other such records review company or organization relative to Plaintiffs' claim for underinsured motorist benefits.

g.  Any and all documents between you and any health professional, medical expert and/or expert witness service that were created and/or consulted regarding Plaintiffs' claim for underinsured motorist benefits.

h.  Any and all expert or other such evaluative reports submitted to you by any health care professional, medical expert, and/or expert witness service with regard to Plaintiffs' claim for underinsured motorist benefits.

i.  Any and all documents created, referenced, and/or used by you to determine if Plaintiffs' was or was not a covered insured relative to his claim for underinsured motorist benefits.

j.  Any and all documents that express a legal opinion, conclusion, theory and/or contain legal research regarding Plaintiffs' claim for underinsured motorist benefits.

k.  Any and all documents contained within the any claims adjustment software program relative to Plaintiffs' claim for underinsured motorist benefits, including,

but not limited to, an account of all physical injuries entered into such system, any duties under duress, work loss, and/or loss of enjoyment of life identifiers entered into such system, and any initial, interim, and/or final computer generated report or reports.

l.  Any and all documents between you and any attorney seeking a legal opinion as to the meaning of any term and/or provision of Plaintiffs' underinsured motorist policy.

m. Any and all documents that indicate the amount of money in legal fees and costs you incurred in adjusting Plaintiffs' claim for underinsured motorist benefits.

n.  Any and all documents created, referenced, and/or used by any committee that was empowered to evaluate, investigate, and/or make any decision or decisions relative to Plaintiffs' claim for underinsured motorist benefits.

o.  Any and all documents exchanged between and among your employees regarding any aspect of Plaintiffs' claim for underinsured motorist benefits.

2.  Complete copy of the file of Safeco's defense attorney in the underlying underinsured motorist claim.

3.  Any and all claims logs relating to Plaintiffs' underinsured motorist claim, including but not limited to, adjuster's logs, supervisor's logs, manager's logs, navigation worksheets.

4.  All documents showing legal opinions prior to the date of the uninsured motorist claim award in the subject case.

5.  Copies of all emails between all personnel at Safeco relative to Plaintiffs' underinsured motorist claim.

5

6.     All documents showing original reserves and all changes to the reserves on Plaintiffs' underinsured motorist claim.

7.     All documents showing method and criteria for setting all reserves.

8.     Documents pertaining to the establishment, existence, co-existence and activities of a "claim committee" and/or "roundtable" and/or any other Safeco employee meeting with regard to Plaintiffs' claim including the following:

  a.     Names of the committee members;

  b.     Any reports or directives issued by the committee or roundtable with regard to Plaintiffs' underinsured motorist claim.

9.     All investigative reports concerning Plaintiffs and Plaintiff and/or Plaintiffs' claim for underinsured motorist benefits including all written communications between Defendant Safeco and any third party.

10.     All status reports and/or interoffice memoranda in any form of the Defendant Safeco and their adjusters concerning Plaintiffs and/or Plaintiffs' UIM claim.

11.     All status reports and/or interoffice memoranda in any form of the Defendant Safeco and their adjusters concerning the medical expert used by Safeco in Defending Plaintiffs' UIM claim.

12.     Defendant Safeco's complete underwriting file referring or relating in any way to the Plaintiffs' policy at issue.

13.     All documents, memoranda, and/or logs of any kind which reflect what, if any, work, investigation and evaluations were done by Defendant Safeco and the Defendant adjusters in the time frame between the written communications that Safeco had sent to the Plaintiffs UIM attorney.

14.    All documents, memoranda, and/or logs of any kind which reflect what investigation and evaluation of Plaintiffs' claim the Defendant Safeco and the Defendant adjusters had performed during the pendency of the Plaintiffs' UIM claim.

15.    Produce all documents, emails, memoranda and/or logs showing any authority to settle that was given by Safeco to any of the Defendant adjusters during the pendency of the UIM claim.

16.    Produce copies of all reports and curriculum vitae of every expert, expert witness or proposed expert witness that was consulted with respect to evaluating, investigating or defending the Plaintiffs' UIM claim.

17.    All documents relating to computer programs utilized by Safeco in evaluating and processing Plaintiffs' claim.

18.    Provide documentation, records, and/or other reports indicating every date that data relating to Plaintiffs' claim was entered into the any computer software program. For every date that data was entered, provide documentation, records, and/or other reports detailing with specificity the exact data that was entered into the program.

19.    Provide documentation, records, and/or other reports indicating each estimated value range produced by any computer software program and the date each value range was produced, in regards to Plaintiffs' claim.

20.    Any and all documentation, including but not limited to internal memoranda, which reflect or refer to Defendant Safeco's evaluations of the value of Plaintiffs' UIM claim, including but not limited to all settlement offers.

21.    If any of the documents or things requested above in requests one (1) through twenty (20) have not been produced because of a claim of privilege, please specifically identify

7

that document and/or thing and identify the privilege you are asserting in reference to that document or thing

THE CURRAN FIRM, P.C.

BY:   */s/ Ryan F. Curran*
      **FRANCIS J. CURRAN, JR., ESQUIRE**
      **RYAN F. CURRAN, ESQUIRE**
**Dated: March 03, 2022**    **Attorneys for Plaintiffs**

EXHIBIT "C"



IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY
PENNSYLVANIA

CIVIL DIVISION

* * * * * * * * * * * * * * *        No. CV-2014-011373
                                *
RACHAEL & SEAN KENNEDY,          *
HUSBAND & WIFE                   *
                                *
        VS.                      *
                                *
ALLSTATE PROPERTY & CASUALTY     *
INSURANCE COMPANY, ET AL         *
                                *
* * * * * * * * * * * * * * *


                Media, PA, January 26, 2015

                        ***

                Courtroom Number 1

                        ***

                TRANSCRIPT OF PROCEEDINGS

BEFORE:    THE HONORABLE G. MICHAEL GREEN

           FRANCIS CURRAN, ESQUIRE
           For the Plaintiff

           SARAH RICHARD, ESQUIRE
           For the Defendant

Diaz Data Services, LLC
331 Schuylkill Street, Harrisburg, PA 17110 ~ 717-233-6664

2

1                              <u>INDEX</u>

2

3                        DIRECT  CROSS  REDIRECT    RECROSS

4

5    <u>ON BEHALF OF THE PLAINTIFF:</u>
6    [None]
7

8    <u>ON BEHALF OF THE DEFENDANT:</u>
9    [None]
10

11                           <u>EXHIBITS</u>
12
13                        MARKED      ADMITTED
14   <u>ON BEHALF OF THE PLAINTIFF:</u>
15   [None]
16

17

18   <u>ON BEHALF OF THE DEFENDANT:</u>
19   D-1  Complaint                    7
20
21
22

3

1                        P R O C E E D I N G S
2                        January 26, 2015
3            THE COURT:  This is -- Mr. Curran, it looks
4    like your motion -- Plaintiff's Emergency Motion to Stay
5    Operation of Rule of Filed Complaint?
6            MR. CURRAN:  That's correct, Your Honor.
7            THE COURT:  And this is the matter of Rachel
8    Kennedy and Sean Kennedy, Husband and Wife, Plaintiffs
9    versus Allstate Property and Casualty Insurance Company,
10   et al, Defendant, Delaware County civil action number
11   2014-011373.  Mr. Curran, if you could identify yourself
12   by name and Supreme Court identification number?
13           MR. CURRAN:  Francis Curran, 47198.
14           THE COURT:  And counsel?
15           MS. RICHARD:  Yes, good afternoon, Your Honor.
16   Sarah Richard from Pepper Hamilton.  Our ID number is
17   200729 here on behalf the Defendant.
18           THE COURT:  Good afternoon.
19           MS. RICHARD:  Good afternoon.
20           THE COURT:  Mr. Curran?
21           MR. CURRAN:  Your Honor --
22           THE COURT:  This was an add-on to today's
23   list.  I haven't had an opportunity to really review it.
24           MR. CURRAN:  If I may, Your Honor, I'll give
25   you a very brief history of the case.

4

1          THE COURT:  All right.

2          MR. CURRAN:  The action is a bad faith

3    insurance claim against Allstate.  The claims against

4    the adjusters are claims of misfeasance based on unfair

5    trade practices as well as negligence, both viable

6    claims under Pennsylvania Law.  Now those claims against

7    the adjusters have not been pled out yet.  And so what

8    the procedural history is on the case is sometime in the

9    fall of 2014 Plaintiff filed a Complaint in Federal

10   Court down in the Eastern District.  And that claim was

11   only against Allstate.  But there was --

12          THE COURT:  Were you counsel for the

13   Plaintiffs in that case?

14          MR. CURRAN:  I was, Your Honor.

15          THE COURT:  All right.

16          MR. CURRAN:  There was also an awful lot of

17   references to the adjusters.  And during the -- in the

18   Complaint.

19          THE COURT:  In the Complaint itself.

20          MR. CURRAN:  In the Complaint.

21          THE COURT:  In Federal Court.

22          MR. CURRAN:  That's correct.  But they weren't

23   named.  Then in reviewing some additional law --

24          THE COURT:  Reference to the adjusters'

25   conduct in the Complaint.

5

1          MR. CURRAN:  Misfeasance.  But they weren't

2    named defendants.

3          THE COURT:  All right.

4          MR. CURRAN:  So prior to counsels entering

5    their appearance and prior to the time when an answer to

6    the Complaint in Federal Court was entered we withdrew

7    that Complaint without prejudice and then refiled in

8    December of last year 2014 the Writ of Summons now

9    against Allstate but also the individual defendants who

10   are the adjusters.

11         THE COURT:  All right.

12         MR. CURRAN:  And with that Writ we filed some

13   pretty exhaustive pre-complaint discovery that was

14   really focused on the conduct of the adjusters, what

15   they did.  And the real focus of that, Your Honor, is to

16   prove the misfeasance and to see if there are viable

17   misfeasance claims there has to almost a direct fraud on

18   the part of the adjusters.  Here the fraud appears to be

19   that over the course of the seven years that this

20   underinsured motorist claim was pending, and then a very

21   small offer at the back-end, not even in writing, and

22   then a $600,000 reward --

23         THE COURT:  What was the date when the motor

24   vehicle accident occurred?

25         MR. CURRAN:  2007.  And the arbitration in the

1     underinsured motorist claim took place in I believe it

2     was early 2000 -- late 2013.  And so what we wanted was

3     to find out from looking at the adjusters' logs when

4     they were saying over the course of approximately 30

5     letters over a four-year period we're working on your

6     case, we're going to have an answer for you shortly.

7     We're still evaluating damages and liability.  It sure

8     looks like really nothing was being done by Allstate.

9     And they were clear misrepresentations.  The rules here

10    in Pennsylvania are that when you file a Writ of Summons

11    you are permitted to engage in pre-complaint discovery.

12    In this case -- and the appropriate method of objecting

13    to that is under 4003.8.  And under 4003.8 if the

14    defense thinks that the pre-complaint discovery is

15    unwarranted and not valid then at that point they have a

16    right to move to quash that discovery or to object to

17    that discovery.

18              THE COURT:  All right.

19              MR. CURRAN:  Rather than take that step what

20    Allstate did in this case is they simply ruled us to

21    file a complaint back on January 16 and tried to

22    circumvent the Rules of Civil Procedure.  And the only

23    method that Plaintiff has now in order to address this

24    issue is to ask for a stay of the Rule to file the

25    complaint.  And since that point, once it was pointed

7

1    out to counsel, once it appropriate method is to file

2    objections, late last counsel did file objections to the

3    pre-complaint discovery.  But those have not been

4    answered by the Plaintiff.  Will be very shortly,

5    hopefully this week.  And then the Court will have an

6    opportunity to rule on the viability of the Plaintiff's

7    pre-complaint discovery.  So we would simply ask for a

8    stay of the Rule.

9              THE COURT:  Miss Richard?

10             MS. RICHARD:  Thank you, Your Honor.  First, a

11   slight administrative matter.  In preparing for today I

12   realized that Exhibit #1, which was attached to our

13   opposition was truncated when printed.  This is actually

14   the Complaint they filed in Federal Court.  And, Your

15   Honor, I'd just like to hand up a full copy of Exhibit

16   1.

17             THE COURT:  All right.

18             MS. RICHARD:  Your Honor, a couple of points.

19   I think just based on Mr. Curran's presentation here

20   today you can tell that he probably knows enough facts

21   to set forth a Complaint in State Court.  He gave you a

22   pretty lengthy recitation.  And particularly with

23   respect to the adjusters he noted that he planned to

24   file a UTPCPL and negligence claim based on misfeasance

25   over the course of I believe he said seven years or so

8

1 and a series of sending approximately 30 letters.  And

2 also admitted that he referred to the adjusters and

3 their misfeasance, their alleged misfeasance, in his

4 Federal Court Complaint which was filed back in

5 November.  That's in fact correct.  And there are dozens

6 of paragraphs where the adjusters are referenced by name

7 with specific events that occurred that Mr. Curran would

8 attribute to them.  So, you know, our position here is

9 that pre-complaint discovery is a very limited thing

10 under Pennsylvania Rules.  Rule 4003.8 permits it only

11 where it is necessary and material to filing a

12 complaint.  That simply is not the case here.  You know,

13 based on what Mr. Curran has said, what he has filed in

14 his motion and very clearly what he filed in his Federal

15 Court Complaints you have enough facts to file a

16 complaint at this juncture serving Allstate and all the

17 adjusters with 28 very expansive discovery requests.

18    THE COURT:  Well, isn't his recitation of the

19 Rule that applies accurate in that the petition and the

20 Rule to file a complaint should not have been filed by

21 the Defendants --

22    MS. RICHARD:  Your Honor, I'm not aware of --

23    THE COURT:  -- initially?

24    MS. RICHARD:  Apologies.  I'm not aware of any

25 rule that would have precluded us from filing the Rule

1    to File the Complaint.

2          THE COURT:  Right.

3          MS. RICHARD:  Rule 4003.8 which does cover the

4    pre-complaint discovery permits those served with such

5    discovery to either file for a protective order or

6    object in some other form.  We not only served

7    objections on Mr. Curran last week, we also opted to

8    move to -- or to seek a rule from the prothonotary for

9    him to file the Complaint.  We also asked Mr. Curran via

10    letter simply with withdrawal his request which we think

11    are facially inappropriate.  So we've tried to do this

12    in a very --

13          THE COURT:  Withdraw his request for what?

14          MS. RICHARD:  For the pre-complaint discovery.

15    And simply proceed with filing his complaint so we can

16    get this action moving.

17          THE COURT:  All right.  Anything further?

18          MS. RICHARD:  Not at this point, Your Honor.

19          THE COURT:  All right.  Mr. Curran?

20          MR. CURRAN:  Your Honor, the back story of

21    what's going to happen here is that as soon as the

22    Complaint is filed that the Defendants, Allstate and the

23    adjusters, will remove the case at the Federal Court and

24    they will argue to the Court that the jointer of the

25    adjusters is nothing more than a fraudulent jointer.

1      And when the Court now is evaluating --

2              THE COURT:  Well, let me ask you this

3      question.

4              MR. CURRAN:  Yes, Your Honor.

5              THE COURT:  Because you've raised 4003.8.  At

6      sub A at 4003.8 my general understanding is that the

7      information you seek through pre-complaint discovery

8      requests must be both material and necessary to the

9      filing of the Complaint.  Without obviously -- maybe

10     it's not obvious.  It would seem that there must be

11     something missing that is both material and necessary.

12     What exactly is that?

13             MR. CURRAN:  Your Honor, there's a difference

14     between obviously the Federal Court pleadings which is a

15     notice pleading --

16             THE COURT:  As opposed to the fact pleading

17     system here --

18             MR. CURRAN:  Correct.

19             THE COURT: -- in the Commonwealth.

20             MR. CURRAN:  But in order for us to --

21             THE COURT:  But I'm focused squarely on

22     Pennsylvania Rule of Civil Procedure 4003.8.

23             MR. CURRAN:  Your Honor, in order to factually

24     plead out those claims of misfeasance on the part of the

25     adjusters we need to know what the adjusters were

11

1    actually doing as per a simple as to what their logs
2    were.  And so when they send out a letter saying we're
3    still working on your case; we're still evaluating your
4    case over a period of over four years what was actually
5    happening.  If we have that data and if it supports what
6    I believe it will support in the case at that point
7    there is no grounds for removal because the claims
8    against the adjusters are viable claims.  So that's what
9    we're trying to get at, the absolute necessity of
10   finding out what these adjusters were doing for this
11   four-year period of time so that we can meet our fact
12   pleading requirements.
13           THE COURT:  When I called this case initially,
14   at least the way I had it, it was styled as -- the
15   Defendant was styled as Allstate Property and Casualty
16   Insurance Company, et al.  I'm simply reading from the
17   Emergency Motion.  But looking at the entry of
18   appearance that was entered on behalf of Defendants,
19   Defendants in this case are actually the following:
20   Allstate Property and Casualty Insurance Company,
21   Allstate Insurance Company, Allstate Fire and Casualty
22   Insurance Company, Kevin L. Brodhead, Lester A. Waxler
23   and Brandon McMillan, all defendants.  Are your specific
24   discovery requests pursuant to Pennsylvania Rule of
25   Civil Procedure 4003.8 directed at the activities of

```
 1     Messers, Brodhead, Waxler and McMillan?
 2              MR. CURRAN:  That is correct, Your Honor.
 3              MS. RICHARD:  Your Honor, I would disagree
 4     with that.
 5              THE COURT:  Counsel, you disagree with that?
 6              MS. RICHARD:  I do disagree with that.  The
 7     discovery requests are directed to all Defendants which
 8     would include the Allstate entities as well as the
 9     individuals.  But more broadly, what Mr. Curran is
10     seeking is essentially proof.  He's seeking the evidence
11     which is what you would obtain throughout the normal
12     course of discovery not pre-complaint discovery.  And
13     while those three individuals, Mr.'s McMillan, Brodhead
14     and Waxler were not named as individual defendants in
15     the Federal Court Action, they were very clearly
16     referenced in numerous paragraphs.
17              THE COURT:  Well, actually, I think what Mr.
18     Curran is saying is he's after -- or more appropriately
19     as counsel for the Plaintiffs, the Plaintiffs are after
20     some logs which I guess are maintained by insurance
21     claims adjusters.
22              MS. RICHARD:  There -- I mean typically there
23     is a claim diary --
24              THE COURT:  Right.
25              MS. RICHARD:  -- that's maintained by the
```

13

1   insurance company where adjusters would enter

2   information into it during the course of a claim.   That

3   is something --

4               THE COURT:  And I'm assuming that Messers,

5   Brodhead, Waxler and McMillan are adjusters. And they

6   would be the individuals making those entries in the

7   diary.

8               MS. RICHARD:  I believe that Mr. McMillan was

9   the claims processor.  But adjuster may be appropriate

10  for the other two.  We can, you know, for the sake of

11  the ease of this particular proceeding we can refer to

12  them all as adjusters.  That's fine.

13              THE COURT:  All right.

14              MS. RICHARD:  Your Honor, the claim diary is

15  something that we would produce as a matter of course,

16  at least the non privileged portions of it, once the

17  claims have actually been alleged.  So as long as I've

18  been handling these claims, which has been nine-and-a-

19  half years or so, I've never once had to turn over a

20  pre-complaint discovery like this.  This is something

21  that is routinely done as a matter of course once there

22  is a complaint on file.

23              THE COURT:  Well, it's not a matter of whether

24  you've ever had do it.  It is improper under the Rules.

25              MS. RICHARD:  Your Honor --

14

1          THE COURT:  It sounds like it's squarely
2     within 4003.8 Sub A.
3          MS. RICHARD:  Well, Your Honor, if I may?  The
4     type of information that is typically permitted --
5          THE COURT:  I recognize that there's a certain
6     routine, a kind of rhythm to insurance claim cases
7     generally.  And I would imagine that would be true of
8     cases of this sort.  But is it strictly speaking
9     inappropriate, improper for the Plaintiff to pursue this
10    kind of information pre-complaint?
11         MS. RICHARD:  Yes, Your Honor, it is.
12         THE COURT:  Why?
13         MS. RICHARD:  Particularly under the case of
14    McNeal versus Jordan, which was the Pennsylvania Supreme
15    Court case in 2006.  The Pennsylvania Supreme Court
16    talked about how important it is for the Defendant to be
17    able to assess the claims lodged against them and
18    formulate a response to discovery in that particular
19    context.  It was that case that actually spawned the
20    Rule 4003.8.  And a very recent case called Red Vision -
21    - sorry.  Red Vision Systems versus National Real Estate
22    Info Services, which was a judge decision out of
23    Allegheny County in 2014.  In that particular case pre-
24    complaint discovery was allowed but the circumstances
25    there were very different.  The Plaintiff had sued

1    numerous defendants only to find out that all of those

2    entities had become defunct.  Pre-complaint discovery

3    was permitted so that the Plaintiff could figure out

4    where the assets had gone and they could identify

5    whether they -- there was another place to bring a

6    claim.  That's not what's happening here.  That's not

7    the type of information Mr. Curran is looking for.  Mr.

8    Curran is looking for the proof of his claims.

9            THE COURT:  What happens if there's -- what

10   happens if there's another adjuster who was involved and

11   up until this point is not known to the Plaintiff?

12           MS. RICHARD:  Then if he can amend his

13   pleadings in the ordinary course as these things may

14   happen.  I mean, the other issue here is that the

15   adjusters are not going to be proper parties to this

16   case.  They are -- they acted only in their scope of

17   employment with Allstate.  And so Allstate is the proper

18   defendant.  And not even all three of the entities but

19   one entity, one Allstate entity that issued the

20   insurance policy is the Defendant that should be named.

21           THE COURT:  All right.

22           MS. RICHARD:  Mr. Curran is seeking

23   information that's completely -- is not appropriate

24   under Rule 4003.8.  And clearly, if you look at the

25   hefty Federal Court Complaint that I handed up to Your

1    Honor, clearly understands this case well enough to set

2    forth complaints in State Court.  It is --

3            THE COURT:  Well, he sent a lot of words

4    apparently but I don't know that he understood the case.

5            MS. RICHARD:  Your Honor, its 56 pages, 202

6    paragraphs.

7            THE COURT:  No offense to Mr. Curran.

8            MR. CURRAN:  None taken

9            MS. RICHARD:  And attaches 60 exhibits.

10           THE COURT:  It is a lengthy complaint.  Mr.

11   Curran, I guess the question is for you.  Again, what's

12   material and necessary at this point in order to allow

13   you to prepare and file a complaint in the case?

14           MR. CURRAN:  Your Honor, I attempted to work

15   out this issue with counsel before the start of the 8:30

16   list today.  And I said --

17           THE COURT:  I gave you a lot of time.  We

18   didn't get to the case until --

19           MR. CURRAN:  We didn't talk to you either.

20   Nothing -- it was nothing personal.  But I would agree

21   there's an awful lot of material sought in the pre-

22   complaint discovery.  And what I had told counsel that

23   we will pinpoint this down to the essentials relative to

24   the adjusters.  That is the logs, the notes counsel just

25   talked about.  We're not going on a fishing expedition.

1    But knowing from just how this case will play out it

2    will be back in Federal Court in a very short period of

3    time once a complaint is filed.  And --

4                THE COURT:  My kind of white knight.  Is that

5    what you're saying for you?  Is that what this is?

6                MR. CURRAN:  It's sort of.

7                THE COURT:  Well --

8                MR. CURRAN:  You know, but --

9                THE COURT:  -- that's not ordinarily my rule.

10               MR. CURRAN:  No.  But the pre-complaint

11   discovery is something that has been on the -- in the

12   Pennsylvania Rules of Civil Procedure for years.

13               THE COURT:  Well, I'm asking you again, at

14   4003.8(a) what is material and necessary for you to

15   style a complaint, have it reviewed by the client,

16   affidavits or verifications signed and filed with the

17   Court at this point?

18               MR. CURRAN:  I believe --

19               THE COURT:  Without -- I'm not going to ask

20   you to be specific because I'm assuming, based on the

21   Petition, that the specifics are in part not known to

22   you.  But what categories of things are you looking for

23   that are both material and necessary?

24               MR. CURRAN:  Your Honor, I believe the most

25   important item is the adjusters' logs for all of the

```
1    Allstate adjusters who were in any way involved in the
2    case.
3              THE COURT:  Okay.  Well, what would you
4    expect, given your professional experience, the log to
5    reveal that would make a difference in the preparation
6    filing of a complaint in this action?
7              MR. CURRAN:  Again, having not seen the log
8    but seeing other logs that --
9              THE COURT:  That's what I'm asking you.  Based
10   on your professional experience in cases similar to that
11   that is before the Court today what do you anticipate
12   finding within that log?  And the log I believe is
13   what's been referred to by counsel as the diary.
14             MR. CURRAN:  The complete history of what
15   happened in this case, without the documents, with the
16   outline in the log.  So any activity that took place on
17   the Kennedy underinsured motorists claim would be
18   reflected in an adjuster's log.  And so if a medical
19   record was reviewed, if there was a round table
20   discussion with personnel, if there was money that was
21   being considered to put as reserves, if there was
22   something that said as simple as sent out the letter as
23   per the Pennsylvania Insurance Commissioner's
24   requirements updating the Plaintiff as to what we're
25   doing on the case, and then nothing is done that becomes
```

19

1    very revealing as to really what the conduct of these
2    Allstate adjusters were.
3            THE COURT:  All right.
4            MS. RICHARD:  Your Honor, if I may?  The whole
5    nature of Plaintiff's complaint here is that Allstate
6    treated her claim unreasonably or treated her unfairly.
7    As the Plaintiff she should be able to articulate in her
8    complaint how that occurred sufficiently to meet her
9    pleading requirements.  And that's true of Allstate and
10   the adjusters.  And to my point earlier that Mr. Curran
11   has already included very particular allegations just
12   looking at one of them, paragraph 50 of his Federal
13   Court Complaint, he states that Adjuster Lester Waxler
14   at Allstate's direction intentionally and recklessly
15   entered misinformation into the Colossus Program in
16   order to generate a low value recommendation on
17   Plaintiff's EYN claim.  So, Your Honor, this just is not
18   a situation where Mr. Curran doesn't know the nature of
19   his claims and is entitled to pre-complaint discovery.
20           MR. CURRAN:  Your Honor, I envision what they
21   are.  Do I have proofs when I stand up in Federal Court
22   and try to meet my burden of showing that there's a
23   reasonable basis for the claims against the adjusters
24   for a colorful ground for supporting these claims?
25   That's the standard that the Federal Court will view the

20

1    motion that counsel is sure to file with respect to

2    fraudulent jointer.

3           MS. RICHARD:  Your Honor --

4           MR. CURRAN:  And so all I'm asking is that we

5    be given -- Miss Kennedy be given the opportunity to

6    have the benefit of the Pennsylvania Rules of Procedure

7    and get pre-complaint discovery so she has the

8    information to with some intelligence and facts plead

9    her case in the Complaint against the adjusters.

10          THE COURT:  All right.

11          MS. RICHARD:  Your Honor, I would disagree

12   with his statement that he needs to offer proof at this

13   juncture in the litigation.  I mean we would ask that

14   the pre-complaint discovery be quashed and that the rule

15   be enforced.

16          THE COURT:  All right.  Well, thank you.  I'll

17   take this under advisement.

18          MS. RICHARD:  Thank you, Your Honor.

19          MR. CURRAN:  Your Honor, I don't know if you

20   have a proposed rule, if there's one attached to my

21   petition, if I could hand one up?

22          THE COURT:  Let me -- if you're referring to

23   the order I have -- here's the document I have in the

24   file.  See if that's the same version.  Please have

25   counsel take a look at it.

1          MR. CURRAN:  That is the same one, Your Honor.

2          THE COURT:  All right.

3          MS. RICHARD:  And I believe, Your Honor, we

4     also offered a counter --

5          THE COURT:  Yes.  And I have Respondent's

6     number 1 which I'm admitting for -- I understand this is

7     argument.  But do you  have any objection to my

8     reference to Respondent's number 1?  It's a copy of what

9     appears to be a Federal Complaint in this action.

10          MR. CURRAN:  That is correct, Your Honor.

11          MS. RICHARD:  Yes.

12          THE COURT:  Any objection to my reference to

13     it?

14          MR. CURRAN:  No, Your Honor.

15          THE COURT:  Thank you.

16          MS. RICHARD:  And, Your Honor, just to clarify

17     the record it was attached as Exhibit 1 to our

18     opposition papers but it was truncated --

19          THE COURT:  Oh, you had said that, I'm sorry.

20          MS. RICHARD:  I just wanted to provide you

21     with a full copy.

22          THE COURT:  Well, I have it and I can rely on

23     upon it as Respondent's 1.

24          MS. RICHARD:  Thank you.

25          THE COURT:  Thank you.

22

```
1              MS. RICHARD:  Thank you, Your Honor.
2              THE COURT:  Thank you.
3              MR. CURRAN:  Thank you, Your Honor.  May we
4      guys be excused?
5              THE COURT:  You may be excused each of you.
6              MS. RICHARD:  Thank you.
7                            ***
8      [End of Proceeding]
9
```

23

```
 1              C E R T I F I C A T E
 2       I, Michael Freeman, hereby certify that the
 3   proceedings and evidence are contained fully and
 4   accurately on multi-track recording; that the recording
 5   was reduced to typewriting by my direction; and that
 6   this is a correct transcript of the same.
 7                    Michael Freeman
 8            Michael Freeman, Administrator
 9            Court Reporters
10
11       DIAZ DATA SERVICES, LLC hereby certifies that the
12   attached pages represent an accurate transcript of the
13   electronic sound recording of the proceedings in the
14   Court of Common Pleas of Delaware County, Pennsylvania,
15   in the matter of:
16
17
18       RACHEL AND SEAN KENNEDY, HUSBAND AND WIFE
19
20                      vs.
21
22   ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, AL
23
24              #CV-14-0011373
25
26
27            BY:
28
29       Beth Elicker    Digitally signed by Beth Elicker
                         DN: cn=Beth Elicker, o=Diaz Data Services, LLC, ou,
30                       email=info@diazdata.com, c=US
                         Date: 2015.02.19 10:37:13 -05'00'
31            Beth Elicker
32            Transcriber for
33            Diaz Data Services, LLC
34
35       The foregoing record of the proceedings upon the
36   hearing of the above cause is hereby approved and
37   directed to be filed.
38
39
40                                    Judge
```

Diaz Data Services, LLC
331 Schuylkill Street, Harrisburg, PA  17110 ~ 717-233-6664

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY,
PENNSYLVANIA
CIVIL ACTION - LAW**

RACHELLE KENNEDY and
SEAN KENNEDY, h/w

    vs.

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, ET AL

NO.  2014-011373

## O R D E R

AND NOW, to wit, this *27th* day of January, 2015, upon consideration of

Plaintiffs' Emergency Motion to Stay Operation of Rule to File Complaint and

Defendants' response thereto, it is hereby ORDERED and DECREED that said motion is

GRANTED.  The Rule to File Complaint issued on January 13, 2015, directing Plaintiffs,

Rachelle Kennedy and Sean Kennedy to file a Complaint within twenty (20) days of

service is hereby STAYED for a period of sixty (60) days from the date of this Order.

BY THE COURT:

_____

G. MICHAEL GREEN,       J.

Cc:  Francis Curran, Esquire
     Sara Richman, Esquire

## <u>CERTIFICATE OF SERVICE</u>

I, RYAN F. CURRAN, ESQUIRE, Attorney for Plaintiffs, hereby certify that a true and correct copy of the within Response to Defendant's Motion was served via electronic mail upon the following on the date indicated below:

Brigid Q. Alford, Esquire
*Marshall Dennehey Warner Coleman & Goggin*
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
bqalford@mdwcg.com
*Attorney for Defendant*

**THE CURRAN FIRM, P.C.**

**Date:**  <u>May 3, 2022</u>          **By:**   <u>*/s/ Ryan F. Curran*</u>
                                            **RYAN F. CURRAN, ESQUIRE**
                                            **Attorney for Plaintiffs**

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

## COVER SHEET - NOTICE OF FILING OF MOTION OR PETITION UNDER
## LOCAL RULES OF CIVIL PROCEDURE

CASE CAPTION:                                                      CIVIL CASE NO.

Phan-Kramer, et al. v. Safeco Corp.                    CV-2022-001588

NATURE OF MATTER FILED: (*please check one*)

☐ Petition Pursuant to Rule 206.1      ☐ Response to Petition      ☐ Motion for Judgment on the Pleadings Pursuant to Rule 1034(a)

☐ Motion Pursuant to Rule 208.1       ☑ Response to Motion        ☐ Summary Judgment Pursuant to Rule 1035.2

☐ Family Law Petition/Motion Pursuant to Rule 206.8

## FILING PARTY IS RESPONSIBLE FOR SERVICE OF THE RULE RETURNABLE DATE OR HEARING DATE UPON __ALL__ PARTIES

A motion or petition was filed in the above captioned matter on the ____ day of _____, _____, which:

☐ Requires you, Respondent, to file an Answer within twenty (20) days of the above date to this notice, or risk the entry of an Order in favor of the Petitioner.  Answers must be filed and time stamped by the Office of Judicial Support by 4:30 PM on the following date _____ _____, _____.

☐ Requires all parties, to appear at a hearing/conference on the ____ day of _____, _____, at _____ in Courtroom ____, Delaware County Courthouse, Media, Pennsylvania.  At this hearing/conference you must be prepared to present all testimony and/or argument, and must ensure that your witnesses will be present.

☐ Was timely answered, thus requiring the scheduling of the following hearing in the above captioned matter on: _____ _____, _____ at 10:00 AM in Courtroom _____.

At this hearing, all parties must be prepared to present all testimony and/or argument and **must ensure that their witnesses will be present.**

☐ Qualifies as an Uncontested Motion or Petition, and as such requires neither an answer from the Respondent nor the scheduling of a hearing in this matter.

☐ Has been assigned to Judge _____.

## FOR OFFICE USE ONLY

Mailing date: _____        Processed by: _____

FILED
05-03-2022 04:27 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**
By: Brigid Q. Alford, Esquire
Pa. I.D. #38590
By: Allison L. Krupp, Esquire
Pa. I.D. #307013
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
717-651-3710
Attorneys for Defendant Safeco Corporation

| LOANN PHAN-KRAMER and | : DELAWARE COUNTY COURT |
|---|---|
| JONERIK KRAMER, W/H | : OF COMMON PLEAS |
| Plaintiffs | : |
| vs. | : NO. CV 2022-1588 |
| | : |
| | : CIVIL ACTION - LAW |
| SAFECO CORPORATION | : |
| Defendant | : |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO QUASH PLAINTIFFS' PRE-COMPLAINT DISCOVERY

### I.    Factual and Procedural History

Defendant Safeco Corporation ("Safeco") incorporates herein by reference the Factual and Procedural History section set forth in its principal Brief.

On April 13, 2022, Safeco filed a Motion for Protective Order to Quash Plaintiffs' Pre-Complaint Discovery and a Brief in Support.  On May 3, 2022, Plaintiffs Loann Phan-Kramer and Jonerik Kramer ("the Kramers") filed their Response to Safeco's Motion and their Memorandum of Law in Support of their Response.  Safeco now files the instant Reply Brief in Support of its Motion.

### II.    Statement of Question Presented

**Should the Court grant Safeco Corporation's Motion, quash the Pre-Complaint Discovery, and stay all further discovery, pending the filing of a Complaint that sets forth a cognizable cause of action against Safeco, where the Kramers have failed to explain how the discovery will materially advance preparation of the Complaint?**

**Suggested Answer:   Yes.**

III.    **Argument**

**The Court should grant Safeco Corporation's Motion, quash the Pre-Complaint Discovery, and stay all further discovery, pending the filing of a Complaint that sets forth a cognizable cause of action against Safeco, since the Kramers have failed to explain how the discovery will materially advance preparation of the Complaint.**

As Safeco explained in its principal Brief, the Kramers have not set forth facts sufficient to meet the prerequisites for Pre-Complaint Discovery under Pa. R. Civ. P. No. 4003.8, nor have they stated with particularity how the discovery will materially advance the preparation of the Complaint itself. In response to that argument, the Kramers contend:

> Pa. R. Civ. P. No. 4003.8 does not require a party to state with particularity within the discovery requests how the discovery will materially advance the preparation of the Complaint itself. Rather, only upon a motion for a protective order, may the court require the plaintiff to state with particularity how the discovery will materially advance the preparation of the Complaint itself.

*Plaintiffs' Response* at p. 4, para. 7.

It is undisputed that Safeco has now filed a Motion for a Protective Order. The Kramers' response to that Motion fails to meet the heightened standard applicable to warrant pre-complaint discovery. They merely state, in conclusory fashion, that the discovery is "material and necessary to the filing of the complaint and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden or expense to any person or party." *Id*. They contend that their discovery "is centered on obtaining information regarding Defendant's investigation of Plaintiff's injuries and their justification for making no offers to their own insureds." *Id*. at p. 5, para. 9. The Kramers fail to explain, however, why they are presently unable to draft their complaint, absent receipt of the discovery. Again, the question is not whether the requested discovery may be appropriate <u>after</u> a complaint is filed. The question is whether plaintiff is capable of drafting the complaint without that information.

The Kramers are obviously aware of their alleged injuries. They are aware of how the underlying case progressed, including what demands and offers were made prior to trial. They are aware of the testimony and evidence presented at that trial.[1] They are aware of the outcome of the UIM trial, repeatedly stating in their Response that "a jury awarded $480,000.00 to the Plaintiffs in UIM damages". *Id.* at p. 4, para. 9. Thus, the Kramers have failed to establish that the requested discovery will materially advance the preparation of the Complaint itself, or that they are incapable of drafting their complaint without the requested discovery.

In their Response and Memorandum, the Kramers rely, in part, on a 2014 Delaware County case in which the Kramers' counsel represented the plaintiffs: *Kennedy v. Allstate Property & Cas. Ins. Co., et al.* They argue: "In *Kennedy v. Allstate*, No. CV-2017-011373, this Honorable Court was faced with the same arguments by a defendant insurer regarding the production of pre-complaint discovery. After oral arguments on the matter, the Honorable G. Michael Green denied defendant's motion [and] compelled defendant to answer plaintiff's pre-complaint discovery." *Plaintiffs' Response* at p. 6, para. 9. The Kramers attach the transcript of a January 26, 2015 oral argument from that case as Exhibit C to their Response.

---

[1] For example, in their Response to Safeco's Motion, the Kramers state, in part:

> At the time of trial, the Defendant defended their case on a singular argument: that the Plaintiff attended forty-three (43) physical therapy visits and never complained about an injured shoulder, therefore, Plaintiff never suffered injury which is the subject of her UIM claims.

> However, each and every one of the records of her physical therapy visits, in addition to her orthopedic doctors' visits, included shoulder treatments, shoulder injections, and shoulder complaints. In fact, the Defendant presented an expert who repeated this theory even it [sic] was known not to be true. Obviously, the jury rejected the Defendant's false claims when presented with the actual medical records and awarded for the Plaintiff.

*Plaintiffs' Response* at p. 5.

A review of the transcript and corresponding Court Order, reveals that *Kennedy* is critically distinguishable from this case. First, Kennedy named the individual claim adjusters as defendants, and the primary purpose of the pre-complaint discovery was to aid in drafting causes of action against those individuals. *Plaintiffs' Response* at Ex. C, pp. 4-5. Here, Safeco is the sole defendant and, as discussed, the Kramers have failed to establish that the requested discovery is material or necessary to their suit against their insurer.[2]

Second, *Kennedy* is procedurally distinct. As the transcript makes clear, Allstate filed a rule to file a complaint in response to Kennedy's writ of summons, as well as objections to the pre-complaint discovery. In response, Kennedy filed a motion to stay the rule. While the issue of pre-complaint was discussed at the argument, it was the motion to stay that the Court was deciding.

The day after the argument, Judge Green entered an Order, stating, in part: "[U]pon consideration of Plaintiffs' Emergency Motion to Stay Operation of Rule to File Complaint and Defendants' response thereto, it is hereby ORDERED and DECREED that said motion is GRANTED." *Plaintiffs' Response* at Ex. C. The Court stayed the rule to file a complaint for a period of sixty days. *Id.* The Order does not resolve the issue of pre-complaint discovery and whether it – or any portion of it – was permissible under Rule 4003.8.[3]

Finally, Judge Green repeatedly advised counsel during the argument that information sought through pre-complaint discovery must be material and necessary to the filing of the complaint. *Plaintiffs' Response* at Ex. C at pp. 10, 16, 17. As discussed, the Kramers have failed

---

[2] To the extent the Kramers state that they intend to sue Safeco for statutory bad faith, Safeco is in no way conceding that a valid cause of action for bad faith exists. It is merely explaining why the Kramers have failed to meet the heavy burden of establishing the need for pre-complaint discovery.

[3] At the January 26, 2015 oral argument, plaintiff's counsel admitted that he had not even responded to the objections to the pre-complaint discovery yet: "And since that point, once it was pointed out to counsel, once it [sic] appropriate method is to file objections, late last [sic] counsel did file objections to the pre-complaint discovery. But those have not been answered by the Plaintiff. Will be very shortly, hopefully this week. And then the Court will have an opportunity to rule on the viability of the Plaintiff's pre-complaint discovery. So we would simply ask for a stay of the Rule." *Plaintiffs' Response* at Ex. C at p. 6-7.

to meet that burden here. Thus, the Kramers' reliance on *Kennedy* is misplaced and does not support denial of Safeco's Motion.

## IV.    Conclusion

In conclusion, having been unable to resolve this matter without Court action, Defendant Safeco Corporation respectfully moves the Court to enter a Protective Order quashing the Pre-Complaint Discovery, and otherwise staying discovery unless and until the Kramers have first filed a Complaint setting forth a cognizable cause of action against it.

Date:    05/12/2022

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY: _____

Brigid Q. Alford, Esquire
Allison L. Krupp, Esquire
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
PH: (717) 651-3710 – FAX (717) 651-3707
bqalford@mdwcg.com/alkrupp@mdwcg.com
*Attorneys for Defendant Safeco Corporation*

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Record Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: _____Defendant_____

Signature: _____

Name: Brigid Q. Alford, Esquire_____

Attorney No. (if applicable): _____38590_____

## CERTIFICATE OF SERVICE

I, Brigid Q. Alford, Esquire, do hereby certify that a true and correct copy of the foregoing

was served upon the following via Electronic Filing System on the date specified below:

Ryan F. Curran, Esquire
Francis J. Curran, Jr., Esquire
THE CURRAN FIRM, P.C.
200 East State street, Suite 103
Media, PA 19063
*Attorneys for Plaintiffs Loann Phan-Kramer and Jonerik Kramer, w/h*

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY: _____
Brigid Q. Alford, Esquire
*Attorneys for Defendant Safeco Corporation*

Dated:  05/12/2022

FILED
05-12-2022 02:42 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

CIVIL ACTION – LAW

LOANN PHAN-KRAMER and        :        No: 2022-001588
JONERIK KRAMER, h/w          :
                             :
        v.                   :
                             :
SAFECO CORPORATION           :

## ORDER

AND NOW, this _____14th_____ day of October, 2022, upon consideration of

Defendant's Motion for Protective Order to Quash Pre-Complaint Discovery and Plaintiffs'

response thereto, it is hereby ORDERED that Defendant's Motion is GRANTED. Nothing in this

Order shall preclude Plaintiffs from repeating any and all request for relevant discovery,

including what is requested in the Pre-Complaint discovery request after a Complaint is filed in

this matter. This Protective Order does not extend to any discovery post filing of the Complaint.

BY THE COURT:

BARRY C. DOZOR                                J.
SIGNED AS
BACK UP JUDGE

**THE CURRAN FIRM, P.C.**                          **Attorneys for Plaintiffs**
By: Francis J. Curran, Jr., Esquire / 47198
By: Ryan F. Curran, Esquire / 313188
200 East State Street, Suite 103
Media, PA 19063
Ph.: (610) 566-5300 / Fax: (610) 566-6114

| | |
|---|---|
| **LOANN T. PHAN-KRAMER and**<br>**JONERIK KRAMER, w/h** | **COURT OF COMMON PLEAS**<br>**DELAWARE COUNTY** |
| **v.** | **CIVIL ACTION –**<br>**No. CV-2022-001588** |
| **SAFECO CORPORATION** | **JURY TRIAL DEMANDED** |

## COMPLAINT

AND NOW comes Plaintiffs, Loann T. Phan-Kramer and Jonerik Kramer, w/h, by and through their attorneys, The Curran Firm, P.C. stating that they have multiple causes of action against Defendant Safeco Corporation (collectively "Safeco"), and demands statutory, compensatory, punitive damages, and other relief in a sum in excess of the local arbitration limits, exclusive of attorney's fees, pre-judgment interest, post-judgment interest and costs.

## PARTIES

1.    Plaintiffs, Loann T. Phan-Kramer and Jonerik Kramer, w/h, ("hereinafter sometimes referred to as the "Kramers") are adult individuals, citizens of the Commonwealth of Pennsylvania, and reside at 109 Ridgefield Road, Newtown Square, Pennsylvania 19073.

2.    Defendant Safeco Corporation is a corporation that is licensed to sell automobile insurance in Pennsylvania, with and/or through places of business located throughout the Commonwealth of Pennsylvania. Defendant Safeco Corporation is a Massachusetts corporation and has its principal place of business at 175 Berkeley Street, Boston, Massachusetts, 02116.

3.    For all times relevant to this lawsuit, Defendant Safeco Corporation was acting, then and there, by its agents, servants, workmen and/or employees and/or ostensible agents,

1

servants, workmen, contractors, and/or employees, all of whom were acting, then and there, within the express and/or implied scope of their authority, agency, employment and/or ostensible authority, agency and/or employment with Safeco Corporation.

4.      Safeco is a Pennsylvania automobile "insurer" for purposes of 42 Pa.C.S.A. §8371.

5.      For all times relevant to this lawsuit, Defendant Safeco, acted through its agents, servants, workmen and/or employees and/or ostensible agents, servants, workmen, contractors, and/or employees, all of whom were acting, then and there, within the express and/or implied scope of their authority, agency, employment and/or ostensible authority, agency and/or employment, engaged and empowered such persons in the handling, adjusting, investigation, management, valuation, merit, strategy, tactics, decision-making and all other aspects with respect to the claims by the Kramers.

6.      Defendant Safeco is corporately and by and through its employees respective agents, servants, workmen, contractors, and/or ostensible agents, all of whom were acting, then and there, within the express and/or implied scope of their authority, agency, employment and/or ostensible authority, agency and/or employment, liable under theories of *respondeat superior*, master-servant, agency, and right of control.

7.      Defendant Safeco is liable for the negligent and/or reckless and/or fraudulent and/or deceptive acts or omissions of its actual, apparent and/or ostensible agents, servants and/or employees under theories of *respondeat superior*, master-servant, agency, and right of control. These agents, servants and employees include those actual, apparent and/or ostensible agents, servants and/or employees, various adjusters, and other staff involved in any way in the handling, adjusting, investigation, management, decision-making and other aspects with respect

2

to the claim by the Kramers, whose identities are not known to plaintiff after reasonable investigation and will require additional discovery from Defendants.

8.    Defendant Safeco is vicariously liable for the negligent and reckless acts and omissions and are vicariously liable for the affirmative fraudulent and deceptive affirmative acts of these individuals under theories of *respondeat superior*, master-servant, agency, and right of control.

9.    The harm and damages described herein, and for which claim is made in the instant lawsuit, are a direct and proximate result of bad faith of Defendant together with the negligent and/or reckless and/or fraudulent and/or deceptive acts or omissions, conduct and misconduct of all Defendant, jointly and severally, including the herein described acts and omissions of all Defendant corporately and by an through its respective agents, servants, workmen and/or employees and/or ostensible agents, servants, workmen, contractors, and/or employees, and all other persons engaged and empowered by Defendant in the handling, adjusting, investigation, management, valuation, merit, strategy, tactics, management, decision-making and all other aspects with respect to the claims made by the Kramers.

JURISDICTION AND VENUE

10.    This Court has jurisdiction over this dispute pursuant to 42 Pa. C.S.A. §931, and other statutory and constitutional bases.

11.    This Court has jurisdiction over defendants pursuant to their physical presence in this Commonwealth, the Pennsylvania Long-Arm Statute, 42 Pa. C.S.A. §5322, and other statutory and constitutional bases.

3

12.    Venue in this action is properly laid in Delaware County. See Pa.R.C.P. 1006, 2179.

13.    The amount in controversy exceeds the amount in controversy requiring submission to arbitration.

14.    Plaintiff demands a jury trial on all factual and legal issues to the maximum extent available under the Pennsylvania Constitution and the law of this Commonwealth.

OPERATIVE FACTS

15.    On April 15, 2016 at or about 9:15 a.m., Plaintiff, Mrs. Phan-Kramer, was stopped at a traffic light on US 1/Roosevelt Boulevard. While stopped, Plaintiff, Mrs. Phan-Kramer was rear-ended by Santos Higgins ("tortfeasor").

16.    The accident was caused solely by the negligence of the underinsured tortfeasor and liability was uncontested by Mr. Higgins.

17.    As a result of the April 15, 2016 accident, Plaintiffs suffered severe personal injuries and losses.

18.    Plaintiff's injuries and losses were caused solely by the negligence of the underinsured tortfeasor.

19.    At all material times hereto, Plaintiffs had an automobile insurance policy, specifically Policy No. K3001008, issued by Safeco ("The Safeco Policy"), under which Plaintiffs were insured for Underinsured Motorist Benefits Coverage ("UIM") applicable to the accident. A copy of the declarations page of the pertinent policy of insurance in Plaintiffs' possession is attached as **Exhibit "A."**

4

20.    At all material times, Defendant owed Plaintiffs the utmost duties of good faith and fair dealing.

21.    At all material times hereto, the policy provided Underinsured Motorist Benefits Coverage ("UIM") covering the accident.

22.    At all material times hereto, the tortfeasor had bodily injury policy limits of $100,000.00, single limit per occurrence, with Progressive Specialty Insurance Corporation ("Progressive").

23.    By December 14, 2016, Plaintiff's medical payment policy limits coverage of $5,000.00 was exhausted. At no time did Defendant Progressive dispute whether the PIP coverage payments they made were related to the motor vehicle accident.

24.    At all material times, Defendant Progressive paid Plaintiff's PIP benefits for the injuries sustained in the motor vehicle accident and did not challenge her injuries as non-related through a peer review.

25.    As a result of her injuries, Plaintiffs, through counsel, filed a complaint against the tortfeasor.

26.    At all material times hereto, the tortfeasor was underinsured related to the claims for Plaintiffs.

27.    At all material times, the tortfeasor's limits were insufficient to fully cover Plaintiffs' losses and damages.

28.    On April 15, 2019, Plaintiff, through counsel, sent correspondence to Safeco putting them on Notice of Plaintiffs' UIM claim.

29.    On May 21, 2019, Plaintiff, through counsel, sent Safeco's UIM adjuster a complete set of all of Plaintiff, Mrs. Phan-Kramer's, medical records, depositions and the expert reports produced in the third-party tortfeasor matter.

30.    Prior to trial in the third-party tortfeasor matter, the Plaintiffs and the tortfeasor settled for $85,000.00 and Safeco agreed to waive subrogation against the tortfeasor.

31.    On June 28, 2019, Safco's Adjuster, Denise Garrett, sent correspondence to Plaintiffs' counsel that stated that she reviewed the medical records and that "her injury does not appear to have a value over the underlying limits of $100,000.00; therefore, we will not be making an underinsured motorists bodily injury offer." See **Exhibit "B."**

32.    On July 15, 2019, Plaintiffs filed suit against Defendant Safeco for underinsured motorist benefits.

33.    Between July 15, 2019 and the time of trial, September 21, 2021, Plaintiff Loann T. Phan-Kramer continued to medical treat for all of the injuries she sustained in the 2016 motor vehicle accident.

34.    Between April 15, 2019 and the time of trial, September 21, 2021, Plaintiff's counsel sent Defendant every updated treatment record for Plaintiff which documented Plaintiff's ongoing treatments and problems related to her injuries.

35.    In addition to loss of household services, pain and suffering, and loss of consortium, Plaintiff's claims for physical injuries included primarily a full thickness tear of the rotator cuff with resulting sequelae.

36.    Despite having no prior history of a shoulder injury, and despite having a documented shoulder injury at the emergency room on the day of the accident, Defendant

6

intentionally, recklessly, and fraudulently entered false medical information into its claims file to justify its denial of Plaintiff's injuries, medical records, and treating doctors' diagnoses.

37.     Despite being continually updated for three (3) years with ongoing treatment records for Plaintiff's shoulder injuries and multiple treating medical providers stating in their medical charts that Plaintiff's shoulder injury was directly caused by the motor vehicle accident, Defendant made no further investigation into Plaintiff's claims and continued to deny every component of Plaintiff's claims.

38.     Rather than perform a reasonable investigation of Plaintiff's claims and/or make a reasonable settlement offer, Defendant intentionally, maliciously, and fraudulently paid an expert to make knowingly false statements in his expert report.

39.     Rather than perform a reasonable investigation of Plaintiff's claims and/or make a reasonable settlement offer, Defendant intentionally, maliciously, and fraudulently paid an expert to make knowingly false statements in his trial testimony, and presented the medical expert's testimony to the jury knowing it was false.

40.     In his trial testimony, at the direction of Defendant, Defendant's expert intentionally and maliciously lied under oath regarding Plaintiff medical treatments.

41.     In his trial testimony, at the direction of Defendant, Defendant's expert intentionally and maliciously lied under oath and stated that in all of the Plaintiff's forty-two (42) physical therapy visits, Plaintiff never complained or treated for any shoulder injuries.

42.     To expose Defendant's intentional lies, Plaintiff was compelled to show the jury each and every one of the forty-two (42) physical therapy records – all of which showed shoulder injury complaints and shoulder injury treatments in the months following the accident.

43.    At all material times Defendant maliciously relied on knowingly false expert reports and testimony to deny Plaintiff's UIM claims.

44.    The only settlement offer made by Defendant was on the eve of trial at the pre-trial settlement conference with the Court. The offer made at that time was for twenty-five thousand dollars ($25,000.00).

45.    Even after the Defendant's expert's intentionally false testimony was exposed, Defendant made no additional offer to settle the case during the time of trial, nor when the jury was deliberating.

46.    At all times relevant, Defendant Safeco had a duty to evaluate their expert physician's neutrality.

47.    At all times relevant, Defendant Safeco had a duty not to present known false expert physician opinions in their expert reports and in trial testimony.

48.    At all times relevant, Defendant intentionally choose to and relied upon a non-neutral and biased defense expert, despite specific medical evidence to the contrary.

49.    At all times relevant, Defendant challenged causation of Plaintiff's injuries despite not challenging causation in the first party claim for medical benefits.

50.    At all material times, Defendant did not analyze the components of the claim, did not itemize the pain and suffering, loss of consortium, future medical expenses, or loss of household service claims.

51.    On September 23, 2021, the jury awarded Plaintiffs a gross amount of $480,000.00 in damages as follows:

    a.    Non-economic losses:        $250,000.00;

    b.    Future medical expenses:     $140,000.00;

    c. Loss of household services:   $40,000.00:

    d. Loss of consortium:       $50,000.00.

52.    The verdict was there after molded to reflect the third-party tortfeasor's policy of $100,000.00.

53.    On September 27, 2021, this Honorable Court further molded the jury verdict to reflect delay damages of $21, 048.36.

54.    At all relevant times, Defendant had all documentation in its possession to complete a full and fair evaluation of Plaintiff's claim.

55.    At all relevant times, Defendant knew or should have known that Plaintiff had sustained severe injuries, as a result of tortfeasor's admitted negligence and the chain of events put in motion by that negligence.

56.    At all relevant times, Defendant knew or had reason to know that Plaintiffs' injuries exceeded the amount of the tortfeasors available liability coverage, that Plaintiffs were entitled to receive the monetary benefits of her UIM claim, and that a failure to resolve their UIM claim would result in extreme financial hardship to the Plaintiffs.

57.    Defendant made no formal and/or written offer to settle Plaintiffs' claims and, instead, took the unreasonable position, through its claims adjusters, expert, and otherwise, that their one time investigation reveal that there was no UIM claim here and that all of the Plaintiffs' injuries and harms were unrelated to this accident, and only offered twenty-five thousand dollars ($25,000.00) in settlement based on their intentional disregard of the the facts and evidence.

58.    For all times relevant, Defendant was not justified in making the determination that no UIM claim existed in 2019 and then choosing never to review the following two (2) years

9

of Plaintiff's ongoing medical treatments and ongoing medical records and only offering twenty-five thousand dollars ($25,000.00) in settlement on the eve of trial.

59.     For all times relevant, Defendant failed to develop its own independent evaluation of Plaintiffs' claims by blindly relying on biased and non-neutral experts it retained solely to dismiss Plaintiffs' UIM claims.

60.     For all times relevant, Defendant sought out biased experts in order to justify its delay of the claim, its delay of benefits, and to prepare for trial.

61.     At all material times, Defendant denied Plaintiff's medical claims and discounted Plaintiff's objective injuries based on the known intentional false expert report opinion stating that Plaintiff's had no medical treatments records related to her shoulder injury.

62.     At all material times, Defendant was provided with all necessary medical records, expert reports, and all other documents to perform a complete full, fair, and final evaluation of Plaintiff's UIM claim.

63.     At all material times, Defendant has no reasonable explanation of the basis for not offering any settlement over the two (2) years of their defense of Plaintiffs' claim, and only offering twenty-five thousand dollars ($25,000.00) on the eve of trial.

64.     At all times relevant, Defendant intentionally, fraudulently, and recklessly entered misinformation and false information into the claims file and computer software, in order to generate a limited-pay defense on Plaintiffs' UIM claim.

65.     At all material times, Defendant intentionally, fraudulently, and recklessly failed to enter updated medical information as they received it into the claims file and computer software in order to generate a limited-pay recommendation on Plaintiffs' UIM claim.

66.    At all times relevant, Defendant intentionally, fraudulently, and recklessly instituted a policy of entering inaccurate, false, and incomplete information into the claims file computer software knowing that it would generate a no-pay or limited-pay recommendation on Plaintiffs' UIM claim.

67.    At all times relevant, Defendant failed to adopt and implement reasonable standards for the prompt investigation of claims arising under Plaintiffs' UIM insurance policies.

68.    At all times relevant, Defendant failed to set an adequate reserve based on the claim and the medical evidence presented .

69.    At all material times, Defendant was contractually obligated to complete a full, fair, and final evaluation of Plaintiff's UIM claim, and pay on Plaintiffs' claim accordingly and in a timely basis.

70.    For all times relevant, Defendant failed to effectuate a prompt, fair, and equitable settlement despite clear medical evidence and damages, thus compelling Plaintiffs to institute litigation for recovery.

71.    At all material times, Plaintiffs  fully cooperated with all terms and conditions of the applicable insurance policy.

72.    It is believed and therefore averred that Defendant intentionally, fraudulently, maliciously, and recklessly devised a scheme of depriving Plaintiffs of benefits and unreasonably delaying payment of benefits for the purpose of furthering their own financial gains and interests.

73.    Defendant lacked a reasonable basis for refusing to pay the UIM benefits owed to Plaintiffs pursuant to the applicable policy of insurance.

74.    Defendant has acted recklessly, willfully, maliciously and with deliberate indifference towards its insured.

11

75.    As a direct and proximate result of reckless, willful, malicious, and unreasonable investigation, and lack of a sufficient basis for denying Plaintiffs' claims, Plaintiffs sustained severe emotional distress and economic hardship, including jeopardy to their credit, which will continue into the indefinite future.

76.    Defendant had actual knowledge of the economic hardship being caused to their insureds by the unreasonable and malicious delay in the investigation and processing of Plaintiffs' UIM claim.

77.    Despite Defendant's knowledge and awareness of the grave and catastrophic risks to their insureds, Defendants neglected and improperly and recklessly performed their legal obligations to their insureds, as detailed herein – all in furtherance of Defendant's own financial self-interest.

78.    In willful, wanton, and callous disregard for the interests of their insureds, their legal obligations, the plain facts and law of the case, and their lack of any reasonable basis for their own position and conduct, Defendants failed to act to protect their insured, as detailed herein.

79.    Defendant acted unreasonably in failing to timely and unconditionally tender the a UIM settlement offer for its own economic gain and interests, and furthermore thus permitted the value of the claim to continue to build over time. The unreasonable, negligent, reckless, and unlawful conduct of Safeco in this respect and others set forth in this complaint – and the course of conduct relevant thereto – is supported by the evidence and further, the testimony and additional evidence to be revealed in discovery.

## COUNT I

**Plaintiffs, Loann T. Phan-Kramer and Jonerik Kramer, w/h v. Safeco Corporation
(Bad Faith Pursuant To 42 Pa. C.S.A §8371)**

12

80.    All Paragraphs of this Complaint are incorporated by reference in this Count as if fully set forth at length herein.

81.    Plaintiffs were an "insureds" of Defendant, Safeco Corporation, within the meaning of 42 Pa.C.S.A. §8371, which statute imposes a duty upon an insurance company to act in good faith in dealing with Plaintiffs, including but not limited to the handling of their underinsured motorist claim.

82.    Defendant's duty to act in good faith included, without limitation, the obligation to act with reasonable promptness and fairness in evaluating and responding to Plaintiff, claims.

83.    Safeco owed the Plaintiffs a duty to give Plaintiffs' interests the same faithful consideration that it gave its own interests.

84.    Safeco owed a duty to its insureds to properly investigate and timely settle Plaintiffs' claims.

85.    Safeco breached these duties.

86.    Based upon the facts pleaded above, immediately below, and in the other counts set forth in this Complaint, Safeco lacked a reasonable basis for the following actions and omissions in violation of 42 Pa.C.S.A. §8371, and acted recklessly and in conscious disregard of the facts, law and obligations at issue, including:

    a.  failure to properly investigate Plaintiffs' underinsured motorists claim;

    b.  challenging causation in the UIM claim despite not challenging causation in the first party claim for medical benefits;

    c.  failing to acknowledge and act promptly upon written or oral communications from Plaintiffs' counsel with respect to claims arising under their UIM policy;

13

d.  requiring Plaintiff to make submissions of medical information which was already in the possession of Safeco;

e.  failure to properly consider evidence supplied by Plaintiff, and her counsel, in support of her claim;

f.  failing to set an adequate reserve based on the medical and economic evidence presented;

g.  failing to conduct a "meaningful investigation" following the accident;

h.  blindly relying on opinions from experts intentionally retained to provide false opinions and testimony despite credible evidence to the contrary;

i.  failing to develop its own independent evaluation of Plaintiff's claims by blindly relying on biased and non-neutral experts intentionally retained to provide false opinions and testimony;

j.  intentionally retaining the non-neutral and non-independent experts to provide false opinions and testimony;

k.  intentionally seeking out non-neutral and non-independent experts in order to justify its denial to pay the claim, its delay of benefits, and to prepare for trial;

l.  failing to evaluate the proffered expert physician's neutrality;

m.  recklessly denying Plaintiff's medical claims and discounted Plaintiff's objective injuries based on intentionally false expert report opinions that Plaintiff sought and received no treatments for her shoulder injuries despite clear objective medical evidence of the injuries;

n.  failing to consider the medical treatments received;

14

o.  recklessly and frivolously rejecting Plaintiffs' treating physician medical records and testimony as to her injuries and the cause of her injuries without any basis in investigation or expert support;

p.  failing to consult an economist regarding Plaintiff's future economic losses and then frivolously denying any future economic losses;

q.  failing to provide a reasonable explanation of the basis for not offering any settlement over the two (2) years of their investigation of Plaintiffs' claims, and then offering only twenty-five thousand dollars ($25,000.00) on the eve of trial;

r.  failing to submit at trial an economic expert report and did not contest the economic report of Plaintiff;

s.  failing to make any formal and/or written offer to settle Plaintiffs' claims until the eve of trial and, instead, took the unreasonable position that its investigation revealed that Plaintiff did not have any payable UIM claims;

t.  causing Plaintiff to suffer undue hardship as a result of reckless, wanton and arbitrary claims-handling practices;

u.  frivolously rejecting the UIM claim prior to performing any reasonable investigation of the Plaintiffs' claims;

v.  maintaining a frivolous rejection of the UIM claim despite receiving ongoing medical treatments for the two (2) years that the litigation was pending;

w.  intentionally and recklessly entered misinformation into the computer software program knowing it would generate a no-pay recommendation on Plaintiffs' UIM claim;

15

x.  failing to consider that the computer program does not calculate the future medical expenses relative to Plaintiff's injuries;

y.  unreasonably denying Plaintiff's claim for future medical expenses despite uncontested evidence to the contrary in order to support their delay of Plaintiff's UIM claim;

z.  intentionally and recklessly failing to enter updated medical information as it was received into the valuation computer program in order to generate a low-value recommendation on Plaintiffs' UIM claim;

aa. maintaining an unreasonably low reserve despite clear medical evidence, past medical bills, actual loss of wages, and future wage loss, evidencing Plaintiff's serious and permanent injuries;

bb. failing to assign any value to Plaintiffs' UIM claim until the eve of trial and then making only a twenty-five thousand dollar ($25,000.00) offer;

cc. willfully neglecting to consider or process evidence in an effort to save from paying Plaintiffs all of the benefits to which they were legally entitled;

dd. failing to timely respond to inquiries and correspondence;

ee. adopting a company practice of intentionally undervaluing underinsured motorist claims and delaying paying said claims for an unreasonable period of time;

ff. delaying and refusing to pay Plaintiffs' claim despite having no medical or legal reason not to based on Plaintiff's medical records;

gg. forcing Plaintiff to file suit to recover UIM benefits owed to her;

hh. misrepresenting facts and its evaluation of Plaintiffs' claim;

ii.  failing to advise as to its basis for not making any offers;

16

jj.  failing to advise as to its basis for not paying the claim;

kk.  failing to timely respond to correspondence and telephone calls from its insureds' representatives;

ll.  failing to make reasonable and fair offers of settlement of Plaintiff's UIM claim;

mm.  making representations that were unreasonable in light of the facts and circumstance surrounding Plaintiff's claims;

nn.  breaching covenants of good faith and fair dealing;

oo.  failing to pay all sums of money owed to Plaintiff;

pp.  intentionally and maliciously causing Plaintiffs unnecessary and undue hardships;

qq.  intentionally and maliciously causing Plaintiffs unnecessary emotional distress;

rr.  intentionally and maliciously causing Plaintiffs unnecessary economic hardships;

ss.  engaging in unfair settlement negotiations with their insureds;

tt.  Failing to properly protect its insureds' interests by promptly and properly investigating, evaluating, and handling the claim;

uu.  Conducting an inadequate and non-objective evaluation of Mrs. Kramer's claim for UIM benefits;

vv.  creating and implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

ww.  failing to create and implement lawful and adequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

xx.  failing to adhere to Safeco's policies, guides, procedures and practices with regard to claims investigations and claims handling;

17

yy.  Exhibiting a pattern and practice of engaging in unfair or deceptive acts or practices to benefit the interests of Safeco to the detriment and expense of the Kramers by:

    i.  not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy is clear;

    ii.  compelling suit to be instituted to recover amounts due under an insurance policy by failing to offer any settlement;

    iii.  failing to promptly settle claims, where injuries and wage losses had become reasonably clear;

    iv.  failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement.

zz.  Breaching known legal duties to the Kramers out of financial self-interest;

aaa.  making redundant, unnecessary and pretextual requests for documents and other materials

bbb.  maintaining positions contrary to the policy, facts, and evidence;

ccc.  committing various violations of Pennsylvania's Unfair Insurance Practices Act, 40 P.S. §1171.1 et seq. and related regulations including but not limited to The Unfair Claim Settlement Practices Regulations, 31 §146.1 et seq.

ddd.  failing to properly protect its insureds' interests by promptly and properly investigating, evaluating, and handling the claim;

18

eee. conducting an improper, self-serving, inadequate and untimely valuation of the potential damages and future medical expenses;

fff. conducting and relying upon an improper, self-serving, inadequate and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

ggg. reaching and relying upon improper, self-serving and inadequate assumptions regarding the amount and probability of Plaintiff's damages and future economic losses;

hhh. relying upon the improper, self-serving and inadequate assumptions of the tortfeasor's insurance carrier regarding the severity of Plaintiff's injuries and future economic losses;

iii. relying upon the improper, self-serving and inadequate assumptions of the tortfeasor's insurance carrier regarding the Plaintiff's need for her UIM benefits;

jjj. failing to properly give the same faithful consideration to the Kramers' interests that it gave to its own interests;

kkk. setting reserves to twenty-five thousand dollars ($25,000.00) after allowing Plaintiffs to suffer severe financial hardship, but never offering any amount for settlement;

lll. setting reserves at a higher amount over twenty-five thousand dollars ($25,000.00), but never offering any amount for settlement;

mmm. affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

nnn. conducting an investigation, evaluation and assessment with the purpose and effect of protecting and serving Safeco's own interests, rather than providing proper and faithful consideration to the Kramers' interests;

ooo. presenting evidence at trial that was known to be false and inaccurate;

ppp. obtaining an expert medical report that was based on false and inaccurate evidence;

qqq. using as support for its no-pay position a medical expert report that was known to be false and inaccurate;

rrr. relying on medical expert reports that were based on lies and misinformation;

sss. presenting medical expert testimony at trial that was known to be false and in an attempt to mislead the jury; and

ttt. forcing their in-house lawyer and employee to present evidence to the jury that was false.

87.    Safeco knew or recklessly disregarded its lack of a reasonable basis for committing these bad faith acts.

88.    Defendant's actions have been in reckless disregard of Plaintiff's rights, and have been willful, wanton, and outrageous.

89.    As a further consequence of Safeco's breach of the Insurance Policy, Defendant has been unjustifiably enriched to the detriment of Plaintiffs, Loann T. Phan-Kramer and JonErik Kramer.

90.     As a further consequence of Safeco's breach of the Insurance Policy, Plaintiffs have suffered losses, including but not limited to loss of use of benefits payable, economic hardships, jeopardy to their credit, and severe emotional distress.

91.     Safeco's actions in failing to make full payment of the Plaintiff, Loann T. Phan-Kramer's, claim in a timely fashion allowed Safeco to retain money that should have been paid out and to invest those sums in such a fashion, which in essence allowed them to pay part of Plaintiff, Loann T. Phan-Kramer's claim with profits derived from investing money which belonged to Plaintiffs.

**WHEREFORE**, Plaintiffs, Loann T. Phan-Kramer and JonErik Kramer, respectfully request this Honorable Court enter judgment in their favor and against Defendants for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential, delay damages, and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

## COUNT II

**Plaintiffs, Loann T. Phan-Kramer and Jonerik Kramer, w/h v. Safeco Corporation**
**(Breach of Contract/Good Faith and Fair Dealing)**

92.     All Paragraphs of this Complaint are incorporated by reference as if fully set forth at length herein.

93.     In accordance with the policy of insurance, specifically Policy No. K3001008, issued by Safeco Corporation ("Safeco"), under which Loann T. Phan-Kramer and JonErik

21

Kramer were insured for Underinsured Motorist Benefits Coverage ("UIM") applicable to the accident, Plaintiffs Loann T. Phan-Kramer and JonErik Kramer made a claim for benefits under the policy at issue.

94.    The said insurance contract imposed upon the Defendant Safeco an agreement and a duty to use good faith and apply fair dealing towards the Plaintiffs/insureds in handling all claims Plaintiffs may bring under the policy, including underinsured motorist claims.

95.    The Plaintiffs, at all times relevant to this cause of action, fully and completely cooperated with Defendant Safeco, and fulfilled all of their obligations under the policy of insurance number K3001008, which was in full force and effect at all times relevant to the Plaintiffs' underinsured motorist claim.

96.    The contract imposed certain contractual and other duties on Safeco, including the duty to independently and timely investigate Plaintiff's claims.

97.    The contract including within it a covenant of good faith and fair dealing.

98.    By failing to properly investigate, evaluate, and make any settlement offer on the Plaintiffs' claim, Defendant Safeco herein breached their contractual obligations to Plaintiffs under the said policy of insurance, in that Defendant Safeco failed to act promptly in processing Plaintiffs' underinsured motorist claim.

99.    Defendant Safeco, in the performance of the said contract of insurance, owed to Plaintiffs a fiduciary duty to act in good faith and to use due care in representing Plaintiffs' interests.

100.    Defendant improperly, unjustifiably, and unconscionably attempted to deny benefits due and/or failed to timely pay benefits due under the policy pursuant to a bias and self-interest.

101.    Defendant misrepresented and deliberately under-evaluated Plaintiffs' UIM claim.

102.    Defendant has refused and failed to pay the reasonable value of Plaintiff's UIM claim.

103.    Defendant has wrongfully withheld benefits owed to Plaintiff pursuant to the policy.

104.    Defendant did so by knowingly elevating its financial interests above the interests of its insureds.

105.    As a further consequence of Safeco's breach of the Insurance Policy, Defendant has been unjustifiably enriched to the detriment of Plaintiffs, Loann T. Phan-Kramer and JonErik Kramer.

106.    As a further consequence of Safeco's breach of the Insurance Policy, Plaintiffs have suffered losses, including but not limited to loss of use of benefits payable, economic hardships, jeopardy to their credit, difficulty paying mortgage, relying on credit cards they were unable to pay, inability to refinance their mortgage, borrowing money from family, derivative damages resulting from drop in credit scores, and severe emotional distress.

107.    Safeco's actions in failing to make full payment of the Plaintiff, Loann T. Phan-Kramer's claim in a timely fashion allowed Safeco to retain money that should have been paid out and to invest those sums in such a fashion, which in essence allowed them to pay part of Plaintiff, Loann T. Phan-Kramer's claim with profits derived from investing money which belonged to Plaintiff.

108.    The actions of Safeco described in this complaint represent a breach of contract.

109.    As a result of Safeco's actions as described, Safeco breached their obligation of good faith and fair dealing.

110.    Plaintiff has been damaged in a sum not yet fully determined, but in any event, to be proven at the time of trial.

111.    Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, Safeco breached its contractual obligations under the Safeco Policy with the Kramers by:

a.  failure and refusal to properly and promptly evaluate the Plaintiffs' underinsured motorist claim for settlement purposes;

b.  failure and refusal to properly and promptly investigate the damage aspects of the Plaintiffs' underinsured motorist claim;

c.  failure and refusal to properly and promptly make an offer of settlement for the Plaintiffs' underinsured motorist claim;

d.  failure and refusal to promptly and properly evaluate the Plaintiffs' underinsured motorist claim for settlement purposes;

e.  intentional and knowing failure and refusal to negotiate in good faith and knowing refusal to make a timely, good faith offer of settlement in a timely manner;

f.  failure and refusal to act in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' uninsured motorist claim;

g.  failure and refusal to give the interest of its insured the same weight as it gave its own interests;

h.  intentional failure and refusal to be honest and forthright in the handling and processing of the Plaintiffs' underinsured motorist claim;

i.  intentional failure and knowing refusal to comply with the requirements of the Unfair Insurance Practices Act and Unfair Claims Settlement Practices Regulations;

j.  engaging in unfair and deceptive business practices prohibited by the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

k.  failure to properly investigate Plaintiff's underinsured motorists claim;

l.  challenging causation in Plaintiffs' UIM claim despite not challenging causation in the first party claim for medical benefits;

m.  failing to acknowledge and act promptly upon written or oral communications from Plaintiffs' counsel with respect to claims arising under their UIM policy;

n.  requiring Plaintiff to make submissions of medical information which was already in the possession of Safeco;

o.  failure to properly consider evidence supplied by Plaintiff, Loann T. Phan-Kramer, and her counsel, in support of her claim;

p.  failing to set an adequate reserve based on the medical and economic evidence presented;

q.  failing to conduct a "meaningful investigation" following the accident;

r.  blindly relying on opinions from the third party defendant's experts despite credible evidence to the contrary;

s.  failing to obtain expert reviews in pursuit of its investigation in a more timely fashion, i.e. taking nearly two (2) years from the date the Plaintiff made a UIM claim until Safeco obtained experts to review Plaintiff's claims;

t.  failing to develop its own independent evaluation of Plaintiff's claims by blindly relying on biased and non-neutral experts;

u.  intentionally seeking out non-neutral and non-independent experts in order to justify its delay of paying the claim, its delay of benefits, and to prepare for arbitration;

v.  failing to evaluate the proffered expert physician's neutrality;

w.  recklessly denying Plaintiff's medical claims and discounting Plaintiff's objective injuries based on the false expert report opinions that Plaintiff never complained of shoulder pain for months after the accident;

x.  failed to consider the medical treatments received;

y.  relying solely on the opinion of a medical expert who gave false opinions;

z.  failing to consult an economist regarding Plaintiff's future economic losses, but then frivolously denying any future economic losses;

aa. failing to provide a reasonable explanation of the basis in the insurance policy in relation to the facts for not offering any settlement over the three (3) years of their investigation of Plaintiffs' claim;

bb. failing to submit at trial an economic expert report and not contesting the economic report of Plaintiff;

cc. intentionally, recklessly, and maliciously producing expert reports that were known to be based on incorrect information;

dd. failing to make any formal and/or written offer to settle Plaintiffs' claims and, instead, took the unreasonable position, through its claims adjusters and

26

otherwise, that the investigation was continuing despite the fact that Defendant Safeco had no ongoing investigation;

ee. causing Plaintiff to suffer undue hardship as a result of reckless, wanton, and arbitrary claims-handling practices;

ff. forcing Plaintiffs to go to trial for the UIM claim without having investigated Plaintiff's claims;

gg. intentionally and recklessly entering misinformation into the value assessment program in order to generate a low-value recommendation and/or reserve on Plaintiffs' UIM claim;

hh. failing to consider that the value assessment computer program does not calculate the future medical expenses relative to Plaintiff's injuries;

ii. unreasonably denying Plaintiff's claim for future medical expenses despite uncontested evidence to the contrary in order to support their delay of Plaintiff's UIM claim;

jj. intentionally and recklessly failing to enter updated medical information as it was received into the value assessment computer program in order to generate a low-value recommendation on Plaintiffs' UIM claim;

kk. maintaining an unreasonably low reserve despite clear medical evidence, past medical bills, and future medical costs evidencing her serious and permanent injuries;

ll. failing to assign any value to Plaintiffs' UIM claim until the last minute and then offering only twenty-five thousand dollars ($25,000.00);

27

mm. willfully neglecting to consider or process evidence in an effort to save from paying Plaintiff all of the benefits to which she was legally entitled;

nn. failing to timely respond to inquiries and correspondence;

oo. adopting a company practice of intentionally undervaluing underinsured motorist claims and delaying paying said claims for an unreasonable period of time;

pp. delaying and refusing to pay Plaintiffs' claims despite having no medical or legal reason not to;

qq. forcing Plaintiffs to file suit to recover UIM benefits owed to her;

rr. misrepresenting facts and its evaluation of Plaintiffs' claim;

ss. failing to advise as to its basis for not making any offers before the eve of trial;

tt. failing to advise as to its basis for not paying the claim;

uu. failing to advise as to its basis for going to trial;

vv. failing to timely respond to correspondence and telephone calls from its insureds' representatives;

ww. failing to make reasonable and fair offers of settlement of Plaintiffs' UIM claim;

xx. making representations that were unreasonable in light of the facts and circumstances surrounding Plaintiff's claims;

yy. breaching covenants of good faith and fair dealing;

zz. failing to pay all sums of money owed to Plaintiff;

aaa. intentionally and maliciously causing Plaintiffs unnecessary and undue hardships;

bbb. intentionally and maliciously causing Plaintiffs unnecessary emotional distress;

ccc. intentionally and maliciously causing Plaintiffs unnecessary economic hardships;

ddd. engaging in unfair settlement negotiations with their insureds;

eee. failing to properly protect its insureds' interests by promptly and properly investigating, evaluating, and handling the claim;

fff. conducting an inadequate and non-objective evaluation of Loann T. Phan-Kramer's claim for UIM benefits;

ggg. creating and implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

hhh. failing to create and implement lawful and adequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

iii. failing to adhere to Safeco policies, guides, procedures and practices with regard to claims investigations and claims handling;

jjj. exhibiting a pattern and practice of engaging in unfair or deceptive acts or practices to benefit the interests of Safeco to the detriment and expense of the Kramers by:

    i. not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which the company's liability under the policy is clear;

    ii. compelling suit to be instituted to recover amounts due under an insurance policy by failing to offer any settlement;

    iii. failing to promptly settle claims, where injuries and future medical expenses had become reasonably clear; and

    iv. failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement.

kkk.    breaching known legal duties to the Kramers out of financial self-interest;

lll.    unduly, wrongfully, and unreasonably denying and/or delaying payment on Plaintiffs' claim without justification;

mmm.    requiring the Plaintiffs to incur costly legal fees and other costs in obtaining what was rightfully theirs;

nnn.    failing to make any settlement offer to the Plaintiffs, despite the significant value of Plaintiffs' claim;

ooo.    failure of Defendant Safeco to perform and/or complete the investigation of Plaintiffs' claim within a reasonable amount of time;

ppp.    failure of Defendant Safeco to explain to Plaintiffs that additional time is needed for further investigation of their claim;

qqq.    failure of Defendant Safeco to provide any reason for requiring additional time to complete the investigation of Plaintiffs' claim;

rrr.    failure of the Defendant Safeco to make a meaningful investigation of the Plaintiffs' claim;

sss.    failure of the Defendant Safeco to understand or take steps to learn of the Plaintiff's condition;

ttt.    requiring Plaintiffs to engage the services of experts to prepare reports for presentation at the trial at great expense;

uuu.    requiring Plaintiffs to expend other sums of money to prosecute their lawsuit against Defendant Safeco;

vvv.    failure of the Defendant Safeco to pay the money rightfully owed to the Plaintiffs resulting in severe economic harm to the Plaintiffs;

www. failure of Defendant Safeco to examine the damages to tortfeasor and Plaintiffs' vehicles;

xxx. failing to set aside adequate reserves for Plaintiffs' claim despite the medical evidence and economic losses evidence presented;

yyy. failure of Defendant Safeco to increase the reserves as new medical information and damages were obtained;

zzz. failure of Defendant Safeco to review the reserve periodically;

aaaa. failure of Defendant Safeco to follow its own claims handling procedures;

bbbb. continuously shifting its basis for denying Plaintiffs' claims;

cccc. denying Plaintiffs the use and benefits of the money they were entitled to under the underinsured motorist portion of their policy;

dddd. placing Defendant Safeco's own interests above that of their insureds by refusing to make a settlement offer so as to be able to retain the money in their own account and earn interest on the money for well over a year;

eeee. asserting boilerplate denials regarding Plaintiffs' injuries, damages, and treatment without doing any investigation into the truth of those denials;

ffff. asserting boilerplate denials regarding the cause of the subject accident despite clear evidence to the contrary;

gggg. making redundant, unnecessary and pretextual requests for documents and other materials;

hhhh. maintaining positions contrary to the policy, facts, and evidence;

iiii. failing to properly protect its insureds' interests by promptly and properly investigating, evaluating, and handling the claim;

31

jjjj. conducting an improper, self-serving, inadequate, and untimely valuation of the potential damages and future medical costs to Plaintiff;

kkkk. conducting and relying upon an improper, self-serving, inadequate, and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

llll. reaching and relying upon improper, self-serving, and inadequate assumptions regarding the amount and probability of Plaintiff's damages and future medical costs;

mmmm. relying upon the improper, self-serving, and inadequate assumptions of the tortfeasor's insurance carrier regarding the severity of Plaintiff's injuries;

nnnn. relying upon the improper, self-serving, and inadequate assumptions of the tortfeasor's insurance carrier regarding the Plaintiff's need for her UIM benefits;

oooo. failing to properly give the same faithful consideration to the Kramers' interests that it gave to its own interests;

pppp. intentionally delaying the investigation of Plaintiff's claims so that they would become financially burdened for the continuation of treating her injuries thereby creating the defense to the severity and permanency of her injuries, i.e. "Plaintiff has fully recovered given the fact that she is no longer treating";

qqqq. affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

rrrr. conducting an investigation, evaluation, and assessment with the purpose and effect of protecting and serving Safeco's own interests, rather than providing proper and faithful consideration to the Kramers' interests;

ssss. presenting evidence at trial that was known to be false and inaccurate;

tttt. obtaining an expert medical report that was based on false and inaccurate evidence;

uuuu. using as support for its no-pay position a medical expert report that was known to be false and inaccurate;

vvvv. relying on medical expert reports that were based on lies and misinformation;

wwww. recklessly and frivolously rejecting Plaintiffs' treating physician medical records and testimony as to her injuries and the cause of her injuries without any basis in investigation or expert support;

xxxx. presenting medical expert testimony at trial that was known to be false and in an attempt to mislead the jury; and

yyyy. forcing their in-house lawyer and employee to present evidence to the jury that was false.

112.    Defendant's actions have been in reckless disregard of Plaintiff's rights, and have been willful, wanton, and outrageous.

113.    As a direct and proximate result of Safeco's breach of its contractual duties and legal obligations of good faith, further consequence of Safeco's breach of the Insurance Policy, Defendant has been unjustifiably enriched to the detriment of Plaintiffs, Loann T. Phan-Kramer and JonErik Kramer.

114.    As a direct and proximate result of Safeco's breach of the Insurance Policy, Plaintiffs have suffered losses, including but not limited to loss of use of benefits payables, economic hardships, jeopardy to their credit, difficulty paying mortgage, relying on credit cards they were unable to pay, inability to refinance their mortgage, borrowing money from family, derivative damages resulting from drop in credit scores, and severe emotional distress.

115.    Safeco's actions in failing to make full payment of the Plaintiff, Loann T. Phan-Kramer's claim in a timely fashion allowed Safeco to retain money that should have been paid out and to invest those sums in such a fashion, which in essence allowed them to pay part of Plaintiff, Loann T. Phan-Kramer's claim with profits derived from investing money which belonged to Plaintiffs.

**WHEREFORE**, Plaintiffs, Loann T. Phan-Kramer and JonErik Kramer, respectfully request this Honorable Court enter judgment in their favor and against Defendants for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential, delay damages, and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

## COUNT III

**Plaintiffs, Loann T. Phan-Kramer and Jonerik Kramer, w/h v. Safeco Corporation
(Violation of the Unfair Trade Practices and Consumer Protection Law)**

116.    All Paragraphs of this Complaint are incorporated by reference in this Count as if fully set forth at length herein.

117.    Defendant Safeco has committed multiple violations of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq., by affirmatively committing the following unfair, fraudulent, and deceptive acts of misfeasance in connection with the obligations of their insureds:

a.  misrepresenting the nature, extent, terms, and conditions of the underinsured motorist coverage for which Plaintiff was entitled;

b.  misrepresenting that it would promptly and fairly evaluate and respond to all reasonable underinsured motorist claims made by Plaintiff;

c.  failing and refusing to comply with the terms and conditions of the insurance policy or policies under which Plaintiff was an insured and the reasonable expectations of Plaintiff, Loann T. Phan-Kramer, based on the policy or policies;

d.  failing and refusing to comply with the statutes of the Commonwealth of Pennsylvania and the regulations of the Pennsylvania Insurance Department governing the conduct of insurers;

e.  violating its fiduciary, contractual, and statutory duties in dealing with Plaintiff, Loann T. Phan-Kramer;

f.  publishing, circulating, and distributing promotional and advertising materials in both the print and television media to induce consumers such as Loann T. Phan-Kramer to purchase insurance products and services, including underinsured motorist coverage, and to reasonably believe that their legitimate claims would be promptly evaluated and paid as averred above;

g.  engaging in fraudulent conduct and thereby creating a likelihood of confusion or misunderstanding;

h.  deliberately misrepresenting the value of Plaintiff's claim, amount of coverage available, and offer communicated;

i.  engaging in bad faith and unfair settlement negotiations and practices;

j.  improperly and pretextually requesting additional evidence regarding the claim as a means to improperly evade the proper and timely performance of its legal obligations in connection with the investigation;

k.  evaluating the amount of Plaintiff's damages and wage losses under an irrationally restrictive standard as a pretext and contrary to Safeco's own investigation and claims-handling policies and procedures;

l.  creating and implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

m.  implementing and pursuing a claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

n.  breaching known legal duties to the Kramers out of financial self-interest;

o.  making redundant, unnecessary, and pretextual requests for documents and other materials;

p.  maintaining positions contrary to the policy, facts, and evidence;

q.  failing to properly protect its insureds' interests by promptly and properly investigating, evaluating, and handling the claim;

r.  conducting an improper, self-serving, inadequate, and untimely valuation of the potential damages and wage losses to Plaintiff;

36

s.  conducting and relying upon an improper, self-serving, inadequate, and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

t.  reaching and relying upon improper, self-serving, and inadequate assumptions regarding the amount and probability of Plaintiff's damages and wage losses;

u.  relying upon the improper, self-serving and inadequate assumptions of the tortfeasor's insurance carrier regarding the severity of Plaintiff's injuries and wage losses;

v.  relying upon the improper, self-serving, and inadequate assumptions of the tortfeasor's insurance carrier regarding the Plaintiff's need for her UIM benefits;

w.  failing to properly give the same faithful consideration to the Kramers' interests that it gave to its own interests;

x.  affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

y.  intentionally delaying the investigation of Plaintiff's claims so that she would run out of money for the continuation of treating her injuries thereby creating the defense to the severity and permanency of her injuries, i.e. "Plaintiff has fully recovered given the fact that she is no longer treating";

z.  conducting an investigation, evaluation, and assessment with the purpose and effect of protecting and serving Safeco's own interests, rather than providing proper and faithful consideration to the Kramers' interests;

aa. implementing and engaging in a policy of relying solely on the opinions of medical experts who presented opinions based on known false information;

bb. presenting evidence at trial that was known to be false and inaccurate;

cc. obtaining an expert medical report that was based on false and inaccurate evidence;

dd. using as support for its no-pay position a medical expert report that was known to be false and inaccurate;

ee. relying on medical expert reports that were based on lies and misinformation;

ff. relying on opinions from experts intentionally retained to provide false opinions and testimony despite credible evidence to the contrary;

gg. failing to develop its own independent evaluation of Plaintiff's claims by blindly relying on biased and non-neutral experts intentionally retained to provide false opinions and testimony;

hh. intentionally retaining the non-neutral and non-independent experts to provide false opinions and testimony;

ii. intentionally seeking out non-neutral and non-independent experts in order to justify its denial to pay the claim, its delay of benefits, and to prepare for trial;

jj. failing to evaluate the proffered expert physician's neutrality;

kk. recklessly denying Plaintiff's medical claims and discounted Plaintiff's objective injuries based on intentionally false expert report opinions that Plaintiff sought and received no treatments for her shoulder injuries despite clear objective medical evidence of the injuries;

ll. recklessly and frivolously rejecting Plaintiffs' treating physician medical records and testimony as to her injuries and the cause of her injuries without any basis in investigation or expert support;

mm. presenting medical expert testimony at trial that was known to be false and in an attempt to mislead the jury; and

nn. forcing then in-house lawyer or employee to present evidence to the jury that was false.

118. Such conduct violated statutory sections 201-2(4)(v), (vii), (ix), (xiv), and/or (xxi).

119. The Kramers, believing and trusting the representations made by Safeco and its adjusters that their insurance company would act in their best interests, cooperated with Safeco, and justifiably relied on Safeco to properly evaluate and handle the Kramers claims, which Safeco failed to do.

120. The Kramers, including Loann T. Phan-Kramer, suffered significant damages and harm as a result of their justifiable reliance on Safeco.

121. As a direct and proximate result of Safeco's unfair, fraudulent, or deceptive conduct, the Kramers have suffered losses, including but not limited to loss of use of benefits payable, economic hardships, jeopardy to their credit, difficulty paying mortgage, relying on credit cards they were unable to pay, inability to refinance their mortgage, borrowing money from family, derivative damages resulting from drop in credit scores, having to obtain medical assistance, and severe emotional distress.

122.    As a result of Defendant, Safeco's conduct, Plaintiff has suffered damages and losses in an amount yet to be determined and which Plaintiff reasonably believes to be in excess of fifty-thousand dollars ($50,000.00) exclusive of interest and costs.

**WHEREFORE**, Plaintiff, Loann T. Phan-Kramer, demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to 73 P.S. §201-9.2, 42 Pa.C.S.A. §8371, and the common law including actual damages in an amount to be determined together with an award of three (3) times the actual damages sustained along with counsel fees, interest, costs of suit and punitive damages.

## COUNT IV

### Plaintiffs, Loann T. Phan-Kramer and Jonerik Kramer, w/h v. Safeco Corporation
### (Violation of the Unfair Trade Practices and Consumer Protection Law)

123.    All Paragraphs of this Complaint are incorporated by reference in this Count as if fully set forth at length herein.

124.    Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, defendants through their agents, employees, servants and/or representatives violated Pennsylvania's Unfair Trade Practices and Consumer law, 73 Pa.C.S.A. §201-1 et seq., by affirmatively committing through such persons, all acting in the course and scope of their employment for the benefit and within the control of the subject defendants, the following unfair, fraudulent and deceptive acts of misfeasance in connection with their obligations to their insureds:

a.  fraudulently misrepresenting the nature, extent, terms and conditions of the underinsured motorist coverage for which Plaintiff was entitled;

b.  fraudulently misrepresenting that they would promptly and fairly evaluate and respond to all reasonable underinsured motorist claims made by Plaintiff;

c.  failing and refusing to comply with the terms and conditions of the insurance policy or policies under which Plaintiff was an insured and the reasonable expectations of Plaintiff, Loann T. Phan-Kramer, based on the policy or policies;

d.  failing and refusing to comply with the statutes of the Commonwealth of Pennsylvania and the regulations of the Pennsylvania Insurance Department governing the conduct of insurers;

e.  violating their fiduciary, contractual, and statutory duties in dealing with Plaintiff, Loann T. Phan-Kramer;

f.  engaging in fraudulent conduct and thereby creating a likelihood of confusion or misunderstanding;

g.  deliberately misrepresenting the value of Plaintiff's claim, amount of coverage available, and offer communicated;

h.  engaging in fraudulently, deceptive, malicious, and unfair settlement negotiations and practices;

i.  improperly and pretextually, with the intent to deceive and delay, requesting additional evidence regarding the claim as a means to improperly evade the proper and timely performance of their legal obligations in regard to Plaintiff's claim;

j.  fraudulently evaluating the amount of Plaintiff's damages and wage losses under an irrationally restrictive standard as a pretext and contrary to Safeco's own investigation and claims-handling policies and procedures;

k.  creating and implementing unlawful, inadequate, and fraudulent policies, guides, procedures, and practices with regard to claims investigations and claims handling;

l.  implementing and pursuing a deceitful claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

m.  breaching known legal duties to the Kramers out of financial self-interest;

n.  making redundant, unnecessary, and pretextual requests for documents and other materials with the intent to deceive and fraudulently delay due payment to Plaintiff;

o.  fraudulently maintaining positions contrary to the policy, facts, and evidence;

p.  failing to properly protect their insureds' interests by promptly and properly investigating, evaluating, and handling the claim;

q.  conducting an improper, self-serving, inadequate, and untimely valuation of the potential damages and wage losses to Plaintiff;

r.  conducting and relying upon an improper, self-serving, inadequate, and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

s.  reaching and relying upon improper, self-serving, and inadequate assumptions regarding the amount and probability of Plaintiff's damages and wage losses;

t.  relying upon the improper, self-serving, and inadequate assumptions of the tortfeasor's insurance carrier regarding the severity of Plaintiff's injuries and wage losses;

u.  relying upon the improper, self-serving, and inadequate assumptions of the tortfeasor's insurance carrier regarding the Plaintiff's need for her UIM benefits;

v.  failing to properly give the same faithful consideration to the Kramers' interests that he gave to his own interests;

w.  affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

x.  intentionally delaying the investigation of Plaintiff's claims so that she would run out of money for the continuation of treating her injuries thereby creating the defense to the severity and permanency of her injuries, i.e. "Plaintiff has fully recovered given the fact that she is no longer treating";

y.  conducting an investigation, evaluation, and assessment with the purpose and effect of protecting and serving Safeco's own interests, rather than providing proper and faithful consideration to the Kramers' interests;

z.  blindly relying on opinions from experts intentionally retained to provide false opinions and testimony despite credible evidence to the contrary;

aa. failing to develop its own independent evaluation of Plaintiff's claims by blindly relying on biased and non-neutral experts intentionally retained to provide false opinions and testimony;

bb. intentionally retaining the non-neutral and non-independent experts to provide false opinions and testimony;

cc. intentionally seeking out non-neutral and non-independent experts in order to justify its denial to pay the claim, its delay of benefits, and to prepare for trial;

dd. failing to evaluate the proffered expert physician's neutrality;

ee. recklessly denying Plaintiff's medical claims and discounted Plaintiff's objective injuries based on intentionally false expert report opinions that Plaintiff sought and received no treatments for her shoulder injuries despite clear objective medical evidence of the injuries;

ff. recklessly and frivolously rejecting Plaintiffs' treating physician medical records and testimony as to her injuries and the cause of her injuries without any basis in investigation or expert support; and

gg. implementing and engaging in a policy of relying solely on the opinions of medical experts who gave opinions based on known false information.

125.    Such conduct violated statutory sections 201-2(4)(v), (vii), (ix), (xiv), and/ or (xxi).

126.    Defendants are vicariously liable for the conduct of such agents, employees, servants, and/or representatives, including both the individual defendants named in the complaint, as well as such other individuals as described above.

127.    The Kramers, believing and trusting the representations made by Safeco and its adjuster that their insurance company would act in their best interests, cooperated with Safeco and its adjusters and justifiably relied on Safeco and its adjusters to properly evaluate and handle the Kramers' claims, which Safeco and its adjusters failed to do.

128.    The Kramers, including Loann T. Phan-Kramer, suffered significant damages and harm as a result of their justifiable reliance on Safeco.

129.    As a direct and proximate result of Safeco's unfair, fraudulent, or deceptive conduct, the Kramers have suffered losses, including but not limited to loss of use of benefits payable, economic hardships, jeopardy to their credit, difficulty paying mortgage, relying on credit cards they were unable to pay, inability to refinance their mortgage, borrowing money from family, derivative damages resulting from drop in credit scores, and severe emotional distress.

130.    As a result of Defendant Safeco's conduct, Plaintiff has suffered damages and losses in an amount yet to be determined and which Plaintiff reasonably believes to be in excess of fifty-thousand dollars ($50,000.00) exclusive of interest and costs.

**WHEREFORE**, Plaintiff, Loann T. Phan-Kramer, demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to 73 P.S. §201-9.2, 42 Pa.C.S.A. §8371, and the common law including actual damages in an amount to be determined together with an award of three (3) times the actual damages sustained along with counsel fees, interest, costs of suit and punitive damages.


## COUNT V

**Plaintiffs, Loann T. Phan-Kramer and Jonerik Kramer, w/h v. Safeco Corporation**
**(Negligence)**

131.    All Paragraphs of this Complaint are incorporated by reference as if fully set forth at length herein.

132.    In accordance with the policy of insurance, specifically Policy No. K3001008, issued by Safeco, under which Loann T. Phan-Kramer and JonErik Kramer were insured for Underinsured Motorist Benefits Coverage ("UIM") applicable to the accident, Plaintiffs Loann T. Phan-Kramer and JonErik Kramer, made a claim for benefits under the policy at issue.

133.    The said insurance contract imposed upon the Defendant Safeco an agreement and a duty to use good faith and apply fair dealing towards the Plaintiffs/insured in handling all claims Plaintiffs may bring under the policy, including underinsured motorist claims.

134.    The Plaintiffs, at all times relevant to this cause of action, fully and completely cooperated with Defendant Safeco, and fulfilled all of their obligations under the policy of insurance number K3001008, which was in full force and effect at all times relevant to the Plaintiffs' underinsured motorist claim.

135.    The contract included within it a covenant of good faith and fair dealing.

136.    By failing to properly investigate, evaluate, and make any settlement offer on the Plaintiffs' claim, Defendant Safeco herein breached their contractual obligations to Plaintiffs under the said policy of insurance, in that Defendant Safeco failed to act promptly in processing Plaintiffs' underinsured motorist claim.

137.    Defendant Safeco, in the performance of the said contract of insurance, owed to Plaintiffs a fiduciary duty to act in good faith and to use due care in representing Plaintiffs' interests.

138.    Defendant improperly, unjustifiably, and unconscionably attempted to deny benefits due and/or failed to timely pay benefits due under the policy pursuant to a bias and self-interest.

139.    Defendant misrepresented and deliberately under-evaluated Plaintiffs' UIM claim.

140.    Defendant has refused and failed to pay the reasonable value of Plaintiffs' UIM claim.

141.    Defendant has wrongfully withheld benefits owed to Plaintiffs pursuant to the policy.

142.    Defendant did so by knowingly elevating its financial interests above the interests of its insureds.

143.    As a further consequence of Safeco's breach of the Insurance Policy, Defendant has been unjustifiably enriched to the detriment of Plaintiffs, Loann T. Phan-Kramer and JonErik Kramer.

144.    As a further consequence of Safeco's breach of the Insurance Policy, Plaintiffs have suffered losses, including but not limited to loss of use of benefits payable, economic hardships, jeopardy to their credit, and severe emotional distress.

145.    Safeco's actions in failing to make full payment of the Plaintiff, Loann T. Phan-Kramer's, claim in a timely fashion allowed Safeco to retain money that should have been paid out and to invest those sums in such a fashion, which in essence allowed them to pay part of Plaintiff, Loann T. Phan-Kramer's claim with profits derived from investing money which belonged to Plaintiff.

146.    The actions of Safeco described in this complaint represent a breach of contract.

147.    As a result of Safeco's actions as described, Safeco breached their obligation of good faith and fair dealing.

148.    Plaintiff has been damaged in a sum not yet fully determined, but in any event, to be proven at the time of trial.

47

149.     Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, the Safeco entity defendant's negligence and/or recklessness in breach of its duty under the Safeco Policy consisted of some of all of the following:

a.   failure and refusal to properly and promptly evaluate the Plaintiffs' underinsured motorist claim for settlement purposes;

b.   failure and refusal to properly and promptly investigate the damage aspects of the Plaintiffs' underinsured motorist claim;

c.   failure and refusal to properly and promptly make an offer of settlement for the Plaintiffs' underinsured motorist claim;

d.   failure and refusal to promptly and properly evaluate the Plaintiffs' underinsured motorist claim for settlement purposes;

e.   intentional and knowing failure and refusal to negotiate in good faith and knowing refusal to make a timely, good faith offer of settlement in a timely manner;

f.   failure and refusal to act in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' underinsured motorist claim;

g.   failure and refusal to give the interest of its insured the same weight as it gave its own interests;

h.   intentional failure and refusal to be honest and forthright in the handling and processing of the Plaintiffs' underinsured motorist claim;

i.   intentional failure and knowing refusal to comply with the requirements of the Unfair Insurance Practices Act and Unfair Claims Settlement Practices Regulations;

48

j. engaging in unfair and deceptive business practices prohibited by the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

k. failure to properly investigate Plaintiff's underinsured motorists claim;

l. challenging causation in Plaintiffs' UIM claim despite not challenging causation in the first party claim for medical benefits;

m. failing to acknowledge and act promptly upon written or oral communications from Plaintiffs' counsel with respect to claims arising under their UIM policy;

n. requiring Plaintiff to make submissions of medical information which was already in the possession of Safeco;

o. failure to properly consider evidence supplied by Plaintiff, Loann T. Phan-Kramer and her counsel, in support of her claim;

p. failing to set an adequate reserve based on the medical and economic evidence presented;

q. failing to conduct a "meaningful investigation" following the accident;

r. blindly relying on opinions from the third-party defendant's experts despite credible evidence to the contrary;

s. failing to obtain expert reviews in pursuit of its investigation in a more timely fashion;

t. intentionally seeking out non-neutral and non-independent experts in order to justify its delay of paying the claim, its delay of benefits, and to prepare for arbitration;

u. failing to evaluate the proffered expert physician's neutrality;

v.   recklessly denying Plaintiff's medical claims and discounting Plaintiff's objective injuries based on expert report opinions that were based on information that was known to be false;

w.  failing to request photographs of the vehicles, accident, and damage estimates;

x.   failing to consider the speed of the vehicles;

y.   failed to consider the medical treatments received;

z.   relying solely on the opinion of a medical expert who gave an opinion based on information Safeco knew to be false;

aa. failing to provide a reasonable explanation of the basis in the insurance policy in relation to the facts for not offering any settlement over the three (3) years of their investigation of Plaintiffs' claim;

bb. failing to submit at trial an economic expert report and not contest the economic report of Plaintiff;

cc. failing to make any formal and/or written offer to settle Plaintiffs' claims and, instead, took the unreasonable position, through its claims adjusters and otherwise, that the investigation was continuing despite the fact that Defendant Safeco had no ongoing investigation and failed to obtain any expert reviews in pursuit of its investigation;

dd. causing Plaintiff to suffer undue hardship as a result of reckless, wanton, and arbitrary claims-handling practices;

ee. intentionally and recklessly entering misinformation into the value assessment computer program in order to generate a low-value recommendation and/or reserve on Plaintiffs' UIM claim;

50

ff.  failing to consider that the value assessment computer program does not calculate the future medical expenses relative to Plaintiff's injuries;

gg. unreasonably denying Plaintiff's claim for future medical expenses despite uncontested evidence to the contrary in order to support their delay of Plaintiff's UIM claim;

hh. intentionally and recklessly failing to enter updated medical information as it was received into the value assessment computer program in order to generate a low-value recommendation on Plaintiffs' UIM claim;

ii.  maintaining an unreasonably low reserve despite clear medical evidence, past medical bills, and future medical bills evidencing her serious and permanent injuries;

jj.  failing to assign any value to Plaintiffs' UIM claim;

kk. willfully neglecting to consider or process evidence in an effort to save from paying Plaintiff all of the benefits to which she was legally entitled;

ll.  failing to timely respond to inquiries and correspondence;

mm. adopting a company practice of intentionally undervaluing underinsured motorist claims and delaying paying said claims for an unreasonable period of time;

nn. delaying and refusing to pay Plaintiffs' claim despite having no medical or legal reason not to;

oo. forcing Plaintiff to file suit to recover UIM benefits owed to her;

pp. misrepresenting facts and its evaluation of Plaintiffs' claim;

qq. failing to advise as to its basis for not making any offers;

rr.  failing to advise as to its basis for not paying the claim;

ss.  failing to timely respond to correspondence and telephone calls from its insureds' representatives;

tt.  failing to make reasonable and fair offers of settlement of Plaintiff's UIM claim;

uu. making representations that were unreasonable in light of the facts and circumstances surrounding Plaintiff's claims;

vv.  breaching covenants of good faith and fair dealing;

ww. failing to pay all sums of money owed to Plaintiff;

xx. intentionally and maliciously causing Plaintiffs unnecessary and undue hardships;

yy. intentionally and maliciously causing Plaintiffs unnecessary emotional distress;

zz.  intentionally and maliciously causing Plaintiffs unnecessary economic hardships;

aaa. engaging in unfair settlement negotiations with their insureds;

bbb. failing to properly protect its insureds' interests by promptly and properly investigating, evaluating, and handling the claim;

ccc. conducting an inadequate and non-objective evaluation of Loann T. Phan-Kramer's claim for UIM benefits;

ddd. creating and implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

eee. failing to create and implement lawful and adequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

fff.  failing to adhere to Safeco policies, guides, procedures and practices with regard to claims investigations and claims handling;

52

ggg. exhibiting a pattern and practice of engaging in unfair or deceptive acts or practices to benefit the interests of Safeco to the detriment and expense of the Kramers by:

    i. not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which the company's liability under the policy is clear;

    ii. compelling suit to be instituted to recover amounts due under an insurance policy by failing to offer any settlement;

    iii. failing to promptly settle claims, where injuries and future medical costs had become reasonably clear; and

    iv. failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement.

hhh. breaching known legal duties to the Kramers out of financial self-interest;

iii. unduly, wrongfully, and unreasonably denying and/or delaying payment on Plaintiffs' claim without justification;

jjj. requiring the Plaintiffs to incur costly legal fees and other costs in obtaining what was rightfully theirs;

kkk. failing to make any settlement offer to the Plaintiffs, despite the significant value of Plaintiffs' claim;

lll. failure of the Defendant Safeco to perform and/or complete the investigation of Plaintiffs' claim within a reasonable amount of time;

mmm. failure of Defendant Safeco to explain to Plaintiffs that additional time is needed for further investigation of their claim;

nnn. failure of Defendant Safeco to provide any reason for requiring additional time to complete the investigation of Plaintiffs' claim;

ooo. failure of the Defendant Safeco to make a meaningful investigation of the Plaintiffs' claim;

ppp. failure of Safeco to understand or take steps to learn of the Plaintiffs' condition;

qqq. failure of the Defendant Safeco to obtain any of Plaintiffs' medical records, medical bills, or films by use of Plaintiffs' authorization for release or by use of Safeco's subpoena power;

rrr. requiring Plaintiffs to engage the services of experts to prepare reports for presentation at the trial, at great expense;

sss. requiring Plaintiffs to expend other sums of money to prosecute their lawsuit against Defendant Safeco;

ttt. failure of the Defendant Safeco to pay the money rightfully owed to the Plaintiffs resulting in severe economic harm to the Plaintiffs;

uuu. failure of Defendant Safeco to examine the damage to tortfeasor and Plaintiffs' vehicles;

vvv. ordering surveillance of Plaintiffs despite a lack of evidence indicating fraud;

www. failing to set aside adequate reserves for Plaintiffs' claim despite the medical evidence and economic losses evidence presented;

xxx. failure of Defendant Safeco to increase the reserves as new medical information and damages were obtained;

yyy. failure of Defendant Safeco to review the reserve periodically;

zzz. failure of Defendant Safeco to follow its own claims handling procedures;

aaaa. continuously shifting its basis for denying Plaintiffs' claims;

bbbb. denying Plaintiffs the use and benefits of the money they were entitled to under the underinsured motorist portion of their policy;

cccc. placing Defendant Safeco's own interests above that of their insureds by refusing to make a settlement offer so as to be able to retain the money in their own account and earn interest on the money for well over a year;

dddd. asserting boilerplate denials regarding Plaintiffs' injuries, damages, and treatment without doing any investigation into the truth of those denials;

eeee. asserting boilerplate denials regarding the cause of the subject accident despite clear evidence to the contrary;

ffff. making redundant, unnecessary, and pretextual requests for documents and other materials;

gggg. maintaining positions contrary to the policy, facts, and evidence;

hhhh. failing to properly protect its insureds' interests by promptly and properly investigating, evaluating, and handling the claim;

iiii. conducting an improper, self-serving, inadequate, and untimely valuation of the potential damages and wage losses to Plaintiff;

jjjj. conducting and relying upon an improper, self-serving, inadequate, and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

55

kkkk. reaching and relying upon improper, self-serving, and inadequate assumptions regarding the amount and probability of Plaintiff's damages and future medical costs;

llll. relying upon the improper, self-serving, and inadequate assumptions of the tortfeasor's insurance carrier regarding the severity of Plaintiff's injuries and future medical costs;

mmmm. relying upon the improper, self-serving, and inadequate assumptions of the tortfeasor's insurance carrier regarding the Plaintiff's need for her UIM benefits;

nnnn. failing to properly give the same faithful consideration to eh Kramers' interests that it gave to its own interests;

oooo. affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

pppp. intentionally delaying the investigation of Plaintiff's claims so that she would run out of money for the continuation of treating her injuries thereby creating the defense to the severity and permanency of her injuries, i.e. "Plaintiff has fully recovered given the fact that she is no longer treating";

qqqq. conducting an investigation, evaluation and assessment with the purpose and effect of protecting and serving Safeco's own interests, rather than providing proper and faithful consideration to the Kramers' interests;

rrrr. presenting evidence at trial that was known to be false and inaccurate;

ssss. obtaining an expert medical report that was based on false and inaccurate evidence;

tttt.    using as support for its no-pay position a medical expert report that was known to be false and inaccurate;

uuuu.    relying on medical expert reports that were based on lies and misinformation;

vvvv.    blindly relying on opinions from experts intentionally retained to provide false opinions and testimony despite credible evidence to the contrary;

wwww.    failing to develop its own independent evaluation of Plaintiff's claims by blindly relying on biased and non-neutral experts intentionally retained to provide false opinions and testimony;

xxxx.    intentionally retaining the non-neutral and non-independent experts to provide false opinions and testimony;

yyyy.    intentionally seeking out non-neutral and non-independent experts in order to justify its denial to pay the claim, its delay of benefits, and to prepare for trial;

zzzz.    failing to evaluate the proffered expert physician's neutrality;

aaaaa.    recklessly denying Plaintiff's medical claims and discounted Plaintiff's objective injuries based on intentionally false expert report opinions that Plaintiff sought and received no treatments for her shoulder injuries despite clear objective medical evidence of the injuries;

bbbbb.    recklessly and frivolously rejecting Plaintiffs' treating physician medical records and testimony as to her injuries and the cause of her injuries without any basis in investigation or expert support;

ccccc.    presenting medical expert testimony at trial that was known to be false and in an attempt to mislead the jury; and

ddddd.    forcing their in-house lawyer and employee to present evidence to the jury that was false.

150.    Defendant's actions have been in reckless disregard of Plaintiff's rights, and have been willful, wanton, and outrageous.

151.    As a direct and proximate result of Defendants' breach of its contractual duties, negligence, and legal obligations of good faith, further consequence of Safeco's breach of the Insurance Policy, Defendant has been unjustifiably enriched to the detriment of Plaintiffs, Loann T. Phan-Kramer and JonErik Kramer.

152.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered losses, including but not limited to loss of use of benefits payable, economic hardships, jeopardy to their credit, difficulty paying mortgage, relying on credit cards they were unable to pay, inability to refinance their mortgage, borrowing money from family, derivative damages resulting from drop in credit scores, and severe emotional distress.

153.    Defendants' conduct allowed Safeco to retain money that should have been paid out and to invest those sums in such a fashion, which in essence allowed them to pay part of Plaintiff, Loann T. Phan-Kramer's claim with profits derived from investing money which belonged to Plaintiffs.

**WHEREFORE**, Plaintiffs, Loann T. Phan-Kramer and JonErik Kramer, respectfully request this Honorable Court enter judgment in their favor and against Defendants for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential, delay damages, and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including

58

attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

## COUNT VI

### Plaintiffs, Loann T. Phan-Kramer and Jonerik Kramer, w/h v. Safeco Corporation (Negligence)

154.   All Paragraphs of this Complaint are incorporated by reference as if fully set forth at length herein.

155.   The Safeco entity defendants' agents, employees, servants, and representatives owed a duty to the Kramers to investigate and handle Loann T. Phan-Kramer's claim promptly and properly, and otherwise comply with the common law duty of reasonable care applicable to all persons under the circumstances.

156.   Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, the Safeco entity defendants' agents, employees, servants, and/or representatives committed negligence and/or recklessness in breach of such duty, including:

   a.   failure and refusal to properly and promptly evaluate the Plaintiffs' underinsured motorist claim for settlement purposes;

   b.   failure and refusal to properly and promptly investigate the damage aspects of the Plaintiffs' underinsured motorist claim;

   c.   failure and refusal to properly and promptly make an offer of settlement for the Plaintiffs' underinsured motorist claim;

   d.   failure and refusal to promptly and properly evaluate the Plaintiffs' underinsured motorist claim for settlement purposes;

e.  intentional and knowing failure and refusal to negotiate in good faith and knowing refusal to make a timely, good faith offer of settlement in a timely manner;

f.  failure and refusal to act in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' uninsured motorist claim;

g.  failure and refusal to give the interest of its insured the same weight as it gave its own interests;

h.  intentional failure and refusal to be honest and forthright in the handling and processing of the Plaintiffs' underinsured motorist claim;

i.  intentional failure and refusal to comply with the requirements of the Unfair Insurance Practices Act and Unfair Claims Settlement Practices Regulations;

j.  engaging in unfair and deceptive business practices prohibited by the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

k.  failure to properly investigate Plaintiff's underinsured motorists claim;

l.  challenging causation in Plaintiffs' UIM claim despite not challenging causation in the first party claim for medical benefits;

m.  failing to acknowledge and act promptly upon written or oral communications from Plaintiffs' counsel with respect to claims arising under their UIM policy;

n.  requiring Plaintiff to make submissions of medical information which was already in the possession of Safeco;

o.  failure to properly consider evidence supplied by Plaintiff, Loann T. Phan-Kramer and her counsel, in support of her claim;

p.  failing to set an adequate reserve based on the medical and economic evidence presented;

q.  failing to conduct a "meaningful investigation" following the accident;

r.  blindly relying on opinions from the defendant's medical experts despite non-credible factual basis of the reports;

s.  intentionally seeking out non-neutral and non-independent experts in order to justify its delay of paying the claim, its delay of benefits, and to prepare for arbitration;

t.  failing to evaluate the proffered expert physician's neutrality;

u.  recklessly denying Plaintiff's medical claims and discounting Plaintiff's objective injuries based on expert report opinions that were based on known false information;

v.  failed to consider the medical treatments received;

w.  relying solely on the opinion of a medical expert who presented opinions that were known to be based on false information;

x.  failing to consult an economist regarding Plaintiff's future economic losses, but then frivolously denying any future economic losses;

y.  failing to provide a reasonable explanation of the basis in the insurance policy in relation to the facts for not offering any settlement over the three (3) years of their investigation of Plaintiffs' claim;

z.  failing to submit at trial an economic expert report and not contest the economic report of Plaintiff;

aa. intentionally, recklessly, and maliciously producing false expert reports in an attempt to mislead the jury;

bb. failing to make any formal and/or written offer to settle Plaintiffs' claims and, instead, took the unreasonable position, through its claims adjusters and otherwise, that the investigation was continuing despite the fact that Defendant Safeco had no ongoing investigation and failed to obtain any expert reviews in pursuit of its investigation;

cc. causing Plaintiff to suffer undue hardship as a result of reckless, wanton, and arbitrary claims-handling practices;

dd. intentionally and recklessly entering misinformation into the value assessment computer program in order to generate a low-value recommendation and/or reserve on Plaintiffs' UIM claim;

ee. failing to consider that the value assessment computer program does not calculate the future medical expenses relative to Plaintiff's injuries;

ff. unreasonably denying Plaintiff's claim for future medical expenses despite uncontested evidence to the contrary in order to support their delay of Plaintiff's UIM claim;

gg. intentionally and recklessly failing to enter updated medical information as it was received into the value assessment computer program in order to generate a low-value recommendation on Plaintiffs' UIM claim;

hh. maintaining an unreasonably low reserve despite clear medical evidence, past medical bills, and future medical bills evidencing her serious and permanent injuries;

ii. failing to assign any value to Plaintiffs' UIM claim;

jj. willfully neglecting to consider or process evidence in an effort to save from paying Plaintiff all of the benefits to which she was legally entitled;

kk. failing to timely respond to inquiries and correspondence;

ll. adopting a company practice of intentionally undervaluing underinsured motorist claims and delaying paying said claims for an unreasonable period of time;

mm. delaying and refusing to pay Plaintiffs' claim despite having no medical or legal reason not to;

nn. forcing Plaintiff to file suit to recover UIM benefits owed to her;

oo. misrepresenting facts and its evaluation of Plaintiffs' claim;

pp. failing to advise as to its basis for not making any offers;

qq. failing to advise as to its basis for not paying the claim;

rr. failing to timely respond to correspondence and telephone calls from its insureds' representatives;

ss. failing to make reasonable and fair offers of settlement of Plaintiff's UIM claim;

tt. making representations that were unreasonable in light of the facts and circumstances surrounding Plaintiff's claims;

uu. breaching covenants of good faith and fair dealing;

vv. failing to pay all sums of money owed to Plaintiff;

ww. intentionally and maliciously causing Plaintiffs unnecessary and undue hardships;

xx. intentionally and maliciously causing Plaintiffs unnecessary emotional distress;

yy. intentionally and maliciously causing Plaintiffs unnecessary economic hardships;

zz. engaging in unfair settlement negotiations with their insureds;

aaa. failing to properly protect its insureds' interests by promptly and properly investigating, evaluating, and handling the claim;

bbb. conducting an inadequate and non-objective evaluation of Loann T. Phan-Kramer's claim for UIM benefits;

ccc. creating and implementing unlawful and inadequate policies, guides, procedures, and practices with regard to claims investigations and claims handling;

ddd. failing to create and implement lawful and adequate policies, guides, procedures, and practices with regard to claims investigations and claims handling;

eee. failing to adhere to Safeco's policies, guides, procedures, and practices with regard to claims investigations and claims handling;

fff. exhibiting a pattern and practice of engaging in unfair or deceptive acts or practices to benefit the interests of Safeco to the detriment and expense of the Kramer's by:

    i. not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which the company's liability under the policy is clear;

    ii. compelling suit to be instituted to recover amounts due under an insurance policy by failing to offer any settlement;

    iii. failing to promptly settle claims, where injuries and economic damages had become reasonably clear; and

    iv. failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement.

ggg. breaching known legal duties to the Kramers out of financial self-interest;

hhh. unduly, wrongfully, and unreasonably denying and/or delaying payment on Plaintiffs' claim without justification;

iii. requiring the Plaintiffs to incur costly legal fees and other costs in obtaining what was rightfully theirs;

jjj. failing to make any settlement offer to the Kramers, despite the significant value of Plaintiffs' claim;

kkk. failure of the Defendant Safeco to perform and/or complete the investigation of Plaintiffs' claim within a reasonable amount of time;

lll. failure of Defendant Safeco to explain to Plaintiffs that additional time is needed for further investigation of their claim;

mmm. failure of Defendant Safeco to provide any reason for requiring additional time to complete the investigation of Plaintiffs' claim;

nnn. failure of the Defendant Safeco to make a meaningful investigation of the Plaintiffs' claim;

ooo. failure of Safeco to understand or take steps to learn of the Plaintiffs' condition;

ppp. failure of the Defendant Safeco to obtain any of Plaintiffs' medical records, medical bills, or films by use of Plaintiffs' authorization for release or by use of Safeco's subpoena power;

qqq. requiring Plaintiffs to engage the services of experts to prepare reports for presentation at the arbitration, at great expense;

rrr. requiring Plaintiffs to expend other sums of money to prosecute their lawsuit against Defendant Safeco;

sss.  failure of the Defendant Safeco to pay the money rightfully owed to the Plaintiffs resulting in severe economic harm to the Plaintiffs;

ttt.  failing to set aside adequate reserves for Plaintiffs' claim despite the medical evidence and economic losses evidence presented;

uuu.  failure of Defendant Safeco to increase the reserves as new medical information and damages were obtained;

vvv.  failure of Defendant Safeco to review the reserve periodically;

www.  failure of Defendant Safeco to follow its own claims handling procedures;

xxx.  continuously shifting its basis for denying Plaintiffs' claims;

yyy.  denying Plaintiffs the use and benefits of the money they were entitled to under the underinsured motorist portion of their policy;

zzz.  placing Defendant Safeco's own interests above that of their insureds by refusing to make a settlement offer so as to be able to retain the money in their own account and earn interest on the money for well over a year;

aaaa.  asserting boilerplate denials regarding Plaintiffs' injuries, damages, and treatment without doing any investigation into the truth of those denials;

bbbb.  asserting boilerplate denials regarding the cause of the subject accident despite clear evidence to the contrary;

cccc.  making redundant, unnecessary, and pretextual requests for documents and other materials;

dddd.  maintaining positions contrary to the policy, facts, and evidence;

eeee.  failing to properly protect its insureds' interests by promptly and properly investigating, evaluating, and handling the claim;

ffff. conducting an improper, self-serving, inadequate, and untimely valuation of the potential damages and future medical costs of Plaintiff;

gggg. conducting and relying upon an improper, self-serving, inadequate, and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

hhhh. reaching and relying upon improper, self-serving, and inadequate assumptions regarding the amount and probability of Plaintiff's damages and future medical costs;

iiii. relying upon the improper, self-serving, and inadequate assumptions of the tortfeasor's insurance carrier regarding the severity of Plaintiff's injuries and future medical costs;

jjjj. relying upon the improper, self-serving, and inadequate assumptions of the tortfeasor's insurance carrier regarding the Plaintiff's need for her UIM benefits;

kkkk. conducting an investigation, evaluation, and assessment with the purpose and effect of protecting and service Safeco's own interests, rather than providing proper and faithful consideration to the Kramers' interest;

llll. presenting evidence at trial that was known to be false and inaccurate;

mmmm. obtaining an expert medical report that was based on false and inaccurate evidence;

nnnn. using as support for its no-pay position a medical expert report that was known to be false and inaccurate;

oooo. relying on medical expert reports that were based on lies and misinformation;

pppp. blindly relying on opinions from experts intentionally retained to provide false opinions and testimony despite credible evidence to the contrary;

qqqq. failing to develop its own independent evaluation of Plaintiff's claims by blindly relying on biased and non-neutral experts intentionally retained to provide false opinions and testimony;

rrrr. intentionally retaining the non-neutral and non-independent experts to provide false opinions and testimony;

ssss. intentionally seeking out non-neutral and non-independent experts in order to justify its denial to pay the claim, its delay of benefits, and to prepare for trial;

tttt. failing to evaluate the proffered expert physician's neutrality;

uuuu. recklessly denying Plaintiff's medical claims and discounted Plaintiff's objective injuries based on intentionally false expert report opinions that Plaintiff sought and received no treatments for her shoulder injuries despite clear objective medical evidence of the injuries;

vvvv. recklessly and frivolously rejecting Plaintiffs' treating physician medical records and testimony as to her injuries and the cause of her injuries without any basis in investigation or expert support;

wwww. presenting medical expert testimony at trial that was known to be false and in an attempt to mislead the jury; and

xxxx. forcing their in-house lawyer and employee to present evidence to the jury that was false.

157.    Defendant's actions have been in reckless disregard of Plaintiff's rights, and have been willful, wanton, and outrageous.

68

158.    The Safeco entity Defendant is vicariously liable for the conduct of such agents, employees, servants, and/or representatives, as well as such other individuals as described above.

159.    As a direct and proximate result of such conduct, Plaintiffs have suffered losses, including but not limited to loss of use of benefits payable, economic hardships, jeopardy to their credit, difficult paying mortgage, relying on credit cards they were unable to pay, inability to refinance their mortgage, borrowing money from family, derivative damages resulting from drop in credit scores, and severe emotional distress.

160.    Defendant's conduct allowed Safeco to retain money that should have been paid out and to invest those sums in such a fashion, which in essence allowed them to pay part of Plaintiff, Loann T. Phan-Kramer's claim with profits derived from investing money that belonged to Plaintiffs.

**WHEREFORE**, Plaintiffs, Loann T. Phan-Kramer and JonErik Kramer, respectfully request this Honorable Court enter judgment in their favor and against Defendants for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential, delay damages, and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgement interest, and such further relief as the Court may direct.

## COUNT VII

**Plaintiffs, Loann T. Phan-Kramer and Jonerik Kramer, w/h v. Safeco Corporation**
**(Loss of Consortium)**

161. All Paragraphs of this Complaint are incorporated by reference as if fully set forth at length herein.

162. As a direct and proximate result of the aforementioned pleaded facts, JonErik Kramer has been deprived of the companionship, comfort, services, assistance, and consortium of his wife, Loann Phan-Kramer, and he will likely be so deprived for an indefinite time in the future.

**WHEREFORE**, Plaintiffs, JonErik Kramer and Loann T. Phan-Kramer, respectfully request this Honorable Court enter judgment in their favor and against Defendants for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential, delay damages, and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

Respectfully Submitted,
**THE CURRAN FIRM, P.C.**

Date: 4|19|2023                By: _____

**FRANCIS J. CURRAN, JR., ESQUIRE**
**RYAN F. CURRAN, ESQUIRE**
**Attorneys for Plaintiffs**

## **VERIFICATION**

We, LOANN PHAN-KRAMER and JONERIK KRAMER, hereby verify that we are the Plaintiffs herein, and that the facts set forth in the Complaint are true and correct to the best of my knowledge, information and belief.

I understand that false statements made herein are subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

_____
LOANN PHAN-KRAMER

_____
JONERIK KRAMER

DATE: 4|19|2023

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**
By: Brigid Q. Alford, Esquire - Pa. I.D. #38590
By: Allison L. Krupp, Esquire - Pa. I.D. #307013
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
717-651-3710
Attorneys for Defendant Safeco Corporation

| | |
|---|---|
| LOANN PHAN-KRAMER and | : DELAWARE COUNTY COURT |
| JONERIK KRAMER, W/H | : OF COMMON PLEAS |
| Plaintiffs | : |
| vs. | : NO. CV 2022-1588 |
| | : |
| | : CIVIL ACTION - LAW |
| SAFECO CORPORATION | : |
| Defendant | : |

## <u>NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

TO THE OFFICE OF JUDICIAL SUPPORT:

  Pursuant to 28 U.S.C. § 1446(d), Defendant Safeco Corporation, by its attorneys, Brigid

Q. Alford, Esquire, Allison L. Krupp, Esquire, and Marshall, Dennehey, Warner, Coleman &

Goggin, hereby notifies the Prothonotary of this Court that the above-captioned matter was

removed to the United States District Court for the Eastern District of Pennsylvania. A true and

correct copy of the filed Notice of Removal is attached hereto and identified as Exhibit 1[1].

Date:   05/22/2023

           **MARSHALL DENNEHEY WARNER**
            **COLEMAN & GOGGIN**

           BY: _____
           Brigid Q. Alford, Esquire
           Allison L. Krupp, Esquire
           100 Corporate Center Drive, Suite 201
           Camp Hill, PA 17011
           PH: (717) 651-3710 – FAX (717) 651-3707
           bqalford@mdwcg.com/alkrupp@mdwcg.com
           *Attorneys for Defendant Safeco Corporation*

---

[1] The Exhibits to the Notice of Removal have not been attached as they were already filed of record in this Court.

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Record Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: _____ Defendant _____

Signature: _____

Name: Brigid Q. Alford, Esquire _____

Attorney No. (if applicable): _____ 38590 _____

## CERTIFICATE OF SERVICE

I, Brigid Q. Alford, Esquire, do hereby certify that a true and correct copy of the foregoing

was served upon the following via Electronic Filing System on the date specified below:

Ryan F. Curran, Esquire
Francis J. Curran, Jr., Esquire
THE CURRAN FIRM, P.C.
200 East State street, Suite 103
Media, PA 19063
*Attorneys for Plaintiffs Loann Phan-Kramer and Jonerik Kramer, w/h*

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**

BY: _____
Brigid Q. Alford, Esquire
*Attorneys for Defendant Safeco Corporation*

Dated:  05/22/2023

**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

LOANN T. PHAN-KRAMER and      :
JONERIK KRAMER, w/h      : Civil Action No.
     Plaintiffs      :
     :
     v.      :
     :
SAFECO CORPORATION      :
     Defendant      :
     : ELECTRONICALLY FILED

**NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

Defendant American States Insurance Company (improperly named as "Safeco Corporation") (hereinafter "American States") hereby files this Notice of Removal of this case from the Court of Common Pleas of Delaware County, Pennsylvania, where it is now pending, to the United States District Court for the Eastern District of Pennsylvania on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446(b), and in support thereof avers as follows:

1.      Plaintiffs commenced this action via Praecipe to Issue Writ of Summons filed on March 3, 2022 in the Delaware County Court of Common Pleas at docket number CV-2022-001588, and a Writ of Summons was issued on that same date. A copy of the Praecipe and Writ are attached hereto and identified collectively as Exhibit 1.

2.      On March 8, 2022, Plaintiffs filed a document titled: "Plaintiffs' Pre-Complaint Discovery Pursuant to Pa.R.Civ.P. 4003.8 in the form of Requests for Production of Documents, Addressed to Defendants", a true and correct copy of which is attached hereto and identified as Exhibit 2.



3.      The undersigned counsel filed their entries of appearance on behalf of American States on March 18, 2022, which are attached hereto and identified as Exhibit 3.

4.      On March 25, 2022, Plaintiffs filed an Affidavit of Service of the Writ, stating that the Writ was served on American States on March 13, 2022.  A copy of the Affidavit of Service is attached hereto and identified as Exhibit 4.

5.      On April 13, 2022, American States filed a Motion for Protective Order to Quash Plaintiffs' Pre-Complaint Discovery and a Brief in Support, which are attached hereto and identified collectively as Exhibit 5.

6.      On May 3, 2022, Plaintiffs filed their Response to Defendant's Motion for Protective Order to Quash Plaintiffs' Pre-Complaint Discovery, Memorandum of Law in Support, and exhibits, all of which are attached hereto and identified collectively as Exhibit 6.

7.      On May 12, 2022, American States filed a Reply Brief in Support of Motion for Protective Order to Quash Plaintiffs' Pre-Complaint Discovery, which is attached hereto and identified as Exhibit 7.

8.      On October 26, 2022, the Delaware County Court of Common Pleas granted American States' Motion for Protective Order.  A copy of the October 26, 2022 Order is attached hereto and identified as Exhibit 8.

9.      On April 19, 2023, Plaintiffs filed a Complaint and American States' counsel received a copy on that same date.  A copy of the Complaint is attached hereto and identified as Exhibit 9.

10.     The Complaint states that Plaintiffs currently reside at 109 Ridgefield Road, Newtown Square, Pennsylvania 19073.  Ex. 9 at para. 1.

2

11.    Therefore, upon information and belief, Plaintiffs are both citizens of the Commonwealth of Pennsylvania.

12.    American States is a corporation organized and existing under the laws of the State of Illinois, with a principle place of business located at 175 Berkley St., Boston, MA 02116. Exhibit 9 at para. 2.

13.    Plaintiffs' Complaint against American States includes the following seven counts:

Count I: Plaintiffs v. American States (Bad Faith Pursuant to 42 Pa. C.S.A. § 8371)

Count II: Plaintiffs v. American States (Breach of Contract/Good Faith and Fair Dealing)

Count III: Plaintiffs v. American States (Violation of the Unfair Trade Practices and Consumer Protective Law)

Count IV: Plaintiffs v. American States (Violation of the Unfair Trade Practices and Consumer Protection Law)

Count V: Plaintiffs v. American States (Negligence)

Count VI: Plaintiffs v. American States (Negligence)

Count VII: Plaintiffs v. American States (Loss of Consortium)

*See* Exhibit 9.

14.    In their Complaint, Plaintiffs allege that Loann Phan-Kramer was involved in a motor vehicle accident on April 15, 2016, and that she subsequently made a claim for underinsured motorist ("UIM") benefits under Plaintiffs' American States Policy. Ex. 9 at paras. 15, 19, 28.

3

15.    Plaintiffs allege that, on July 15, 2019, they filed suit against American States (improperly named as "Safeco Corporation") in relation to the UIM claim. Ex. 9 at para. 32.

16.    Plaintiffs allege that the jury awarded Plaintiffs a gross amount of $480,000, and that the verdict was then molded to reflect the third-party tortfeasor's $100,000 policy limits, and to include delay damages of $21,048.36. Ex. 9 at paras. 51-53.

17.    Plaintiffs allege that American States failed to properly value and settle the UIM claim prior to trial, as well as several other allegations that they claim is evidence of statutory bad faith. Ex. 9 at paras. 58, 86.

18.    Within the WHEREFORE clauses of Counts I, II, V, VI, and VII, Plaintiffs' demand compensatory damages, consequential damages, delay damages, "and other damages", damages provided for under 42 Pa. C.S.A. § 8371 and common law, including punitive damages, costs, attorneys' fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.[1] Ex. 9.

19.    Within the WHEREFORE clauses of Counts III and IV, Plaintiffs also seek "actual damages in an amount to be determined together with an award of three (3) times the actual damages sustained". Ex. 9.

20.    Based upon the allegations set forth in Plaintiffs' Complaint, the amount in controversy in this action is in excess of $75,000.00, exclusive of interest and costs.

21.    As such, this Honorable Court has jurisdiction, pursuant to the provisions of 28 U.S.C. § 1332, based upon the fact that there exists diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

---

[1] By outlining the demands and allegations in Plaintiffs' Complaint, American States is not implying that they are accurate or recoverable, but is merely referencing them for purposes of establishing that the $75,000 threshold for diversity jurisdiction is met here.

22.     The present lawsuit is accordingly removable from State Court to this Court, pursuant to 28 U.S.C. § 1441 and § 1446.

23.     This Notice of Removal has been filed within thirty (30) days after receipt by American States of the Complaint, which provides notice that removal is appropriate under 28 U.S.C. § 1446(b).

24.     Written notice of the filing of this Notice of Removal has been given to Plaintiffs, in accordance with 28 U.S.C. § 1446(d), as noted on the attached Certificate of Service.

25.     Promptly after filing with this Honorable Court, and the assignment of a civil action number, a copy of this Notice of Removal will be filed with the Court of Common Pleas of Delaware County, Pennsylvania, in accordance with 28 U.S.C. § 1446(b).

WHEREFORE, Defendant American States Insurance Company (improperly named as "Safeco Corporation") respectfully requests that this action be removed from the Court of Common Pleas of Delaware County, Pennsylvania to the United States District Court for the Eastern District of Pennsylvania.

Date:   05/17/2023                          **MARSHALL DENNEHEY WARNER**
                                            **COLEMAN & GOGGIN**


                                            /s/*Brigid Q. Alford*
                                            Brigid Q. Alford, Esquire
                                            Allison L. Krupp, Esquire
                                            100 Corporate Center Drive, Suite 201
                                            Camp Hill, PA 17011
                                            PH: (717) 651-3710/ (717) 651-3510
                                            FAX (717) 651-3707
                                            E-mail bqalford@mdwcg.com/
                                            alkrupp@mdwcg.com
                                            *Attorneys for Defendant Safeco Corporation*

## CERTIFICATE OF SERVICE

I, Brigid Q. Alford, Esquire, do hereby certify that a true and correct copy of the foregoing was served upon the following via Electronic Filing System, if applicable, and via email on the date specified below:

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

/s/ *Brigid Q. Alford*
Brigid Q. Alford, Esquire
*Attorneys for Defendant Safeco Corporation*

Dated:  05/17/2023

6

FILED
05-22-2023 02:50 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA