IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LOANN T. PHAN-KRAMER** and **JONERIK KRAMER,** W/H<br><br>*Plaintiffs*,<br><br>v.<br><br>**AMERICAN STATES INSURANCE COMPANY**,<br><br>*Defendant*. | Case No. 2:23-cv-01867-JDW |

### MEMORANDUM

Plaintiffs filed suit against their insurer alleging, among other things, statutory bad faith under 42 Pa. C.S.A. § 8371. Plaintiffs now seek leave to file a second amended complaint to save their bad faith claim from dismissal. But no amendments could save the claim. To the extent it is based on a denial of coverage, the statute of limitations bars the claim. And Pennsylvania's bad faith statute does not extend to an insurer's conduct during litigation while acting as a legal adversary. Because their bad faith claim cannot survive a motion to dismiss, amendment is futile, and I will deny the Motion.

**I.      BACKGROUND**

  **A.      Facts**

On April 15, 2016, an underinsured motorist rear-ended Plaintiff Loann T. Phan-Kramer. She suffered a full thickness tear of her rotator cuff, as well as other neck and

back injuries. At the time of the accident, American States insured Plaintiffs, including underinsured motorist ("UIM") benefits. After suing then settling with the other driver, Plaintiffs notified American States of their UIM insurance claim. They sent the American States's adjuster a complete set of all of Mrs. Phan-Kramer's medical records, as well as depositions and expert reports produced in the lawsuit against the other driver. These reports showed future losses between $322,884.00 and $349,582.00.

On June 28, 2019, the American States's adjuster sent correspondence to Plaintiffs that stated in relevant part: "I have had the opportunity to review the medical records you sent for Loann Kramer. Her injury does not appear to have a value over the underlying limits of $100,00[0.00]; therefore, we will not be making an underinsured motorists bodily injury offer. Please discuss with your client." (ECF No. 15-2.) Less than three weeks after receiving the denial letter, Plaintiffs sued American States for breach of contract and loss of consortium.

Plaintiffs allege that, throughout the course of that litigation, American States's adjusters and in-house legal counsel represented that they were reevaluating Plaintiffs' UIM insurance claim as Plaintiffs presented new treatment records and evidence of work limitations. However, Plaintiffs concluded that American States had not been reevaluating the claim when American States's expert witness issued a report in the litigation on October 28, 2020. The report considered only early records of Mrs. Phan-Kramer's treatment, not any of the evidence of ongoing treatment Plaintiffs had provided

throughout the litigation. Plaintiffs also allege that American States exerted influence on its expert to make false conclusions in his report and testimony that would support American States's low valuation of the UIM insurance claim.

Plaintiffs' UIM case proceeded to trial and the jury returned a $480,000.00 verdict in Plaintiffs' favor. The verdict was molded to reflect the $100,000.00 bodily injury liability limits and delay damages of $21,048.36. American States satisfied the verdict.

**B.     Procedural History**

Plaintiffs have now sued American States again for its handling of the UIM claim and conduct in the previous litigation. Plaintiffs filed a Praecipe To Issue Writ Of Summons on March 3, 2022, in the Delaware County Court of Common Pleas. After Plaintiffs filed their Complaint, American States removed the case to this Court. Plaintiffs then amended their Complaint as a matter of right to avoid a motion to dismiss. The Amended Complaint asserts three counts: Count I – Bad Faith Pursuant to 42 Pa. C.S.A. § 8371; Count II – Breach of Contract/Good Faith and Fair Dealing; and Count III – Loss of Consortium. American States answered Plaintiffs' Amended Complaint and informed Plaintiffs' counsel of its intent to file a motion for judgement on the pleadings. Plaintiffs' counsel filed a Second Amended Complaint, which I struck for failure to obtain Defendant's consent or leave of court, as required by Federal Rule of Civil Procedure 15(a).

Plaintiffs' Motion For Leave To File Second Amended Complaint followed. Plaintiffs' Motion seeks to add facts to support their bad faith claim.[1] Specifically, they seek to expound upon Defendant's assurances that the UIM claim would be reevaluated when Plaintiffs presented new evidence, Defendant's refusal to reevaluate Plaintiffs' UIM claim, and Defendant's interactions with its expert and Plaintiffs during litigation. The Motion is ripe for disposition.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure allow liberal amendments of pleadings to facilitate resolution of cases on the merits. *See Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017). Rule 15(a) "enable[s] a party to assert matters that were overlooked or were unknown at the time the party interposed the original complaint." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (quotation omitted). Though leave to amend should be freely given when justice so requires, "[t]here are three instances when a court typically may exercise its discretion to deny a Rule 15(a) motion for leave to amend: when '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'"

---

[1] Defendant's response to the Motion makes plausible arguments that *res judicata* bars Plaintiffs' breach of contract and loss of consortium claims. However, Plaintiffs' proposed Second Amended Complaint does not propose amendments to those claims. The futility analysis in a motion to file an amended pleading is limited to the proposed amendments, not to claims already in the case. Therefore, I have no basis to determine whether those claims are viable. American States may file a motion for judgment on the pleadings on this issue if it thinks it has a good faith basis to do so.

*United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016) (quotations omitted). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (quotation omitted). Courts, therefore, apply the same standard of legal sufficiency to a futility argument as that of a 12(b)(6) Motion. *See Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010).

## III.  ANALYSIS

To survive a motion to dismiss for failure to state a claim on insurance bad faith, Plaintiffs must plead that American States lacked a reasonable basis to deny benefits under the insurance policy and that American States knew of or recklessly disregarded its lack of a reasonable basis. *See Berg v. Nationwide Mut. Ins. Co., Inc.*, 235 A.3d 1223, 1245 (Pa. 2020). Plaintiffs' proposed amendment seeks to add facts that would support two overarching bases for the bad faith claim: (a) Defendant's continued unjustified denial of the UIM insurance claim; and (b) Defendant's conduct during litigation. Neither basis can survive a motion to dismiss, so amendment is futile.

### A.  Continued Denial Of The UIM Claim

Plaintiffs' proposed amendment based on the continued denial of Plaintiffs' UIM claim is futile because the statute of limitations bars the claim. The statute of limitations on a bad faith claim under 42 Pa. C.S.A § 8371 is two years. *See Ash v. Continental Ins. Co.*,

5

932 A.2d 877, 885 (Pa. 2007). The statute begins to run when the insurer first refuses to pay the claim. *See Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005).

American States first refused to pay Plaintiffs' UIM claim on June 28, 2019, when the insurance adjuster sent Plaintiffs a letter that stated American States "will not be making an underinsured motorists bodily injury offer." (ECF No. 15-2.) Plaintiffs understood this letter to be a denial of coverage—they filed a lawsuit for the denial of their claim less than three weeks after the letter. Plaintiffs also knew the facts giving rise to their argument that the denial was unfounded. They had submitted evidence showing future loss three times greater than the policy limit. The statute, therefore, began to run on June 28, 2019, and expired on June 28, 2021. Plaintiffs did not file this action until March 3, 2022. So, their bad faith claim based on denial of coverage is barred by the statute of limitations.

Plaintiffs' arguments that they did not know of Defendant's denial are unpersuasive. *First*, the letter is not equivocal. It does not say American States "will not be making an underinsured motorists bodily injury offer *at this time*." It says American States will not make an offer. That Plaintiffs' claim was denied distinguishes them from the plaintiff in *Bowers v. Nationwide Ins. Co.*, Civ. A. No. 3:07cv1134, 2008 WL 189572 (M.D. Pa. Jan. 18, 2008), a case upon which Plaintiffs rely. In that case, the insurer never denied coverage but instead made an unaccepted settlement offer. A settlement offer is negotiation; a denial letter closes negotiation. *Second*, the fact that American States made

settlement offers to end litigation is distinct from its denial of the insurance claim. Settlement offers during litigation do not admit liability, their purpose is to end litigation. While we all presume that plaintiffs sue insurers because they think they have a good faith basis to do so, the reality is that they also do so because litigation creates pressure to settle, without regard to the merits of the claim. So, when American States made an offer to settle the first lawsuit, that offer did not indicate that the claims handling was still underway. It just showed that American States put a price on avoiding litigation.

Because Plaintiffs knew of the initial coverage denial and believed it was unfounded, their arguments about the discovery rule and doctrine of fraudulent concealment fail. The discovery rule applies when the injured party, despite the exercise of reasonable diligence, is unable to know they suffered an injury or what caused that injury. *See Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). The doctrine of fraudulent concealment applies where the defendant has deceived the plaintiff, intentionally or unintentionally, such that the plaintiff is unaware of the injury and its cause. *See id.* at 860-61. But the Plaintiffs were aware that American States denied their UIM claim and that their losses far exceeded the underlying limit. That was the point of their first lawsuit. Any confusion about continued reevaluation after the initial coverage denial would not toll the statute of limitations. *See Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983).

Plaintiffs also argue that Defendant's ongoing refusals to reevaluate Plaintiffs' UIM claims were new acts of bad faith, entitled to their own separate statute of limitations. But acts of bad faith that relate to the initial denial of coverage are not entitled to a separate statute of limitations. *See Sikirica*, 416 F.3d at 225. And continuing coverage denials relate to the initial denial. *See Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042 (Pa. Super. 1999). Therefore, the statute began to run with Defendant's initial coverage denial, and the same statute of limitations continues to apply.

Plaintiffs' reliance on *Condio v. Erie Ins. Exch.*, 899 A.2d 1136 (Pa. 2006) is misplaced. That case held only that "if evidence arises that discredits the insurer's reasonable basis, the insurer's duty of good faith and fair dealing requires it to reconsider its position and act accordingly." *Id.* at 1145. The insurer's reasonable basis for denying coverage in that case was a factual dispute about the identity of the driver. *See id.* at 1152. The court concluded that the plaintiff did not present evidence that changed this reasonable basis, so there was no bad faith on the insurer's part. *See id.* Similarly, in this case, American States appears to have challenged causation. And no evidence of ongoing treatment would discredit that reasonable basis to deny coverage. So, the Plaintiffs' additional submissions were not a basis for American States to revisit its coverage denial.

### B.    Defendant's Litigation Conduct

Plaintiffs' proposed amendment based on American States's conduct in the litigation between them is futile because conduct as a legal adversary cannot be the basis

for a statutory bad faith claim. I find Judge Waldman's reasoning that "Section 8371 provides a remedy for bad-faith conduct by an insurer in its capacity as an insurer and not as a legal adversary in a lawsuit filed against it by an insured" persuasive. *Slater v. Liberty Mut. Ins. Co.*, No. CIV. A. 98-1711, 1999 WL 178367, at *2 (E.D. Pa. Mar. 30, 1999). Pennsylvania state courts have approved of Judge Waldman's distinction between conduct as a legal adversary and conduct as an insurer. *See O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 909 (Pa. Super. Ct. 1999). Plaintiffs take issue with American States's use of an allegedly biased expert witness, American States withholding information from that expert to influence his report and testimony during litigation, and American States failing to offer a settlement until the eve of trial in the first case. American States did not do any of this as an insurer, though. It acted as a legal adversary. That distinguishes American States from the defendants in the cases upon which Plaintiffs rely. *See Berg*, 235 A.3d at 1254-56 (insurer's defensive corporate strategy to deter litigation, such as spending 19 years and $3 million litigating a $25,000.00 claim, was evidence of bad faith toward individual plaintiffs); *O'Donnell*, 734 A.2d at 910 (insurer's actions during discovery were not covered by the bad faith statute); *Kauffman v. Aetna Casualty & Surety Co.*, 794 F. Supp. 137, 141 (E.D. Pa. 1992) (insurer's decision to proceed to arbitration rather than settle, opposition to plaintiff's state court petition on procedural grounds, and failure to pay the full amount of the arbitration award until litigation completed was not bad faith). Plaintiffs' reply brief also cites multiple cases regarding instances of insurers'

bad faith during expert evaluations as part of the investigation into insurance claims. Those cases are not persuasive, though, because the expert at issue in this case was employed for the purposes of litigation, not claim investigation.

## IV. CONCLUSION

Plaintiffs conflate American States's conduct as a legal adversary with its role as an insurer. American States acted as a legal adversary when it made settlement offers to end litigation and in its use of its expert witness. Any remedy for the alleged misconduct during litigation was sanctions. And nothing that Plaintiffs submitted to American States after its initial claim denial, including during the pendency of the lawsuit, gave American States a basis to reconsider its decision to deny Plaintiffs' UIM claim. Attempts to include facts in support of a bad faith claim at this point are futile. Therefore, I will deny Plaintiffs' Motion For Leave To File Second Amended Complaint. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

July 31, 2023